UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Eric Westerfield,<br><br>Plaintiff,<br><br>v.<br><br>GEICO Advantage Insurance Company,<br><br>Defendant. | Case No. 4:26-cv-01528-SRC |

# Plaintiff's Response to Show-Cause Order

Westerfield sued in Missouri state court. GEICO Advantage removed it. Doc. 1 ¶ 10. The new Petition names GEICO Advantage alone, abandons civil conspiracy, and expressly excludes everyone within any putative class definition in *Kane v. GEICO Casualty Co.*, No. 6:25-cv-00532 (M.D. Fla.). Doc. 5 ("Petition") ¶¶ 7–8, 52(c); Doc. 1 ¶ 12. Those changes remove the common defendant and class overlap on which the earlier transfer rested.

The transfer rested on GEICO Casualty's presence in both cases, collective allegations against the GEICO insurers, and substantially similar classes. *Westerfield v. Gov't Emps. Ins. Co.*, No. 4:26-CV-00173-SRC, 2026 WL 2144550, at *11 (E.D. Mo. July 27, 2026) (*"Westerfield I"*). The Petition removes those connections. It also narrows the class beyond the *Kane* exclusion, imposes a five-year period, and limits recovery to premium collected and retained after refunds and credits, without duplication. Doc. 5 ¶¶ 6–8, 48–52, 57. These changes govern who may recover, from whom, and how much in either forum.

Rule 41(a)(1)(A)(i) authorized dismissal of *Westerfield I*. In *Adams*, the Eighth Circuit reversed sanctions for using Rule 41(a)(1) to change forums and avoid an adverse result: "The reason for the dismissal is irrelevant under Rule 41(a)(1)." *Adams v. USAA Cas. Ins. Co.*, 863

F.3d 1069, 1080–81 (8th Cir. 2017). Counsel also reasonably believed the narrower Petition placed less than $5 million in controversy under the Class Action Fairness Act (CAFA). GEICO Advantage's contrary evidence is discussed in the separate remand filings. The Court should decline transfer, discharge its Order (Doc. 11) without sanctions, and decide remand before any transfer.

## 1. The Court should decline transfer because *Kane* cannot resolve this class's claims against GEICO Advantage.

The Order identifies three first-filed factors: timing, similarity of parties, and similarity of claims or issues. Doc. 11 at 2. Westerfield accepts *Kane*'s priority and the common Risk Alert subject matter. Substantial similarity does not require the same parties or claims. *Lexington Ins. Co. v. Integrity Land Title Co.*, 721 F.3d 958, 968 (8th Cir. 2013). But *Westerfield I* assessed the former action. The present Petition changes the parties and class overlap and requires a fresh assessment of Florida's availability and the balance of convenience.

### 1.1. The Petition removes the common defendant and excludes every member of *Kane*'s proposed classes.

GEICO Casualty is no longer a defendant. The Petition names GEICO Advantage alone and seeks no joint liability among the GEICO insurers. Doc. 5 ¶ 7. GEICO Casualty is the sole *Kane* defendant. *Kane*, Doc. 58. The Petition excludes everyone within any putative class definition in *Kane*'s operative complaint. Doc. 5 ¶ 52(c). That exclusion reaches the nationwide and alternative classes.

*Yancey* turned on overlap this Petition expressly removes. State Farm was the defendant in both actions; the earlier action included the same Missouri class; and the later plaintiffs did not dispute they fell within the class or asserted the same claims. *Yancey v. State Farm Mut. Auto. Ins. Co.*, No. 4:23-cv-00377-SRC, 2023 WL 5019769, at *1–2 (E.D. Mo. Aug. 7, 2023).

The Court rejected reliance on the absence of certification and speculation the later case would proceed faster. *Id.* at *3–4. Westerfield relies on an express exclusion from the earlier proposed classes and a different insurer.

