**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ALLISON KANE, *individually, as Personal Representative of the Estate of Richard Kane, and for all others similarly situated,*

Plaintiff,

v. Case No. 6:25-CV-532-JSS-LHP

GEICO CASUALTY COMPANY,

Defendant.
______________________________/

**GEICO CASUALTY COMPANY'S VERIFIED OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Defendant GEICO CASUALTY COMPANY ("***GEICO***" or "***Defendant***") objects and responds to the First Set of Interrogatories by Plaintiff ALLISON KANE, individually and as Personal Representative of the Estate of Richard Kane ("***Kane***" or "***Plaintiff***"),[1] as follows:

---

[1] The First Set of Interrogatories was initially served by Plaintiff Richard Kane on Geico General Insurance Company. Since then, the operative complaint in the above-captioned proceeding has been amended twice by interlineation, substituting Allison Kane in her individual capacity and capacity as Personal Representative of the Estate of Richard Kane as named Plaintiff and GEICO Casualty Company as Defendant. As such, these objections and responses are to be construed as being on behalf of GEICO Casualty Company, only, in response to First Set of Interrogatories by Allison Kane in her individual capacity and capacity as Personal Representative of the Estate of Richard Kane.

## PRELIMINARY STATEMENT

A. The following responses are based on information currently available to GEICO and believed to be accurate following a reasonable investigation. Discovery and investigation are ongoing. GEICO reserves all rights to supplement, revise, or amend these responses if additional information becomes available through discovery or other means. GEICO also reserves the right to produce or use any information or documents discovered after the service of these responses in support of or in opposition to any motion, during any deposition, or at a hearing. These responses are made without prejudice to GEICO's right to rely on subsequently discovered facts.

B. No incidental or implied admissions of fact are made by GEICO through the responses below. The only admissions are express admissions. The fact that GEICO has provided any responses to these interrogatories may not be taken as an admission that GEICO accepts or admits the existence of any fact set forth or assumed by such interrogatory, or that any such response constitutes admissible evidence. The fact that GEICO has answered part or all of any interrogatory is not intended and shall not be construed as a waiver by GEICO of any objection to that or any other interrogatory.

C. GEICO's responses to these interrogatories are made without waiving any objections regarding competency, confidentiality, relevance, materiality, privilege, or the admissibility of such information for any purpose.

D. GEICO objects to the definition of the term "GEICO" to the extent that it includes its parent company, any subsidiaries, or any other related entity. GEICO's responses to Kane's First Set of Interrogatories are not made on behalf of any company other than GEICO Casualty Company.

E. GEICO objects to the term "Auto Driver Notice(s)," as there is no such notice, policy, or formal communication by that name at GEICO. GEICO presumes that Plaintiff is referring to the type of communication that is attached as Exhibits A and B to GEICO's Rule 12(b)(6) Motion, and will refer to such as a "Risk Alert Notice."

F. GEICO objects to the extent these interrogatories assume the propriety or clarity of Kane's proposed class definitions, which are vague, overbroad, and not amenable to objective identification from GEICO's records. The proposed definitions rely on imprecise and factually inaccurate terms such as "automatically" and "without any action taken by the insured," which ignore the 15-day response window and fail to exclude insureds who affirmatively or knowingly accepted the addition of an undisclosed youthful driver. The

definitions also improperly include insureds who suffered no harm and contain no temporal limitation, rendering them facially overinclusive.

Further, the proposed class definitions suffer from fatal predominance and manageability issues that cannot be cured. While GEICO can identify which policies had drivers added, the contracts expressly allow such additions. And in the subset of policies where an undisclosed youthful driver was added by underwriting, any such addition likely resulted from a policyholder's failure to object within the 15-day notice period, undermining any claim of harm. Additionally, within that subset, where it turns out a policyholder should not have been added to a policy for any given reason, policyholders who received refunds or credits for any amount attributable to the added driver suffered no injury. In some cases, the timing, scope, or circumstances of any addition, removal, refund, or credit may further limit any potential harm.

Finally, determining whether a driver was subsequently removed, the reason for removal, or whether any refund or credit for charges attributable to the added driver was issued requires a manual review of multiple highly voluminous data management systems, and that review must be repeated anew for each individual putative class member. Even after such a review, much of the necessary information may not be recorded in the files and would require extensive analysis by GEICO's underwriting team and/or direct outreach to current or former

policyholders to determine what occurred and whether the addition or removal of a driver was proper (*e.g.*, whether the added driver in fact was a member of the customer's household). Because these inquiries are inherently individualized and cannot be resolved on a class-wide basis, this subject matter is unsuitable for class treatment.

