**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| Eric Westerfield,<br><br>Plaintiff,<br><br>v.<br><br>GEICO Advantage Insurance Company,<br><br>Defendant. | Case No. 4:26-cv-01528-SRC |

# Memorandum to Support Motion to Remand

## Introduction

GEICO Advantage's removal calculation depends on a duration estimate its declaration does not explain. This Court accepted a 90-day estimate based on evidence that more than half the added drivers remained after 184 days. *Westerfield v. Gov't Emps. Ins. Co.*, No. 4:26-CV-00173-SRC, 2026 WL 2144550, at *5 (E.D. Mo. July 27, 2026) ("*Westerfield I*"). GEICO Advantage now uses 184 days on similar—if not the same—evidence, without explaining why that evidence supports more than ***doubling*** the estimate. Doc. 1 ¶ 36; Doc. 1-2 ¶¶ 6–7.

The difference determines whether GEICO Advantage's stated calculation crosses $5 million. At its assumed 16,000 losses and $2.20 daily rate, 90 days produces $3,168,000; 184 days produces $6,476,800. The calculation needs an average duration exceeding 142 days. The declaration reports only that more than half remained at one point in time but does not explain why the ***average*** duration exceeds that threshold.

The new Petition also narrows the class and the recoverable loss. It reaches only License-Address additions by GEICO Advantage, permits one Policy-Level Loss per qualifying policy/account addition, and measures that loss as premium collected and retained after attributable refunds and credits. Doc. 5 ("Petition") ¶¶ 4–8, 26–28, 48–51. It expressly rejects treating Westerfield's rate and duration as classwide averages. *Id.* ¶ 57. GEICO Advantage nevertheless multiplies a "customer" count by Westerfield's gross daily charge and its unexplained duration estimate. Doc. 1-2 ¶¶ 3–7.

The Court should remand because GEICO Advantage has not supported that calculation under the governing CAFA standard. If the Court needs further evidence, narrow discovery can identify the population counted, test the duration inference, and estimate the aggregate loss through representative sampling.

## ARGUMENT

### 1. GEICO must support its disputed estimate with competent proof.

A removing defendant must establish by a preponderance that a factfinder might legally conclude the amount in controversy exceeds $5 million. *Brunts v. Walmart, Inc.*, 68 F.4th 1091, 1094 (8th Cir. 2023). CAFA carries no antiremoval presumption, and the defendant may combine "specific factual allegations" with "reasonable deductions, reasonable inferences, or other reasonable extrapolations." *Id.* But the court cannot reach the threshold through "conjecture, speculation, or star gazing." *Id.*

Plaintiff accepts that standard and this Court's admonition that CAFA does not demand evidentiary certainty. *Westerfield I*, 2026 WL 2144550, at *4. The objection is to the factual basis for GEICO Advantage's chosen inputs, not its use of estimates.

When jurisdictional facts are contested, the parties must support their allegations with competent proof. *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010). In a contested CAFA removal, discovery may be taken, the parties submit proof, and the court determines the jurisdictional facts by a preponderance. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88–89 (2014). GEICO Advantage need not prove final damages or concede liability; it must supply facts supporting a reasonable inference that the amount legally in controversy crosses the threshold.

### 2. The duration evidence does not justify doubling the estimate.

At GEICO Advantage's assumed 16,000 losses and $2.20 daily rate, an average duration exceeding about 142.05 days is necessary to cross $5 million: $5,000,000 ÷ (16,000 × $2.20). Its evidence does not explain why the average exceeds that point.

#### 2.1. The day-184 statistic does not establish the required average.

The Notice of Removal describes 184 days as a "conservative approximation of the average number of days" the added drivers remained. Doc. 1 ¶ 36. Hoskins acknowledges that durations "vary significantly": some insureds removed the driver within a week, while others may never have removed the driver. Doc. 1-2 ¶ 6. She reports that "more than half" still had the driver after 184 days, then assumes 184 days for every insured. *Id.* ¶¶ 6–7. The declaration gives no explanation connecting that ***persistence*** percentage to an ***average*** duration of 184 days.

The Federal Judicial Center's statistics guide explains why those statistics differ. An aggregate total is directly related to the arithmetic mean, which incorporates all observations; the total cannot be computed from the median. Kaye & Stern, *Reference*

*Guide on Statistics and Research Methods*, in *Reference Manual on Scientific Evidence* 463, 499–500 & n.101 (Fed. Jud. Ctr. 4th ed. 2025) ("Guide"). The percentage remaining after day 184 likewise does not establish the average duration needed in GEICO Advantage's calculation.