*Yancey* explains why those differences matter. In distinguishing *Martin*, the Court recognized the primary reasons for declining first-filed relief there were "the presence of different defendants and significant disparities in the definitions of the putative classes." *Id.* at *3 (distinguishing *Martin v. Medicredit, Inc.*, No. 4:16-cv-01138-ERW, 2016 WL 6696068 (E.D. Mo. Nov. 15, 2016)). The present Petition makes both changes: it removes GEICO Casualty and excludes every person within any operative *Kane* class definition. Doc. 5 ¶¶ 7, 52(c).

*Mishkin*, on which *Yancey* relied, involved a Missouri class within an earlier nationwide class against the same defendant, Volkswagen. Mishkin admitted he would belong to the earlier class if it were certified. Both actions challenged the same piston defect and sought similar relief based on similar evidence. *Mishkin v. Volkswagen Grp. of Am., Inc.*, No. 4:22-cv-00666-SEP, 2022 WL 18664851, at *2–3 (E.D. Mo. Oct. 11, 2022). Here, paragraph 52(c) expressly excludes the earlier proposed class members; this class is not a subset of *Kane*'s and Westerfield would never be a *Kane* class member.

*Bunge-SCF Grain* involved mirror litigation between the same two parties over the same contracts. Webster sought to invalidate the contracts in Illinois; Bunge tried to enforce them in Missouri. Resolving their validity in either court would resolve the central issue in the other, creating a concrete risk of inconsistent rulings on the same obligations. *Bunge-SCF Grain, LLC v. Webster*, No. 4:23-cv-00734-SRC, 2023 WL 9023168, at *2–3 (E.D. Mo. Dec. 29, 2023). *Kane* cannot provide that resolution. It concerns GEICO Casualty's obligations to its proposed classes, while this action seeks GEICO Advantage's retained premiums for a class that

excludes them. Shared Risk Alert evidence and legal questions may allow useful coordination, but the actions do not seek competing rulings on the same parties' obligations.

*Travis* declined first-filed relief despite similar factual allegations, the same state-law claims, and some class overlap. *Travis v. Navient Corp.*, 284 F. Supp. 3d 335, 348–49 (E.D.N.Y. 2018). The later plaintiff and her claims fell outside the earlier proposed class, and the parties disputed whether the earlier court could exercise personal jurisdiction over her claims. The court refused to defer to litigation that would not resolve those claims. Here, the exclusion is broader: the Petition removes every member of *Kane*'s proposed classes and limits liability to GEICO Advantage. Doc. 5 ¶¶ 7, 52(c). *Kane* cannot resolve this class's demands for repayment from GEICO Advantage.

*Baatz*, cited in *Yancey*, depended on the overlap now removed. *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 790–91 (6th Cir. 2016). Different named plaintiffs did not defeat substantial similarity because they belonged to the earlier proposed class. An intention to opt out later did not eliminate that existing overlap. Here, the Petition excludes *Kane*'s proposed class members now.

*Brinker* likewise involved an earlier nationwide class that could "subsume" the later plaintiffs and claims. *Brinker v. Kraft Heinz Foods Co.*, No. 4:24-cv-704-MTS, 2024 WL 3638243, at *2–3 (E.D. Mo. Aug. 1, 2024). The court treated affiliated defendants as substantially similar. GEICO Advantage and GEICO Casualty also have common corporate interests, but the express exclusion here prevents subsumption. Recovery is limited to GEICO Advantage's receipts, and the Petition seeks no injunction, let alone an injunction governing GEICO Casualty's operations. Doc. 5 ¶¶ 7–8, 52(c). Affiliation, common counsel, and common legal issues do not restore the removed defendant or class overlap.

### 1.2. The earlier transfer does not establish this action could have been brought in Florida.

The earlier order invoked § 1404(a). *Westerfield I*, 2026 WL 2144550, at *11. That statute allows transfer to a district where the action might have been brought or where all parties consent. Westerfield does not consent. Under the first route, GEICO Advantage's later willingness to accept transfer cannot establish that Westerfield could have sued there when he filed this action. *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960).