G. GEICO objects to any interrogatory seeking information related to a national class as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence at this stage in this litigation. Certification of a national class is unlikely and premature. A national class is impossible because significant variations in state laws and GEICO's contract language undermine the uniformity required for class certification, making common treatment of claims unfeasible. Furthermore, it is premature to consider a national class at this stage, as no class certification motion has been filed and discovery remains in its initial stages. Accordingly, any such interrogatory is disproportionate to the needs of the case. Requiring GEICO to respond to inquiries beyond Florida would impose an undue burden and expense that is not justified at this time. Without waiving objections to the certifiability of a Florida class, GEICO will provide responses limited to Florida only.

H. GEICO objects to the interrogatories seeking information outside the applicable statute of limitations period as overly broad, unduly burdensome, and

not proportional to the needs of the case. Any information beyond the statute of limitations for the claims asserted in Florida is irrelevant to the claims and defenses in this litigation. Without waiving this objection, GEICO will respond and provide information for all claims asserted in Florida, limited to the five years preceding the filing of the Complaint in this action, in accordance with the applicable statute of limitations.

I. GEICO objects to the interrogatories to the extent they seek information on overly broad subjects that have little or no relevance to the claims and defenses in this case. GEICO will respond to the interrogatories in a reasonable and proportionate manner, considering the issues in controversy and the relative burdens of proof.

J. This Preliminary Statement is incorporated into each of the responses set forth below, and into each and every amendment, supplement, or modification to these responses hereinafter provided.

## OBJECTIONS AND RESPONSES

**1. Identify each person involved in developing the policy or practice of adding drivers to insurance policies based on information obtained from a third-party, such as a consumer reporting agency, or the policy or practice that resulted in any Auto Driver Notice.**

RESPONSE: GEICO objects to this interrogatory as vague and ambiguous in its use of undefined and misleading terminology, including the phrase "Auto Driver

Notice." GEICO further objects to this interrogatory as overly broad and not proportional to the needs of the case, to the extent it seeks identification of "each person" involved in any way with the development of any policy or practice related to third-party data or driver additions, without limitation as to time, scope, or relevance. Subject to and without waiving these objections, GEICO states that Allison Hoskins was involved in developing GEICO's use of reliable, FCRA-compliant third-party data to identify undisclosed youthful drivers residing at a policyholder's address and to send a Risk Alert Notice to the policyholder.

**2. Identify all data vendors, consumer reporting agencies, or other sources GEICO used to identify potential additional drivers for purposes of sending an Auto Driver Notice.**

RESPONSE: GEICO objects to this interrogatory as vague and ambiguous in its use of undefined and misleading terminology, including the phrase "Auto Driver Notice." Subject to and without waiving these objections, GEICO states that it uses Explore Information Services, LLC ("Explore"), which obtains information from the Florida DMV, to identify youthful undisclosed drivers in Florida.

**3. Describe the procedures GEICO used to determine whether an individual identified in an Auto Driver Notice resided at the policyholder's address and should be added, including how GEICO verified information obtained from a third party before adding the driver.**

RESPONSE: GEICO objects to this interrogatory as vague and ambiguous in its use of undefined and misleading terminology, including the phrase "Auto Driver Notice." Subject to and without waiving these objections, [redacted]

[redacted]

For the remaining cases, GEICO sends a Risk Alert Notice to the policyholder informing them that a youthful driver not listed on their policy has been identified at their address and will be added to the policy unless the policyholder responds within 15 days. This process allows policyholders an opportunity to clarify, confirm, or dispute the information, thereby supporting accuracy in rating and underwriting.

**4. Identify any third-party vendors involved in preparing or distributing Auto Driver Notices for GEICO.**

RESPONSE: GEICO objects to this interrogatory as vague and ambiguous in its use of undefined and misleading terminology, including the phrases "involved" and "Auto Driver Notices." Subject to and without waiving these objections, GEICO states that a third-party vendor does not prepare or distribute the Risk Alert Notice.