These hypothetical distributions illustrate the missing information. Each satisfies Hoskins's statement that more than half remained after 184 days, yet one falls below the jurisdictional threshold and the other exceeds it:

| Hypothetical durations | Average days | Total at GEICO's other inputs |
|---|---|---|
| 51% last 185 days; 49% last six days | 97.29 | $3,424,608 |
| 51% last 365 days; 49% last six days | 189.09 | $6,655,968 |

Neither distribution purports to describe the actual cohort. They demonstrate the reported percentage alone does not show which side of $5 million the aggregate falls on. *Brunts* permits reasonable inferences from specific facts, but GEICO Advantage must explain why the fact it reports supports the quantity it estimates.

Westerfield's own addition lasted six days, although GEICO Advantage's multiplier assigns it 184. Doc. 1-2 ¶ 5. Longer additions could offset shorter ones and push the average above 142 days. The declaration does not disclose the balance or explain why it reasonably supports that inference.

### 2.2. Similar evidence previously supported a 90-day estimate.

This Court's prior treatment supplies a useful benchmark. In *Westerfield I*, GEICO Advantage initially assumed 90 days. After Plaintiff challenged the estimate as unsupported, GEICO Advantage submitted Hoskins's statement that, among

20,000 insureds, more than half still had the added driver after 184 days. The Court held that, "on these facts," the 90-day estimate was a reasonable deduction. 2026 WL 2144550, at *5.

That estimate closely tracked the lower bound the statistic supports. If slightly more than half the observations lasted at least 184 days and every remaining observation were assigned zero days, the mean would still exceed 92 days. A 90-day estimate thus required no assumption about how much longer the persistent additions lasted. A 184-day estimate does.

Calling the new estimate "conservative" does not supply the missing explanation. Doc. 1 ¶ 36; Doc. 1-2 ¶ 6. Some additions may last longer than 184 days, but the shorter additions count too. Whether 184 days understates the average depends on the balance of both groups, not simply the existence of longer additions.

*Westerfield I* does not freeze the estimate at 90 days. New evidence could support 184 days or another figure. GEICO Advantage, however, identifies no new fact connecting the day-184 percentage to the increased estimate. If the cohort or methodology changed, it should explain how that change supports the new inference. If neither changed materially, the prior ruling supplies no reason to more than double the multiplier.

### 3. The new petition changes the class and losses GEICO must estimate.

GEICO Advantage describes the removal as "this exact same exercise" and identifies dropping the other GEICO entities and the conspiracy claim as the "only substantive differences." Doc. 1 ¶¶ 2, 12. The Petition makes additional changes to the population, unit of loss, and monetary proxy that supported *Westerfield I*.

#### 3.1. The class reaches only qualifying License-Address additions.

The population ruling in *Westerfield I* rested on a petition that named eight GEICO-branded entities, referred to them collectively as "GEICO," did not identify Westerfield's insurer, and defined the class by reference to "one or more of the GEICO entities who insured [Westerfield]." 2026 WL 2144550, at *3. The current Petition names only GEICO Advantage and reaches only License-Address additions—not the name-and-address referral criterion. Doc. 5 ¶¶ 4, 7, 26–28, 48–49. It requires positive premium collected and retained after attributable refunds and credits and excludes anyone within the operative *Kane* class. *Id.* ¶¶ 48–49, 52(c). GEICO Advantage's count must reasonably relate to that population. *Westerfield I*, 2026 WL 2144550, at *3.

GEICO Advantage also repeats that "many" added drivers are children or other family members living with the policyholder, using that premise to explain why additions may persist. Doc. 1 at 11 n.2, ¶ 36. The former population included a referral criterion requiring both surname and address to match; this class does not. Different-surname household members remain possible, but GEICO Advantage offers no evidence establishing how often that premise holds for the narrower class.

### 3.2. GEICO has not tied its customer count to distinct policy losses.

The Petition permits one Policy-Level Loss per qualifying policy/account addition. Doc. 5 ¶¶ 6–8, 50–51. The same loss cannot be counted again because several insureds, drivers, account holders, payors, or billing entries are associated with it. *Id*. The count GEICO Advantage multiplies by a policy-level monetary estimate must therefore reasonably correspond to distinct qualifying additions.

Westerfield and his wife are both named insureds on one policy. *Westerfield I*, Doc. 48-2. Hoskins says the challenged addition caused a $13.19 "charge" to that policy. Doc. 1-2 ¶ 5. The Petition permits one combined loss from that addition, reduced by any attributable refund or credit. Doc. 5 ¶¶ 48, 50–51. If "customer" counts both named insureds separately, multiplying each by a policy-level loss would count the same transaction twice. The declaration does not explain whether its count is at the person, policy, account, or addition level.