The first-filed rule rests on a jurisdictional premise. The Eighth Circuit described the inquiry as choosing between "two courts both having jurisdiction over the parties and the subject matter of the dispute." *Beber v. NavSav Holdings, LLC*, 140 F.4th 453, 459 (8th Cir. 2025). *Beber* addressed antisuit injunctions; its jurisdictional premise supports enforcing § 1404(a)'s requirement that the destination be available for this action.

In *Orthmann*, jurisdictional certainty and the progress of the later action outweighed filing priority. The plaintiff filed identical actions first in Minnesota and then in Wisconsin. The Wisconsin action was further developed, and personal jurisdiction there was undisputed. Personal jurisdiction in Minnesota remained vigorously disputed. The Eighth Circuit favored Wisconsin and dismissed the Minnesota appeal without deciding whether Minnesota had personal jurisdiction. *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985).

This District applied that reasoning to deny first-filed transfer in *Early v. Henry Thayer Co., Inc.*, No. 4:20-cv-1678-RLW, 2021 WL 3089025, *3–5 (E.D. Mo. July 22, 2021). The earlier Pennsylvania court had dismissed a Maryland plaintiff's claims against Thayer for lack of personal jurisdiction. *Id*. at *3. Personal jurisdiction in Missouri was undisputed, while transfer risked leaving the Missouri plaintiff without a forum. *Id*. at *5. The Court also found

little efficiency to be gained because the Pennsylvania court would still have to decide the Missouri claims under Missouri law. It declined both transfer and a stay. *Id.* at 5.

*Kane*'s jurisdiction over GEICO Casualty does not establish Florida's authority to adjudicate Westerfield's claims against GEICO Advantage.

This Court required personal jurisdiction and proper venue before weighing convenience in *Kelly-Leppert v. Monsanto Co.*, No. 4:21-cv-00369-SRC, 2026 WL 1090947, at *2–3 (E.D. Mo. Apr. 22, 2026). Monsanto did not object to transfer, but the Court first determined the Western District could hear the action when it began. Monsanto was at home in Missouri, and its sales and the decedent's exposure connected that district to the claim. Only then did the Court weigh convenience and justice. *Id.* at *3–5. Although *Kelly-Leppert* concerned ordinary § 1404(a) transfer, it required an available destination before weighing convenience.

*In re Bozic* applied that statutory requirement to first-filed transfer. 888 F.3d 1048, 1053–54 (9th Cir. 2018). The later plaintiff belonged to the earlier proposed class, but venue for that suit did not establish venue for her separate claims. The court held the transfer legally erroneous. It denied mandamus because a stay made the resulting injury speculative, not because the transfer complied with § 1404(a). *Id.* at 1054–55.

Some courts have treated first-filed transfer differently. *Brinker* ordered transfer after finding ordinary § 1404(a) eligibility unestablished, but the transfer was unopposed. 2024 WL 3638243, at *1–2. In *Myers,* Walmart conceded the later plaintiff could not originally have sued in the first-filed district. *Myers v. Walmart, Inc.*, No. 5:24-cv-5182-TLB, 2025 WL 70987, at *2–3 (W.D. Ark. Jan. 10, 2025). The court recognized disagreement over whether first-filed transfer must satisfy § 1404(a) and chose a stay rather than resolve that question. Here,

without consent of the parties, the statutory text and *Bozic* support applying the destination requirement. First-filed priority should not override Congress's transfer requirements.