**5. Describe any audits, internal reviews, or policy developments concerning the practice of automatically adding drivers without any action taken by the insured.**

RESPONSE: GEICO objects to this interrogatory on the grounds that it is based on a fundamentally incorrect and misleading premise. GEICO does not

"automatically" add drivers to insureds' policies "without any action taken by the insured." There is no policy, practice, or procedure at GEICO by which drivers are added without first notifying the insured and providing an opportunity to respond, clarify, or dispute the information. GEICO further objects to this request to the extent it seeks confidential or proprietary materials concerning reviews, internal audits, or policy developments. Subject to and without waiving these objections, GEICO states that further information responsive to this interrogatory may be derived from documents produced in this case, which will be made available in accordance with the Federal Rules of Civil Procedure.

**6. Identify any incentive or financial program linked to premium increases resulting from automatic driver additions.**

RESPONSE: GEICO objects to this interrogatory on the grounds that it is based on a fundamentally incorrect and misleading premise. GEICO does not engage in "automatic driver additions." There is no policy, practice, or procedure at GEICO by which drivers are added without first notifying the insured and providing an opportunity to respond, clarify, or dispute the information. GEICO also objects to this interrogatory as not relevant to any claim or defense. Subject to and without waiving these objections, GEICO states that there is no incentive or financial program linked to premium increases from the addition of undisclosed youthful drivers.

**7. Identify any departments and/or personnel responsible for reviewing and responding to complaints about any driver additions.**

RESPONSE: GEICO objects to this interrogatory as vague and ambiguous in its use of undefined and misleading terminology, including the term "complaints." GEICO further objects to this interrogatory as not relevant to the claims and not proportional to the needs of the case because the litigation concerns only additions of undisclosed youthful drivers where the policyholder received a Risk Alert Notice and did not respond, not "any driver additions," as broadly requested. Subject to and without waiving these objections, GEICO states that complaints may be reviewed and responded to by various departments at GEICO, including Enterprise Complaints and Customer Service. Additionally, complaints may also be initially directed to, reviewed, and then forwarded by external entities such as the Better Business Bureau or the Florida Department of Financial Services to GEICO. Further information responsive to this interrogatory may be derived from documents produced in this case, which will be made available in accordance with the Federal Rules of Civil Procedure.

**8. State the total number of insureds and policies (nationwide and by state) to whom GEICO sent an Auto Driver Notice and/or added a driver without any action taken by the insured. The relevant period for this interrogatory is five years.**

RESPONSE: GEICO objects to this interrogatory as vague and ambiguous in its use of undefined and misleading terminology, including the phrase "Auto Driver Notice." GEICO also incorporates by reference its general objections regarding the putative national class, including that requests for nationwide information are overly broad, unduly burdensome, and disproportionate at this stage of the litigation.

Further, GEICO objects to this interrogatory to the extent it seeks information regarding all insureds who received a notice about an undisclosed youthful driver regardless of whether the policyholder objected or whether the youthful driver was ever added. Such a request is overbroad and irrelevant because, at this stage, there is no certified class, no adjudicated claims, and the purported class definition is speculative. The number of policyholders who received such notices does not bear on any currently recognized claim or class.

To the extent the interrogatory seeks information about individuals who received a notice, failed to respond within 15 days, and had a youthful driver added to their policy, GEICO objects on the grounds that this request—and any corresponding proposed class definition—is overbroad and improper. A proper class definition would necessarily focus on those who actually experienced a premium increase following the addition of a youthful driver unrelated to them, without prior notice or opportunity for a refund or statement credit for any charge attributable to the added driver, and who were not, in fact, members of the customer's household, which can only be determined on a case-by-case basis. GEICO's process is fair and reasonable: many additions involve proper disclosures, such as newly licensed family members, and GEICO acts in good faith to ensure policyholders maintain accurate and up-to-date coverage. GEICO lawfully exercises its right to detect undisclosed youthful drivers through reliable third-party data, notify policyholders, and add such drivers absent objection.

Even where a policyholder later objected to the addition, GEICO was generally not required to refund premiums, as coverage was provided during the relevant period and youthful drivers are considered a high-risk category. Nonetheless, in

some cases where timely objections were made, GEICO has voluntarily issued refunds or statement credits.

Subject to and without waiving these objections, GEICO states that in the relevant statutory period in Florida, GEICO added approximately [redacted] undisclosed youthful drivers to policies after identifying through reliable government-backed data that these individuals were residing at the same address as the named insured and after the policyholder received a Risk Alert Notice but took no action. Policyholders were notified of the potential addition and given an opportunity to respond or contest the information. Where no response was received, GEICO proceeded with the addition, based on the understanding from Florida DMV records that the driver was part of the household, had regular access to the policyholder's vehicle, and should have been disclosed by the policyholder and included on the policy.