At GEICO Advantage's assumed $2.20 daily rate and 184-day duration, crossing $5 million requires at least 12,352 distinct losses. Its declaration reports more than 16,000 "customers" or "insureds," but does not explain why that count supports at least 12,352 qualifying policy/account additions. Doc. 1-2 ¶¶ 3–7. The issue is whether the units in the formula fit the claim, not whether GEICO Advantage has completed a final class list.

### 3.3. GEICO has not justified its $2.20 daily-rate proxy.

The prior rate ruling also rested on the former pleading and additional evidence. The Court held that Westerfield could not fault GEICO Advantage for using his

overcharge as an average when he had alleged his claims were typical. *Westerfield I*, 2026 WL 2144550, at *4 (citing *Hartis v. Chicago Title Insurance Co.*, 694 F.3d 935, 945–46 (8th Cir. 2012)). GEICO Advantage also supplied evidence the average added expense of a youthful driver exceeded $2.72 per day. *Id.*

The current Petition alleges typicality based on common policy language, the standardized Risk Alert process, rerating, and liability theories. Doc. 5 ¶ 57. It expressly disclaims that Westerfield's $13.19 charge, approximate $2.20 daily rate, six-day duration, or insured-to-policy ratio represents a classwide average. *Id.* It also measures loss as premium collected and retained after attributable refunds and credits, rather than the gross amount "charged" that Hoskins provides. *Id.* ¶¶ 48, 50.

Those allegations do not automatically bar using Westerfield's experience as an estimate. They remove the pleading-based premise on which the Court previously relied. GEICO Advantage supplies no replacement factual basis explaining why his gross daily "charge" reasonably approximates ***net*** retained premium for the narrower cohort. Doc. 1-2 ¶ 5.

### 4. CAFA permits estimates supported by facts and reasonable inferences.

The Eighth Circuit permits concrete business aggregates even when they may include transactions for which damages ultimately prove unrecoverable. It accepted actual Missouri sales figures in *Raskas v. Johnson & Johnson*, 719 F.3d 884, 887–88 (8th Cir. 2013). And accepted premiums collected on policies containing the challenged deductibles in *Dammann v. Progressive Direct Ins. Co.*, 856 F.3d 580, 583–84 (8th Cir.

2017). *Brunts* accepted a declaration that sales of the challenged products exceeded $5 million. 68 F.4th at 1094–95. Those cases foreclose demanding final policy-by-policy damages proof.

Here, however, GEICO Advantage identifies no aggregate of challenged ***net*** premium exceeding $5 million. Its $6,476,800 figure results from multiplying a "customer" count, an individual daily "charge," and an assumed average duration. Multiplication is permissible: *Hartis* used the plaintiffs' $12 average overcharge because their complaint made it representative of essentially identical transactions. 694 F.3d at 945–46. This Petition expressly rejects numerical representativeness. The issue is the basis for GEICO Advantage's inputs.

*Hood v. Gilster-Mary Lee Corp.*, 785 F.3d 263, 265–66 (8th Cir. 2015), illustrates the need for a reasoned extrapolation. It concerned the local-controversy exception, which the plaintiffs bore the burden to establish. The district court extrapolated known citizenship information to an unknown population without a sample, sampling methodology, or other disciplined approach. The Eighth Circuit rejected the inference because the evidence did not "bridge the gap" to the statutory threshold. *Id.* at 266. Although the jurisdictional fact and burden differed, the same methodological problem arises when a ***persistence*** percentage is used to supply an unexplained ***average*** duration.

*Hood* also endorsed representative sampling as an alternative to exhaustive individualized proof. *Id.* (citing *Myrick v. WellPoint, Inc.*, 764 F.3d 662, 665 (7th Cir. 2014), and *In re Sprint Nextel Corp.*, 593 F.3d 669, 675–76 (7th Cir. 2010)). *Myrick*

described drawing a random sample, determining the relevant fact for the sampled units, and extrapolating to the population. If the result approaches the statutory line, the sample can be expanded and statistical analysis used to ensure reliability. 764 F.3d at 665. Sampling is an available means of supporting an estimate; Plaintiff does not contend it is the only permissible means.

*Waters v. Ferrara Candy Co.*, 873 F.3d 633, 636 (8th Cir. 2017), supplies the amount-in-controversy application. The Eighth Circuit affirmed remand where the affidavit omitted facts needed to translate potential injunctive relief into the claimed compliance cost. Likewise, the Court here should require facts that reasonably connect GEICO Advantage's reported statistic to the duration its formula needs.