GEICO Advantage is incorporated in Nebraska with its principal office in Maryland. Doc. 5 ¶ 15; Doc. 1 ¶ 27. Neither ordinary general-jurisdiction ground places it at home in Florida, and no exceptional basis has been established. *See Daimler AG v. Bauman*, 571 U.S. 117, 137–39 (2014). Westerfield alleges Missouri residence, renewal, communications, the addition, and payment; his policy retained a Kansas form and address. Doc. 5 ¶¶ 12–21, 33–42. This Court sustained Missouri personal jurisdiction after considering that record. *Westerfield I*, 2026 WL 2144550, at *8–10. No claim-specific Florida connection has been identified.

Even if Florida is available considering jurisdiction and venue, the separate class and remand challenge still weigh against transfer.

### 1.3. The separate claims and established Missouri connections outweigh the reduced benefit of coordinating the cases in Florida.

The first-filed rule serves the interests of justice and applies absent compelling circumstances. It does not require a mechanical result. *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1005–06 (8th Cir. 1993). *Berber* required first-filed analysis, necessary factual findings, and consideration of the earlier litigation's changed posture. 140 F.4th at 459–60. Here, GEICO Casualty's removal, the express class exclusion, the jurisdictional dispute, and Missouri's connections supply compelling reasons to decline transfer even if affiliation and common issues might satisfy the rule's threshold.

Missouri remains convenient for Westerfield and connected to his claim. He lives here, and this Court already recognized Missouri's convenience and interest in providing him a forum. *Westerfield I*, 2026 WL 2144550, at *10. No Florida witness or source of proof connected to his transaction has been identified. In *Kelly-Leppert*, the nearby plaintiff, treating

physicians, medical records, and alleged exposure favored transfer to the Western District. 2026 WL 1090947, at *4–5. *Kane* may still advance common legal issues, but its separate insurer and non-overlapping class reduce the benefit of moving this case.

If the Court finds federal jurisdiction but concludes first-filed deference is appropriate, Westerfield asks for a limited, reviewable stay rather than transfer without an adequate showing that Florida can hear this action. *Myers* selected that alternative. 2025 WL 70987, at *2–3; *see also Ritchie Cap. Mgmt., L.L.C. v. BMO Harris Bank, N.A.*, 868 F.3d 661, 666 (8th Cir. 2017) (preferring stays to dismissal to preserve unresolved claims). Any stay should identify the development in *Kane* that would justify reassessment and require status reports.

### 1.4. Deciding remand first can eliminate the need for a federal transfer.

The remand filings identify three gaps in GEICO Advantage's removal calculation: the unexplained increase in estimated duration from 90 to 184 days; a customer count not tied to distinct Policy-Level Losses; and Westerfield's gross daily charge used without support as a classwide measure of net retained premium. The requested discovery would test those inputs through the underlying query and filters, a count of unique policy/account additions, representative sampling of net retained premium, and interval attrition data. Resolving remand here may eliminate the need to consider transfer.

## 2. Sanctions are unjustified because Rule 41 authorized dismissal and the narrower Petition rests on supported facts and law.

*Yancey* and *Bunge-SCF Grain* address transfer of parallel actions; *Adams* addresses sanctions for using Rule 41(a)(1) to change forums. Whether GEICO Advantage can now establish CAFA jurisdiction is discussed in the remand filings. An eventual finding of federal jurisdiction would not, by itself, establish that counsel's earlier assessment was unreasonable or that refiling justified sanctions.

### 2.1. *Adams* rejects sanctions for using Rule 41(a)(1).

*Adams* directly answers the concern that a dismissal used to change forums violates Rule 11. After removal under CAFA and substantial federal proceedings, the parties stipulated to dismissal and refiled in state court to obtain approval of a class settlement. The district court sanctioned counsel for seeking a more favorable forum and avoiding an adverse decision. The Eighth Circuit reversed: Rule 41(a)(1) requires no judicial approval and makes the reason for dismissal irrelevant. *Adams*, 863 F.3d at 1078–81. It distinguished *Hamm* and *Thatcher*, which concerned discretionary dismissals under Rule 41(a)(2). *Id.* at 1080–81 (distinguishing *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941 (8th Cir. 1999) and *Thatcher v. Hanover Ins. Grp., Inc.*, 659 F.3d 1212 (8th Cir. 2011)). Although *Adams* involved a stipulation, its reasoning also relied on unilateral-notice cases. *Id.* at 1078–79.