**9. Identify the number of policies (nationwide and by state) in which premiums increased after a driver was automatically added following an Auto Driver Notice. The relevant period for this interrogatory is five years.**

RESPONSE: GEICO objects to this interrogatory as vague and ambiguous in its use of undefined and misleading terminology, including the phrase "Auto Driver Notice." Further, GEICO incorporates by reference its general objections regarding the national class, including that requests for nationwide information are overly broad, unduly burdensome, and disproportionate at this stage of the litigation. Subject to and without waiving these objections, GEICO states that determining the exact number of policies where premiums increased following the addition of a youthful driver would require a manual review of multiple highly voluminous

data management systems, and that review would need to be repeated anew for each individual putative class member, which would be extremely burdensome. Additionally, many of these policyholders suffered no injury because either the undisclosed youthful driver was properly added as a member of the customer's household, or the policyholder received a refund or credit after providing GEICO with information regarding the youthful driver. Therefore, such policyholders would not be members of any putative class, assuming such a class could ever be certified. Identifying premium changes also potentially involves assumptions about the causes of those changes, which risks inaccuracies and reliance on incomplete data. However, generally, the addition of a youthful driver results in a premium increase, though other simultaneous policy or rating adjustments may offset, reduce, or increase the overall premium impact.

**10. Identify the average and median premium increase amounts resulting from automatic driver additions (nationwide and by state). The relevant period for this interrogatory is five years.**

RESPONSE: GEICO objects to this interrogatory as vague and ambiguous in its use of the undefined and misleading term "automatic driver additions." GEICO further objects on the grounds that it is based on a fundamentally incorrect and misleading premise. GEICO does not engage in any practice of adding drivers without first notifying the insured and providing an opportunity to respond, clarify, or dispute the information. In addition, GEICO incorporates by reference its general objections regarding the national class, including that requests for nationwide information are overly broad, unduly burdensome, and disproportionate at this stage of the litigation. GEICO also objects to this interrogatory as unduly burdensome and not proportional to the needs of the case,

as it seeks information that is not maintained in the ordinary course of business. Calculating specific premium increases for a particular policyholder would require a manual review of multiple highly voluminous data management systems, and that review must be repeated anew for each individual putative class member, which would be extraordinarily time-consuming, resource-intensive, and impractical. Even if such a manual review were conducted, determining the amount a premium increased following the addition of a youthful driver may necessitate making assumptions about the cause of the premium change, which would result in inaccurate, speculative, or incomplete data. Furthermore, the vast majority of policyholders who would be subject to such a review sustained no injury and therefore would not qualify as members of any putative class, assuming such a class could be certified.

Finally, even if GEICO could accurately calculate average or median premium increases, those figures are irrelevant to any claim or defense. They cannot establish whether any given policyholder has a meritorious claim because they reveal nothing about whether a youthful driver was properly added to a particular policy or, if not, how long that individual remained on the policy and whether the policyholder later received a refund or credit after the individual was removed. Those are individualized, fact-intensive inquiries that defeat predominance. And for the same reason, average and median figures are irrelevant to damages. Even where a policyholder could establish liability, any recovery would be limited to the actual amount that policyholder's premium increased—not the average or median—which can be determined only through an individualized review of that policyholder's circumstances.

**11. State the number of insureds who reported that the individual identified in an Auto Driver Notice did not reside with them or was otherwise unrelated to their policy.**

RESPONSE: GEICO objects to this interrogatory as vague and ambiguous in its use of undefined and misleading terminology, including the phrase "Auto Driver Notice." GEICO further objects to this interrogatory as unduly burdensome because it seeks information that GEICO does not maintain in the ordinary course of business in a readily searchable format. Attempting to determine the number of insureds who reported that a detected youthful driver did not reside with them or was otherwise unrelated to their policy would require a manual review of multiple highly voluminous data management systems, and that review must be repeated anew for each individual putative class member. Even if such a review were conducted—which GEICO contends is disproportionate to the needs of the case due to its extraordinary time, resource, and practical burdens—the information may remain incomplete, as there are a number of reasons that a policyholder may remove an individual from their policy and a policyholder's specific reason for removal of a driver is not necessarily recorded in the policy notes.