### 5. Limited discovery can resolve the disputed jurisdictional facts.

The present record warrants remand. If the Court needs additional evidence before deciding jurisdiction, limited discovery can test GEICO Advantage's inputs and estimate the aggregate loss without reviewing every policy.

#### 5.1. The declaration leaves necessary facts unknown and disputed.

*Dart Cherokee* recognizes discovery when the amount in controversy is disputed. 574 U.S. at 88–89. This District followed that course in *Scherrer v. Foremost Insurance Co. of Grand Rapids Michigan*, 2018 WL 1508904, at *1, *3 (E.D. Mo. Mar. 27, 2018): limited discovery replaced an initial estimate based on assumed market-share and industry-average figures with actual claim data, allowing the court to decide jurisdiction.

This Court denied discovery in *Westerfield I* after finding GEICO Advantage had met its burden and concluding that facts necessary to the jurisdictional inquiry were

neither unknown nor disputed. 2026 WL 2144550, at *6 (quoting *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 598 (8th Cir. 2011)). Here, the declaration leaves both unknown and disputed the units behind the customer count and the population and methods behind the duration inference. Discovery on those points applies the prior ruling's stated rationale.

**5.2. Existing data and sampling can test GEICO's calculation.**

GEICO Casualty's September 25, 2026 filing in *Kane* identifies available data. It describes a spreadsheet identifying Florida policyholders on a driver-by-driver basis, the Risk Alert notice type, and "attrition data showing whether the added driver(s) remained on the insured's policies at various time intervals," with removal reasons where applicable. *Kane*, Doc. 79 at 3–4. GEICO Casualty states the *Westerfield I* declarations used a dataset that "functionally contains the same data." *Id.* at 6, 10. It also contends exact driver-specific durations, payments, and later refunds are not centrally located and may require individualized review. *Id.* at 4–5, 8–12. Assuming that contention, it supports testing a representative sample rather than demanding classwide calculations.

First, GEICO Advantage should identify the query, filters, and counting units that produced the present License-Address cohort and provide the number of unique policy/account additions. Its prior declaration reported "more than 15,000" insureds for the broader Risk Alert population; the present declaration reports "more than 16,000" customers for the narrower class. *Westerfield I*, Doc. 40-1 ¶ 6; Doc. 1-2 ¶ 3. Both figures are lower bounds, and the rolling periods differ, so they are not necessarily

inconsistent. The unexplained change nevertheless makes the counting methodology relevant. *Holzum v. Wal-Mart Stores, Inc.*, 2018 WL 3826679, at *2 (E.D. Mo. Aug. 10, 2018), treated an unexplained change in jurisdictional figures as bearing on reliability.

Second, the parties can draw a random sample from the unique policy/account additions and determine the net premium attributable to each sampled addition after refunds and credits. Candidate additions with no qualifying loss should receive zero in calculating the sample mean, rather than being excluded without adjusting the population. Multiplying that mean by the number of candidate units estimates the aggregate loss while accounting for the proportion that qualifies. An initial sample of about 100, as *Myrick* illustrates, can be expanded if the estimate approaches $5 million or additional analysis is needed for reliability. 764 F.3d at 665.

Third, GEICO Advantage should provide the numerator, denominator, and interval attrition counts behind the day-184 statistic for the same License-Address cohort. Those data can test the duration inference while the sample estimates the aggregate loss. The Court can then decide jurisdiction on a defined record after supplemental briefing.

## CONCLUSION

*Westerfield I* supplies the governing standard, but does not establish jurisdiction over this narrower claim with a narrower class. GEICO Advantage has not explained why materially similar duration evidence supports more than doubling its estimate, why its customer count corresponds to distinct qualifying losses, or why Westerfield's gross charge approximates net retained premium for this class.

The Court should remand to the Circuit Court of St. Louis County, Missouri. Alternatively, it should permit the limited jurisdictional discovery described above and supplemental briefing before deciding jurisdiction

**ONDERLAW, LLC**

By: */s/ Martin L. Daesch*
Martin L. Daesch, #40494 (MO)
Jesse B. Rochman, #60712 (MO)
110 E. Lockwood Ave.
St. Louis, MO 63119
(314) 963-9000 (telephone)
daesch@onderlaw.com
rochman@onderlaw.com
*Attorneys for Plaintiff*

**Certificate of Service**

I certify that on October 2, 2026, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all attorneys of record.

*/s/ Martin L. Daesch*