*Burton* applies that reasoning to Rule 41(a)(1)(A)(i). *Burton v. Express Scripts, Inc.*, No. 4:17-cv-02279-AGF, 2018 WL 3159848, at *2 (E.D. Mo. Apr. 9, 2018). Despite an earlier dismissal ruling and the defendants' objection that the plaintiff intended to refile in state court, *Burton* recognized the right to dismiss before an answer or summary-judgment motion and rejected requested conditions on refiling. The adverse ruling and proposed return to state court did not convert an authorized notice dismissal into a discretionary one.

Westerfield used the rule that *Adams* enforces. His August 4 notice invoked Rule 41(a)(1)(A)(i), no defendant had served an answer or summary-judgment motion, and no class was certified. *Westerfield I*, Doc. 62. The present Order acknowledges dismissal before transfer. Doc. 11 at 1. The later dismissal notice in the administratively transferred docket concerned the same action; Westerfield did not have two actions simultaneously. Doc. 1 ¶¶ 9–10. The Court's order transferred the former case but did not decide the premium claims on

their merits, prohibit refiling, or condition dismissal on proceeding in Florida. *Westerfield I*, 2026 WL 2144550.

The adverse transfer ruling influenced Westerfield's decision to dismiss and narrow the case. No court decided the premium claims on their merits, and Missouri offered the convenience of his home forum and an established basis for personal jurisdiction. *Westerfield I*, 2026 WL 2144550, at *8–10. *Adams* permits that use of Rule 41(a)(1). Dismissal gives authority to sanction an independently frivolous paper. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–98 (1990). But the narrower Petition has substantive purposes and an objective basis in the record.

### 2.2. Westerfield had the right to choose the new action's parties and claims even when those choices affected jurisdiction.

A plaintiff chooses which substantive claims to bring against which defendants. That choice can establish or remove the basis for federal jurisdiction. *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35–36 (2025). The Supreme Court recognized a plaintiff may voluntarily dismiss and bring a new state-only action, subject to rules limiting repeated dismissals. *Id.* at 38 n.9. The Supreme Court also protects the plaintiff's choice of properly joined parties against a defendant's effort to preserve an incorrectly removed action. *Hain Celestial Group, Inc. v. Palmquist*, 607 U.S. 421, 433 (2026). These decisions support Westerfield's choice of a narrower action; its transfer remains governed by the separate analysis above.

The Eighth Circuit applies *Royal Canin* to CAFA. *Vick v. Fresh Green, LLC*, No. 26-2247, 2026 WL 2443852 (8th Cir. Aug. 20, 2026). After an unsuccessful remand effort, the plaintiffs redefined their proposed class to include only Missouri citizens. *Id.* at *1. The Eighth Circuit affirmed remand under the local-controversy exception based on the operative pleading. *Id.* at *2–3. *Vick* does not hold that reducing an amount demanded necessarily defeats

jurisdiction in an existing action. *See Royal Canin*, 604 U.S. at 38 n.8. Here, the restrictions defined the parties, transactions, and recovery at the outset of a new state action. Although decided after the August 4 refiling, *Vick* confirms the original class definition need rarely control the jurisdictional analysis.

### 2.3. The new Petition addresses GEICO Casualty's discovery objections and govern recovery in either forum.

GEICO Advantage acknowledges that removing the other insurers and abandoning civil conspiracy are substantive changes. Doc. 1 ¶ 12. The Petition makes more changes to class membership and recovery. The former class definitions required an increased premium after an addition "without any action taken by the insured," without an express time limit or refund deduction. *Westerfield I*, 20 ¶ 70. The new definition identifies a recorded License-Address Risk Alert Addition after the recorded response deadline and requires positive retained premium as of filing, after attributable refunds and credits. Doc. 5 ¶¶ 48–49.