**12. State the number of complaints received by GEICO from policyholders who were sent an Auto Driver Notice objecting to the addition of individuals to an auto policy.**

RESPONSE: GEICO objects to this interrogatory as vague and ambiguous in its use of undefined and misleading terminology, including the phrases "Auto Driver Notice," "complaint," and "objecting." The terms "complaint" and "objecting" lack clear or consistent definitions, and it is unclear whether the terms refer to

formal complaints, informal communications, or other expressions of concern from policyholders. GEICO further objects to this interrogatory as unduly burdensome because it seeks information that GEICO does not maintain in the ordinary course of business. Determining the number of complaints received from policyholders who objected to the addition of undisclosed youthful drivers would require a manual review of multiple highly voluminous data management systems, and that review must be repeated anew for each individual putative class member. Even if such a review were conducted—which GEICO contends is disproportionate to the needs of the case due to its extraordinary time, resource, and practical burdens—the resulting number would be of limited relevance and would only serve to underscore the predominance issues inherent in Plaintiff's proposed class. If a policyholder followed GEICO's process by contacting GEICO within 15 days of receiving a Risk Alert Notice to advise that the youthful driver should not be added, such communication may not be formally recorded as a "complaint." Moreover, while some policyholders do raise objections, many of these concerns reflect legitimate, individual circumstances—such as the youthful driver being away at school, deployed, or temporarily absent—which complicate any uniform interpretation of such objections. Finally, policyholders who objected but did not experience a premium increase or were refunded or credited for any increase attributable to the added driver would not be members of any putative class, assuming such a class could be certified. Subject to and without waiving these objections, information responsive to this interrogatory may be derived from

documents produced in this case, which will be made available in accordance with the Federal Rules of Civil Procedure.

**13. Explain how GEICO calculates revised premiums after sending an Auto Driver Notice or adding a driver without any action taken by the insured.**

RESPONSE: GEICO objects to this interrogatory on the grounds that it seeks disclosure of sensitive, proprietary, and trade secret information regarding the methodology used to calculate premiums. The calculation of premiums is complex, highly individualized, and involves numerous customer-specific factors, as well as the application of confidential, proprietary, and trade secret information that is protected from disclosure. Furthermore, the request is disproportionate to the needs of the case, as Plaintiff does not dispute the amount of any premium increase as inappropriate to the youthful driver added to a policy but rather challenges the propriety of the addition and associated increase itself. Accordingly, the precise method of premium calculation is irrelevant to the claims or defenses in this matter. Subject to and without waiving these objections, information responsive to this interrogatory may be derived from documents produced in this case, which will be made available in accordance with the Federal Rules of Civil Procedure.

**14. Identify the categories of records and data fields maintained by GEICO that show when a driver was added to an insured's policy, the source of information for the addition, and whether the insured took any action in response.**

RESPONSE: GEICO objects to this interrogatory as compound, overly broad, and vague. The interrogatory asks for information about driver additions generally, without limitation, when, according to the Complaint, this lawsuit is only about additions of undisclosed youthful drivers following a Risk Alert Notice without action by the insured. Additionally, by combining several distinct inquiries—namely, identification of categories of records, data fields related to driver additions, sources of that information, and any actions taken by the insured—in a single interrogatory, the request is unclear and overly complicated. Furthermore, GEICO does not maintain centralized "records" with discrete "data fields" regarding driver additions in the ordinary course of business. Rather, individual policy information exists across multiple systems and applications containing thousands of tables and records. Compiling information to show when a driver was added to an insured's policy, the source of information for the addition, and whether the insured took any action in response would require GEICO to manually review and query an exceptionally voluminous body of data on policy changes of any sort pertaining to GEICO's entire customer base when the subject and scope of this lawsuit is much narrower. Such a review would be extraordinarily time-consuming, resource-intensive, and unduly burdensome, especially considering the proportionality requirements under the applicable discovery rules.

**15. Describe in detail the databases, record systems, or reports from which information can be obtained regarding Auto Driver Notices or automatic driver additions, premium increases following adding drivers after sending**

**Auto Driver Notices or automatic driver additions, and any subsequent reversals or disputes.**

RESPONSE: GEICO objects to this interrogatory as vague and ambiguous in its use of undefined and misleading terminology, including the phrase "Auto Driver Notices." GEICO further objects to this interrogatory as vague and ambiguous in its use of the undefined and misleading term "automatic driver additions." This term is based on a fundamentally incorrect and misleading premise. GEICO does not engage in any practice of adding drivers without first notifying the insured and providing an opportunity to respond, clarify, or dispute the information. Additionally, GEICO objects to this interrogatory as compound, overly broad, and vague. It combines multiple distinct inquiries into a single interrogatory, including "automatic driver additions," premium increases, and reversals or disputes, making the scope unclear and the burden disproportionate to the needs of the case. GEICO also objects on the grounds that it does not maintain centralized "databases," "record systems" or "reports" regarding driver additions, premium increases, or disputes/reversals in the ordinary course of business. Rather, such information exists across multiple systems and applications containing thousands of tables and records that are not structured to isolate the premium impact of a single policy change, and any attempt to do so would be burdensome and may not yield reliable results. Finally, to the extent this interrogatory seeks information already requested in other interrogatories, GEICO objects as duplicative.