GEICO Casualty's interrogatory responses in *Kane* objected to imprecise definitions, the absence of a temporal limit, and inclusion of insureds who suffered no harm. Doc. 14-1 at 3–4, 21–22. GEICO Casualty also emphasized actual premium increases, refunds, credits, the duration of additions, and other policy changes affecting loss. *Id.* at 11, 13–14, 16. The Petition responds with a five-year period, positive net retained premium at filing, exclusion of unrelated charges, and deduction of later refunds and credits. Doc. 5 ¶¶ 48–51.

The Petition also expressly prevents duplicate recovery. Each unique addition produces one Policy-Level Loss, no matter the number of named insureds or billing entries associated with it. Doc. 5 ¶¶ 6–8, 50–51. Paragraph 57 bases typicality on common policy language and the challenged process while expressly disclaiming Westerfield's $13.19 charge,

$2.20 daily rate, and six-day duration as classwide averages. These provisions account for the individual amounts and durations GEICO Casualty says matter. Doc. 14-1 at 14.

These revisions preserve Westerfield's contract theory without conceding the class must exclude related drivers, household members, or insureds who received notice. Under that theory, authority to adjust premium does not itself authorize GEICO to designate a rated driver. Doc. 5 ¶¶ 22–24, 62–66. The original petition already alleged that distinction and acknowledged the 15-day response period; the new Petition develops it and incorporates the recorded deadline into the class definition. *Westerfield I*, Doc. 20 ¶¶ 62–63, 81–84; Doc. 5 ¶¶ 48–49. Refining the allegations does not concede the original claims were frivolous or that any of GEICO's objections have merit.

The same limits bind Westerfield in either forum: liability is confined to GEICO Advantage's policies and receipts, everyone within any operative putative *Kane* class definition is excluded, and relief is limited to nonduplicative monetary recovery, interest, and taxable costs. Doc. 5 ¶¶ 6–8, 52(c). Their jurisdictional and transfer consequences follow from those substantive changes.

### 2.4. GEICO's prior evidence and the narrower Petition gave counsel a reasonable basis to choose state court.

Rule 11 requires counsel to make a reasonable inquiry before presenting a federal contention and to reassess its support before later advocating it. Fed. R. Civ. P. 11(b); *id.* advisory committee's notes to 1983 and 1993 amendments.

GEICO's own jurisdictional evidence supported counsel's assessment. The former ruling used 30,000 insureds, Westerfield's $2.20 rate, and 90 days to obtain $5,940,000. *Westerfield I*, 2026 WL 2144550, at *3–5. Hoskins's March declaration separately identified more than 15,000 GEICO Advantage insureds and an average added expense exceeding $2.72 per

day based on the broader class. *Westerfield I*, Doc. 40-1 ¶¶ 6–7. The new Petition limits recovery to GEICO Advantage and narrows the class and claims.

Using 15,000, $2.72, and the 90-day estimate yields $3,672,000. Counsel reasonably read "more than 15,000" as describing a population near that benchmark. It could mean 15,001; the phrase supplied no reason to assume a much larger population. GEICO offered the declaration to establish jurisdiction and had every incentive to identify a higher benchmark if its then-available analysis supported one. Its separate 20,000 benchmark included non-GEICO Advantage insureds in the Missouri civil-conspiracy class, which the new Petition omits. *Westerfield I*, Doc. 40-1 ¶ 6; Doc. 1 ¶ 12. The September declaration used "more than 16,000." Doc. 1-2 ¶ 3. That choice supports counsel's reading of the earlier benchmark.

The gap was substantial. At $2.72 per day for 90 days, crossing $5 million would require at least 20,425 insureds. At 15,000 insureds for 90 days, it would require an average daily charge above $3.70. Even increasing all three inputs to 17,000 insureds, 100 days, and $2.94 per day yields $4,998,000. These illustrations explain counsel's assessment; they do not assert the class's actual size, rate, or duration.