Subject to and without waiving these objections, [redacted]

[redacted] Each Risk Alert Notice provides a 15-day period for response before any driver is added. Responses (or lack thereof) are handled individually. [redacted] GEICO maintains that review of such systems would be extraordinarily time-consuming, resource-intensive, and unduly burdensome, especially considering the proportionality requirements under the applicable discovery rules.

**16. State how GEICO maintains and organizes data concerning Auto Driver Notices or automatic driver additions, including how such data can be queried to identify affected policyholders.**

RESPONSE: GEICO objects to this interrogatory as vague and ambiguous in its use of undefined and misleading terminology, including the phrase "Auto Driver Notices." GEICO further objects to this interrogatory as vague and ambiguous in its use of the undefined and misleading term "automatic driver additions." That phrase is based on a fundamentally incorrect and misleading premise. GEICO does not engage in any practice of adding drivers without first notifying the insured and providing an opportunity to respond, clarify, or dispute the information. Moreover, GEICO objects to the use of the term "affected policyholders," which improperly assumes injury or fault. The addition is contractually valid because the policy permits it, and the policyholder is provided notice of the proposed addition along with an opportunity to object. In many cases, this situation arises only because the insured failed to disclose a driver, as required under the policy.

Subject to and without waiving these objections, GEICO states that the response to this interrogatory is duplicative of the responses to interrogatories fourteen and fifteen refers Plaintiff to its responses to those interrogatories.

**17. Describe how insureds within the class definition can be identified from GEICO's records, including what databases, data fields, or reporting tools would allow identification of insureds who (i) received an Auto Driver Notice, (ii) had a driver added without taking action, and (iii) paid an increased premium as a result.**

RESPONSE: GEICO objects to this interrogatory as vague and ambiguous in its use of undefined and misleading terminology, including the phrase "Auto Driver Notice." GEICO also objects to this interrogatory as vague and ambiguous in its use of the undefined and misleading phrase "driver added without taking action." This is based on a fundamentally incorrect and misleading premise. GEICO does not engage in any practice of adding drivers without first notifying the insured and providing an opportunity to respond, clarify, or dispute the information.

Additionally, GEICO objects to this interrogatory to the extent it assumes the propriety or clarity of the "class definition," which is vague, overbroad, and not amenable to objective identification from GEICO's records. The proposed definitions rely on imprecise and factually inaccurate terms such as "automatically" and "without any action taken by the insured," which ignore the 15-day response window and fail to exclude insureds who affirmatively or knowingly accepted an added driver. The definitions also improperly include insureds who suffered no harm and contain no temporal limitation, rendering them facially overinclusive.

GEICO further objects to this interrogatory as compound, overly broad, and vague, as it combines multiple distinct inquiries into a single interrogatory, making the scope unclear and the burden disproportionate to the needs of the case.

Subject to and without waiving these objections, [redacted] GEICO does not, in the ordinary course of business, maintain a specific list indicating policyholders who experienced a premium increase following receipt of a Risk Alert Notice and the subsequent addition of the undisclosed driver to their policy. Providing this information would necessitate a manual review of multiple highly voluminous data management systems, and that review must be repeated anew for each individual putative class member, when the vast majority of policyholders suffered no injury and would not be members of any putative class, assuming a class could ever be certified. Additionally, confirming that any premium increase specifically resulted from this addition could require making assumptions about the causes of premium changes, risking inaccuracies, speculation, and incomplete data.

**VERIFICATION**

Under penalties of perjury, I, Allison Hoskins, declare that I have read the foregoing Answers to Plaintiff's First Set of Interrogatories and that the facts stated are true and correct to the best of my knowledge and belief.

Executed this 6 day of April, 2026

GEICO CASUALTY COMPANY

By: DocuSigned by: Allison Hoskins E7465747F4C2491...

Print Name: Allison Hoskins

Title: Senior Manager, Underwriting Efficiency