The March count and rate were lower bounds, so these calculations impose no damages ceiling. But narrowing the insurer, referral criterion, membership, and net recovery gave counsel more reason to expect a smaller amount. GEICO Casualty's assertions that "many" or the "vast majority" were not members of the class reinforced that belief. Doc. 14-1 at 13–14, 16, 22.

The referral criterion controls membership. Name-and-address referrals are excluded. Doc. 5 ¶¶ 4, 26–28, 35, 48–49. Policies with no positive retained premium at filing are excluded, and partial refunds leave only the remaining amount recoverable. *Id.* ¶¶ 8, 48–51.

Counsel does not assign GEICO Casualty's "vast majority" assertion wholly to either category or treat it as an admission of this class's size. The narrower criteria supported the filing assessment without establishing an exact class count.

Counsel's experience litigating the related claims in *Kane* also guided the belief that the qualifying population and net recovery were substantially smaller. The present evidentiary challenge and discovery request appear in the separate remand filings.

### 2.5. Rule 11 does not apply to the state-court filing, and the present federal arguments have an objective basis.

Rule 11 does not apply to filing a petition in state court. It applies to positions later advocated in federal court. *Davis v. MCI Communications Services, Inc.*, 421 F. Supp. 2d 1178, 1182–83 (E.D. Mo. 2006). Westerfield's present federal arguments have an objective basis. The Petition identifies the policy, unrequested addition, payment, and alleged failure to refund fully. Doc. 5 ¶¶ 19–24, 33–42. Those facts and the contract theory support continued advocacy. The disagreement over § 1404(a) recognized in *Myers* likewise confirms the transfer opposition raises a substantial legal question.

Court-initiated sanctions require extra care. *Adams*, 863 F.3d at 1077–78. Rule 11 requires a reasonable inquiry and supported factual and legal contentions; subjective good faith alone is not enough. Fed. R. Civ. P. 11(b). The concrete pleading restrictions, sworn record, and authorities supply that objective basis here. Monetary sanctions also have specific limits. Rule 11(c)(5)(A) prohibits them against a represented party for counsel's legal contentions under subsection (b)(2). An opponent's fee award under Rule 11(c)(4) requires a motion. For monetary sanctions on the Court's own initiative based on conduct completed in *Westerfield I*, Rule 11(c)(5)(B) required a show-cause order before voluntary dismissal. This Order issued afterward. That timing restriction doesn't extend to independent post-removal conduct.

Inherent-power sanctions require independently established bad faith. In *Schlafly*, the litigant repeatedly sought the same emergency relief to harass the defendant and consume its resources. *Schlafly v. Eagle Forum*, 970 F.3d 924, 936–37 (8th Cir. 2020). Here, Westerfield used an authorized dismissal, changed the case's substantive scope, and presents supported arguments about the new Petition. The timing of that sequence does not establish the bad faith required for an inherent-power sanction.

**WHEREFORE**, Westerfield requests the Court decline first-filed transfer, discharge the Order (Doc. 11) without sanctions, and decide his motion to remand. If GEICO Advantage has not established CAFA jurisdiction, § 1447(c) requires remand. If further proof is necessary, the Court should allow the focused discovery identified in the remand filings before ordering any transfer.

**ONDERLAW, LLC**

By: */s/ Martin L. Daesch*
Martin L. Daesch, #40494 (MO)
Jesse B. Rochman, #60712 (MO)
110 E. Lockwood Ave.
St. Louis, MO 63119
(314) 963-9000 (telephone)
daesch@onderlaw.com
rochman@onderlaw.com
*Attorneys for Plaintiff*

## Certificate of Service

I certify that on October 2, 2026, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all attorneys of record.

*/s/ Martin L. Daesch*