**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| Eric Westerfield,<br><br>Plaintiff,<br><br>v.<br><br>GEICO Advantage Insurance Company,<br><br>Defendant. | Case No. 4:26-cv-01528-SRC |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

## INTRODUCTION

This Court has already determined that Plaintiff's claims do not belong here. Specifically, this Court found that, because of the substantial similarity between Plaintiff's claims and those at issue in the already-pending *Kane* Action,[1] Plaintiff's case should be transferred to the Middle District of Florida pursuant to the "first-to-file" rule. *Westerfield, et al. v. Government Employees Ins. Co., et al.*, No. 4:26-CV-00173 (E.D. Mo. 2026) ("*Westerfield I*"), ECF No. 61 at 21–23 ("[B]ecause no compelling circumstances exist here, the Court transfers this case under the first-filed rule."). Yet, notwithstanding this Court's Order, the parties are back before this Court for a second time after Plaintiff voluntarily dismissed his case following transfer and re-filed his claims in Missouri state court. But with the exception of a few superficial changes, Plaintiff's allegations in this action are no different from those that this Court dismissed in July. This Court should thus reject Plaintiff's transparent attempt to end-run its prior Order and dismiss his claims again.

At the outset, Missouri remains an improper forum for this lawsuit. As this Court already concluded, Plaintiff's claims are substantively similar to an earlier-filed class action pending in the Middle District of Florida—brought by the same counsel who represent Plaintiff here—and should be dismissed in favor of that action pursuant to federal courts' well-established "first-to-file" rule. Even were that not the case, dismissal would still be warranted for lack of personal jurisdiction over GEICO Advantage, as, while this Court previously found sufficient jurisdiction over the eight GEICO defendants in *Westerfield I*, the same conclusion does not hold true for Plaintiff's claims against GEICO Advantage alone. To the contrary, Mr. Westerfield was a ***Kansas*** resident with a ***Kansas*** insurance policy at the time of his alleged injury, and GEICO Advantage did not (and does not) even use the Risk Alert program in connection with Missouri insurance

[1] *Kane v. GEICO Casualty Co.*, No. 6:25-cv-00532-JSS (M.D. Fla. 2025) (the "*Kane* Action").

policies. In fact, GEICO Advantage did not even service Missouri insurance policies at the time the underlying events took place. As a result, Plaintiff's claims do not stem from (or even relate to) the State of Missouri, warranting dismissal.

Finally, while the Court did not reach GEICO's substantive motion to dismiss arguments in the earlier case in light of the clear application of the "first-to-file" rule, GEICO reiterates that, even setting aside Plaintiff's foundational procedural defects, Mr. Westerfield's Petition fails to state a claim for relief because GEICO Advantage's adjustment of his policy premiums—the alleged "misconduct" that gives rise to each of his causes of action—is ***expressly authorized*** by his insurance policy. And even were that not the case, Plaintiff's good faith and fair dealing and unjust enrichment claims would still be independently subject to dismissal as duplicative of and inconsistent with his breach of contract claim. Accordingly, because Plaintiff has had multiple bites at the apple—notwithstanding this Court's Order—and has continued to prove himself incapable of stating a claim for relief, GEICO Advantage respectfully requests that the entirety of Plaintiff's Petition be dismissed with prejudice.

## **BACKGROUND**

GEICO Advantage is an authorized provider of private-passenger automobile insurance. *See* Petition ¶ 16. In exchange for providing such service, GEICO Advantage's insureds pay premiums that are based on a multitude of factors, including the number of authorized drivers on a given account, the number and types of vehicles insured, and the record of the subject drivers, to name a few. *See* ECF No. 5-1 (the "Policy") at 15–16. To ensure that GEICO Advantage is charging them the appropriate premium in light of those factors, GEICO Advantage's insureds explicitly agree that GEICO Advantage may make changes to an insured's premiums during the policy term where information on which the premium is based is incorrect, incomplete, or changed. *See* Pet. ¶¶ 22–23. Specifically, Section V of the Policy provides that, because "[t]he premium for

each auto is based on the information [GEICO Advantage] ha[s] in [an insured's] file":

(a) [GEICO Advantage] may adjust [an insured's] policy premiums ***during the policy term*** if any of this information on which the premiums are based is incorrect, incomplete, or changed.

(b) [The insured] will cooperate with [GEICO Advantage] in determining if this information is correct and complete.

(c) [The insured] will notify [GEICO Advantage] of any changes in this information.

Policy at 15–16 (emphasis added); *see also* Pet. ¶ 22. In other words, as Plaintiff concedes, the Policy expressly authorizes GEICO Advantage to adjust policy premiums during the policy term in the event there are changes to material information impacting those premiums. Pet. ¶ 22 ("These provisions identify information relevant to rating and authorize premium adjustments[.]").

That is precisely what is alleged to have occurred here. According to the Petition, GEICO Advantage sent Mr. Westerfield an email on October 2, 2024 explaining that it had identified an individual—"based on information obtained from a consumer reporting agency"—who potentially resided at Mr. Westerfield's address and thus needed to be added to his policy "[i]n order to ensure proper protection . . . if they reside in your household." *See* Pet. ¶¶ 33–35; ECF No. 5-1 at 22. The notice alerted Mr. Westerfield that the individual would be "automatically added" within fifteen days unless Mr. Westerfield simply notified GEICO Advantage that the individual should not be added. *Id*. If he did not do so, however, GEICO Advantage would assume the information it obtained was accurate and correct his premiums accordingly. *See id*. Mr. Westerfield concedes that he took no action in response to GEICO Advantage's notice within fifteen days, and that, as a result, GEICO Advantage added the relevant driver to his policy. *See, e.g.*, Pet. ¶¶ 36, 39–40.

If these facts sound familiar, it is because they are not new to this Court. Just nine months ago, Plaintiff—represented by the same counsel as represents him here—filed a substantially similar class action in Missouri state court against eight GEICO defendants—including GEICO

Advantage—challenging GEICO Advantage's same authorized premium adjustments on behalf of putative nationwide and Missouri classes. *See Westerfield, et al. v. Government Employees Ins. Co., et al.*, No. 25SL-CC14196 (Mo. Cir. Ct. 2025). On February 4, 2026, the GEICO defendants timely removed that action to the Eastern District of Missouri pursuant to the subject matter jurisdiction provided by the Class Action Fairness Act ("CAFA"). *Westerfield I*, ECF No. 1.

Dissatisfied with federal court, Plaintiff filed a motion to remand on February 23, arguing that GEICO had not adequately alleged that the amount in controversy exceeded CAFA's $5 million threshold. *See Westerfield I*, ECF No. 38. Parallel with Plaintiff's motion to remand, GEICO moved to dismiss Plaintiff's claims. *Westerfield I*, ECF No. 45. Among other things, GEICO argued that dismissal was proper because (1) Plaintiff's claims were substantially similar to those in the already-pending *Kane* Action and therefore should be dismissed pursuant to the "first-to-file" rule, (2) there was insufficient personal jurisdiction against the GEICO defendants arising out of Plaintiff's claims, and (3) Plaintiff's Petition failed to state a claim for relief because, *inter alia*, the underlying insurance policy expressly authorized the conduct at issue. *Id.*

On July 27, 2026, this Court issued its Order denying Plaintiff's motion to remand and granting, in part, GEICO's motion to dismiss. *See Westerfield I*, ECF No. 61 (the "Order"). Specifically, in its Order, this Court concluded that, because "the parties don't dispute that [the *Kane* Action] was filed several months before this action . . . the parties are substantially similar [in both cases] . . . [and] [b]oth cases also raise substantially similar claims," application of the "first-to-file" rule was proper. *Id.* at 22–23. As a result, this Court transferred Plaintiff's case to the Middle District of Florida, where the *Kane* Action was pending. *Id.* Just prior to transfer, however, Plaintiff filed a notice of voluntary dismissal. *Westerfield I*, ECF No. 62. When the case was transferred despite his notice, Plaintiff filed yet another voluntary dismissal in the Middle

District of Florida, which was subsequently entered by that court. *Westerfield et al. v. Government Employees Ins. Co. et al.*, No. 4:26-CV-01638 (M.D. Fla. 2026), ECF Nos. 65 and 66.

The reason for Plaintiff's voluntary dismissal is clear, as Plaintiff commenced the instant action ***on the very same day*** that he filed his notice of voluntary dismissal in *Westerfield I*. Unsurprisingly, Plaintiff's claims in this case are substantially similar to those asserted in *Westerfield I*, other than (1) Plaintiff dropping his claims against GEICO entities other than the one that insured him (GEICO Advantage) and, (2) Plaintiff dropping his civil conspiracy claim, in which he had alleged that "GEICO's 'unified systems and practices result in identical policy forms and identical operational practices across all GEICO entities, including the automatic addition of drivers based on third-party data.'" *Westerfield I*, ECF No. 1-1 ¶ 23. Plaintiff's Petition otherwise continues to allege that GEICO Advantage allegedly overcharged him (and a putative nationwide class) through its Risk Alert program. While the purported class excludes persons within the *Kane* Action class and disavows punitive damages, attorney's fees, and injunctive relief (Pet. ¶¶ 8, 48–52), these allegations are nothing more than a transparent (and insufficient) attempt to plead around this Court's ruling in *Westerfield I*. Such transparent forum shopping should not be countenanced. As a result, and as detailed below, dismissal remains warranted.

## ARGUMENT

### I. Plaintiff's claims should be dismissed pursuant to the "first-to-file" rule.

As this Court already found, this case should be dismissed in favor of the already pending *Kane* Action. The analysis is straightforward—indeed, this Court need only repeat its analysis from *Westerfield I*, in which it recognized that the "[the *Kane* Action] was filed several months before this action . . . the parties are substantially similar [in both cases] . . . [and] [b]oth cases also raise substantially similar claims." Order at 21–23. Plaintiff's superficial narrowing of his claims in a transparent attempt to avoid dismissal does nothing to alter that conclusion.

Pursuant to foundational principles of judicial comity, the "first-to-file" rule "gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." *Nw. Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993). "This first-filed rule 'is not intended to be rigid, mechanical, or inflexible,' but is to be applied in a manner best serving the interests of justice. The prevailing standard is that 'in the absence of compelling circumstances,' the first-filed rule should apply." *Mishkin v. Volkswagen Group of Am., Inc.*, 2022 WL 18664851, at *1 (E.D. Mo. Oct. 11, 2022) (internal citations omitted). In determining whether dismissal is warranted under the "first-to-file" rule, courts examine: "(1) [the] timing of events; (2) the similarity of the parties involved; and (3) the similarity of the claim or issues at stake." *Brinker v. Kraft Heinz Foods Co.*, 2024 WL 3638243, at *2 (E.D. Mo. Aug. 1, 2024) (citation omitted). Here, just as this Court held in *Westerfield I*, all three factors weigh in favor of application of the "first-to-file" rule.

*First*, the timing unambiguously favors application of the rule, as Mr. Kane filed his Complaint on March 26, 2025, while Mr. Westerfield did not commence this action until August 4, 2026, more than sixteen months later. *See* Order at 22 ("[T]he parties don't dispute that [the *Kane* Action] was filed several months before this action."); *see also, e.g.*, *Mishkin*, 2022 WL 18664851, at *2; *Brinker*, 2024 WL 3638243, at *2 (explaining "the first court in which jurisdiction attaches has priority to consider the case").

*Second*, the similarity between the parties here and in the *Kane* Action also points in favor of dismissal. While Plaintiff dropped his claims against GEICO Casualty—the defendant in the *Kane* Action—the law is clear that the primary consideration under the "first-to-file" rule is not whether the parties include *exactly* the same individuals or entities, but rather whether "the parties' *interests* in each case are clearly aligned[.]" *HRB Tax Grp., Inc. v. Nat'l Union Fire Ins. Co. of*

*Pittsburgh, PA*, 2012 WL 4363723, at *2 (W.D. Mo. Sept. 21, 2012) (emphasis added). This Court's prior ruling in *Westerfield I* is instructive on this issue. There, this Court recognized that "the parties [we]re substantially similar" even though the actions did not name the exact same collection of GEICO entities because, among other things, "Westerfield's complaint treats each Defendant as part of a collective unit that uses the same Risk Alert program against its policyholders." Order at 22–23 (citing Plaintiff's allegation that GEICO's "unified systems and practices result in identical policy forms and identical operational practices across all GEICO entities, including the automatic addition of drivers based on third-party data")). The same logic applies here. GEICO Advantage continues to have the same interest in defending GEICO's Risk Alert program as GEICO Casualty does in the *Kane* Action. *See Masud v. TD Ameritrade Inc.*, 2025 WL 1644423, at *6 (D. Neb. June 10, 2025) ("Plaintiffs sued substantially similar defendants—members of the same corporate family who are aligned on every issue."); *Evans v. J.P. Morgan Chase Bank, N.A.*, 2014 WL 12600285, at *1 (W.D. Mo. Feb. 12, 2014) (applying "first-to-file" rule to cases involving corporate affiliates).

Mr. Westerfield's and Mr. Kane's interests are likewise aligned, as they both challenge the same conduct and seek the same relief. *Compare, e.g.*, Pet. ¶¶ 1–8, *with Kane* Compl. ¶¶ 1–9; *see also Brinker*, 2024 WL 3638243, at *2. Further, as this Court previously recognized, "the same counsel represents plaintiffs in both cases." Order at 23. While Plaintiff once again attempts to plead around the issue by expressly excluding persons within the *Kane* Action putative class (Pet. ¶ 52), this artificial distinction overlooks that, even where classes are mutually exclusive, courts continue to apply the "first-to-file" rule where there exists an overlap in core facts and legal issues that create a risk of duplicative or inconsistent judgments. *See General Committee of Adjustment GO-386 v. Burlington N. R.R.*, 895 F. Supp. 249, 252 (E.D. Mo. 1995) (applying "first-to-file" rule

where the issue was "one of national ramifications" requiring "a single definitive ruling"); *Cadenasso v. Metro. Life Ins. Co.*, 2014 WL 1510853, at *10 (N.D. Cal. Apr. 15, 2014) (applying "first-to-file" rule to cases with "nearly identical issues," even though "classes [were] mutually exclusive"). Because the parties' interests are plainly aligned across both cases, this factor continues to squarely support application of the rule.

*Third*, as this Court previously recognized, the issues in dispute are virtually identical across both cases. Order at 23 ("Both cases also raise substantially similar claims."). Indeed, both this case and the *Kane* Action involve substantially similar allegations concerning GEICO's Risk Alert program, and both cases assert identical claims for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. *Compare* Pet. ¶¶ 60–81, *with Kane* Compl. ¶¶ 71–132. Because the core question under the "first-to-file" rule is whether the complaints "challenge the same general practice," which is plainly the case here, application of the rule continues to be warranted. *Masud*, 2025 WL 1644423, at *5; *Wright*, 2017 WL 1435717, at *3; *see also HRB Tax Grp., Inc.*, 2012 WL 4363723, at *4 (applying "first-to-file" rule where proceeding with parallel litigation would be "[a] waste of judicial resources and an unnecessary risk of inconsistent rulings may result from litigating the same issues in two courts").

While courts are granted broad discretion as to whether to dismiss, stay, or transfer a case when applying the "first-to-file" rule, GEICO Advantage believes that dismissal of Plaintiff's claims is justified under the circumstances. As detailed above, Plaintiff already rejected this Court's attempt to transfer his claims to the Middle District of Florida. One can only assume that Plaintiff does not wish to litigate his claims in that court. As a result, and because Plaintiff has not, and cannot, point to *any* compelling circumstances justifying a decision to move forward with his copycat claims in this Court, GEICO believes that dismissal is warranted.

## II. Plaintiff's claims should be dismissed for lack of personal jurisdiction.

Even if this Court declines to apply the "first-to-file" rule and dismiss this action in favor of the earlier-filed *Kane* Action, this case should still be dismissed for lack of personal jurisdiction. To bring his claims, Plaintiff must satisfy his burden of alleging that this Court possesses *in personam* jurisdiction over GEICO Advantage. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003). While this Court previously concluded that Plaintiff had adequately pleaded personal jurisdiction over "GEICO"—defined in *Westerfield I* to include each of the eight GEICO defendants at issue—Defendant respectfully suggests that this conclusion no longer holds now that GEICO Advantage is the sole defendant.

To establish personal jurisdiction over GEICO Advantage, Plaintiff must adequately plead either general or specific jurisdiction, where "'[s]pecific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state,' while '[g]eneral jurisdiction . . . refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.'" *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1091 (8th Cir. 2008). As this Court previously recognized, Plaintiff has not pleaded any facts that would sustain a finding of general jurisdiction over GEICO Advantage, which is neither incorporated nor has a principal place of business in Missouri. Order at 15–16 ("The Court finds that Westerfield has not met, or attempted to meet, his burden to establish general jurisdiction over GEICO."); *see also, e.g.*, *Satterfield v. Gov't Emps. Ins. Co.*, 287 F. Supp. 3d 1285, 1298 (W.D. Okla. 2018) ("Because [Plaintiff] has not shown that GEICO is any more 'at home' in Oklahoma than it is 'at home' in any other state where it conduct[s] operations, the Court finds [Plaintiff] has not made a prima facie showing of general jurisdiction over GEICO.").

As a result, for his claims to survive, Plaintiff must be able to establish specific jurisdiction against GEICO Advantage, which "requires the suit to 'arise out of or relate to the defendant's

contacts with the forum.'" Order at 16. While this Court previously found specific jurisdiction over the eight GEICO defendants in *Westerfield I* (Order at 16–21), GEICO Advantage respectfully submits that the allegations in the instant action require a different outcome, as Plaintiff cannot draw *any* connection between this forum and his allegations about GEICO Advantage's Risk Alert program, which GEICO Advantage ***does not even utilize for Missouri-based policies***. ECF No. 1-2 ¶ 4.[2] In fact, at the time the drivers at issue were added to Mr. Westerfield's Kansas Policy, GEICO Advantage ***did not even issue policies to residents of the State of Missouri.*** Ex. A, Declaration of A. Hoskins, ¶ 3. Ultimately, there can be no dispute that the underlying facts at issue relate only to Kansas, as Plaintiff had a *Kansas* insurance agreement and his allegations concerning GEICO Advantage's Risk Alert program are inherently tied to the addition of drivers at Plaintiff's address in *Kansas*. ECF No. 5-1 at 24. Through this lens, it is clear that haling GEICO Advantage into Missouri for a lawsuit relating to Kansas-directed conduct is the type of "'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person'" that courts forbid. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

GEICO Advantage recognizes this Court's prior analysis that it was foreseeable for the eight GEICO defendants in *Westerfield I* to be sued in Missouri under the Policy's broad territory-of-coverage clause (Order at 19–20), but, importantly, the plain language of GEICO Advantage's territoriality provision makes clear that it applies only to "accidents, occurrences or losses during the policy period," ***not*** to *any and all* disputes under the Policy. ECF No. 5-1 at 15. This distinction matters, as otherwise the boundaries between general jurisdiction and specific jurisdiction would all but disappear, and an insured could bring suit against GEICO *anywhere* in the nation no matter

---

[2] It is for this same reason that GEICO Advantage's conduct does not fall within the two provisions of Missouri's long-arm statute that this Court found adequate for the eight GEICO defendants in *Westerfield I.*

the nature of the underlying conduct. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) (requiring the "*suit-related* conduct . . . create a substantial connection with the forum State" (emphasis added)); *Miller*, 528 F.3d at 1091 ("Specific jurisdiction refers to jurisdiction over *causes of action arising from or related to* a defendant's actions within the forum state[.]" (emphasis added)). To be clear, were Mr. Westerfield involved in a car accident in Missouri, specific jurisdiction may exist for that claim, but here, where Mr. Westerfield filed suit against GEICO Advantage based on the addition of a driver to his ***Kansas*** policy based on his ***Kansas*** address, foreseeability is lacking, particularly where, as noted above, GEICO Advantage did not use the Risk Alert program for Missouri-based policies or even issue insurance policies in the State of Missouri at the time of the alleged conduct. Ex. A, ¶¶ 3–4; *see also Warren v. Cardoza Pub., Inc.*, 2011 WL 6010758, at *7 (E.D. Mo. Dec. 2, 2011) (finding no purposeful availment where "Defendants had no indication whatsoever that they were entering into a contract with any connection at all to Missouri").

While Plaintiff continues to cling to his allegations that "GEICO Advantage communicated with him while he lived in Missouri" and "offered to renew his coverage" when Plaintiff was living in Missouri (Pet. ¶¶ 20–21), he once again "carefully elides whether [GEICO] deliberately entered a contractual relationship with Westerfield in Missouri." Order at 18.[3] There is good reason for his reticence: the law is clear that where, as here, a defendant has no reason to know of a plaintiff's relocation, it cannot be said to have purposefully availed itself of that forum. *Warren*, 2011 WL 6010758, at *7; *Bellisio Foods, Inc. v. Prodo Pak Corp.*, 2008 WL 4867352, at *7 (D. Minn. Nov. 4, 2008) ("One does not purposefully avail oneself of the privilege of doing business in Minnesota by negotiating a contract with someone who is secretly a Minnesota resident."); *Allan G. Holms*,

[3] Notably, once GEICO Advantage discovered that Mr. Westerfield moved to Missouri, it ceased to insure him—a fact rendered necessary by the fact that GEICO Advantage did not at that time issue policies in the State of Missouri. Ex. A, ¶ 4.

*Inc. v. Mraz*, 2006 WL 2506044, at *3–4 (D. Mont. Aug. 28, 2006) (finding no personal jurisdiction where "Plaintiffs have not alleged or shown that the Defendants even knew, or had reason to know, that they were contracting with a Montana corporation"). Because the Petition does not connect GEICO Advantage's Risk Alert program to a Missouri-specific act giving rise to Plaintiff's claims, Plaintiff's claims against GEICO Advantage should be dismissed for lack of personal jurisdiction.

## III. Plaintiff's Petition also fails to state a claim upon which relief can be granted.

Even were Mr. Westerfield able to overcome the fatal procedural defects outlined above, his Petition would still be subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).[4] Specifically, because Mr. Westerfield's insurance policy with GEICO Advantage *expressly authorizes* the conduct about which he now complains, each of his three claims fail to state a claim upon which relief can be granted. In addition, his good faith and fair dealing and unjust enrichment claims are independently subject to dismissal as duplicative of and inconsistent with his breach of contract claim. Because each of these issues cannot be cured as a matter of law, Mr. Westerfield's Petition should be dismissed with prejudice.

### a. Plaintiff's breach of contract claim should be dismissed because his insurance policy with GEICO Advantage expressly permits the conduct alleged.

Plaintiff's insurance agreement *expressly authorizes* the precise conduct about which Mr. Westerfield complains, thereby compelling dismissal of his breach of contract claim. As detailed in Section V of the Policy, GEICO Advantage is permitted to "adjust [an insured's] policy premiums during the policy term if any of [the] information on which the premiums are based is incorrect, incomplete or changed." Policy at 15–16; *see also* Pet. ¶¶ 22–23. Because insureds may not always affirmatively volunteer such information (including, for example, the presence of a

---

[4] This Court in *Westerfield I* granted GEICO's motion to dismiss pursuant to the "first-to-file" rule before reaching the merits of GEICO's arguments that Plaintiff cannot state a claim upon which relief can be granted. *See* Order at 23. Accordingly, GEICO renews those arguments here.

comparatively high-risk and therefore expensive-to-insure youthful driver), the Policy builds in a contractual obligation for the insured to "cooperate with [GEICO Advantage] in determining if this information is correct and complete." Pet. ¶ 23; Policy at 16. Given that the conduct about which Mr. Westerfield complains is consistent with—and in fact expressly contemplated by—this provision, it cannot form the basis of his breach of contract claim.

Specifically, in line with Section V of the Policy, Plaintiff alleges that GEICO Advantage sent written notice informing him that, based on information received from a consumer reporting agency, a driver not listed on his policy "may be a licensed or permitted driver with your address." ECF No. 5-1 at 22. Following receipt, pursuant to the terms of the Policy, Mr. Westerfield had an obligation to "cooperate with [GEICO Advantage] in determining if this information is correct and complete." Policy at 16. GEICO Advantage further explained that, should Mr. Westerfield fail to cooperate or notify GEICO Advantage that this information was incorrect within fifteen days, the driver would be "automatically added to [his] policy." ECF No. 5-1 at 22. Because Mr. Westerfield undisputably failed to cooperate within the requisite time period, GEICO Advantage acted in line with Section V and adjusted his premium accordingly. *See* Pet. ¶ 39. Such conduct—expressly permitted by Plaintiff's insurance agreement—cannot possibly form the basis of a breach of contract claim. *See AIDS Healthcare Found. v. Express Scripts, Inc.*, 658 F. Supp. 3d 693, 703–04 (E.D. Mo. 2023) (dismissing breach of contract claim where defendant "complied with the terms of the parties' contract"); *Gillis v. Principia Corp.*, 832 F.3d 865, 871–74 (8th Cir. 2016).

Mr. Westerfield attempts to fall back on the Policy's "Persons Insured" provision, arguing that it forbids the conduct explicitly authorized in the Policy's Section V. *See* Pet. ¶¶ 24, 62–66. But that provision is of no help to his claim, as it merely addresses the *scope of coverage*, limiting it to drivers who act with the insured's "express or implied" permission or "relatives" residing in

the same household. Policy at 5. In that way, it does not address, and certainly does not override, GEICO Advantage's express ability to identify drivers who may fall within such coverage. *Danzig v. LoanMe, Inc.*, 2021 WL 105614, at *3 (E.D. Mo. Jan. 12, 2021) (holding that where "breach of contract claim conflicts with the plain language of the contract, the contractual language controls"). In any event, because Mr. Westerfield does not allege that GEICO Advantage failed to provide coverage to any "Persons Insured," or that any wrongful action under that provision led to his allegedly inflated premiums, such provision cannot support his breach of contract claim. *See Moore v. Firstar Bank*, 96 S.W.3d 898, 902 (Mo. Ct. App. 2003) (dismissing breach of contract claim when the alleged breach "would not [have resulted in the claimed damages]").

**b. Plaintiff's breach of good faith and fair dealing claim and unjust enrichment claim each fail to state a claim upon which relief may be granted.**

Mr. Westerfield's good faith and fair dealing and unjust enrichment claims fare no better. *First*, each claim is subject to dismissal as either duplicative of or inconsistent with Plaintiff's breach of contract claim. Courts dismiss good faith and fair dealing allegations that "amount to just another way the contract was breached." *Cafe Agave, Inc. v. Crown Valley Winery, Inc.*, 2023 WL 4623057, at *5 (E.D. Mo. July 19, 2023). Indeed, to the extent a good faith and fair dealing claim rests on "facts" that are "exactly the same" as a breach of contract claim, it is by definition duplicative and subject to dismissal. *Earley v. Wachovia Bank, Nat'l Ass'n*, 2009 WL 10702522, at *4–5 (W.D. Mo. Feb. 26, 2009) (granting summary judgment on good faith and fair dealing claim when it was "duplicative of Plaintiff's breach of contract claim"); *see also Margolies v. McCleary, Inc.*, 447 F.3d 1115, 1125 (8th Cir. 2006).

Likewise, Missouri law is settled that unjust enrichment is "an equitable remedy based on the concept of a quasi-contract" and where "a plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply." *Affordable*

*Communities of Missouri v. Fed. Nat. Mortg. Ass'n*, 714 F.3d 1069, 1077 (8th Cir. 2013); *Topchian v. JPMorgan Chase Bank*, N.A., 760 F.3d 843, 854 (8th Cir. 2014) ("There can be no unjust enrichment claim . . . where an express contract exists."). Because each of these claims rises and falls on the same exact conduct as Plaintiff's breach of contract claim, they are subject to dismissal.

*Second*, even if Plaintiff were permitted to plead either of the above claims in the alternative, each claim would still fail because, as detailed above, GEICO Advantage's conduct is expressly permitted by the agreement at issue. It is black letter Missouri law that "there can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 513 (8th Cir. 2018); *AIDS Healthcare Found.*, 658 F. Supp. 3d at 703–04 (dismissing breach of implied covenant claim where "the contract expressly permits the actions being challenged"). After all, claims for breaches of good faith and fair dealing are meant to address a party's inequitable exploitation of some gap in the contractual terms; where the contract explicitly *permits* certain conduct, there is no gap, and dismissal is appropriate. So too with unjust enrichment—"if no injustice results from the defendant's retention of the benefit, then no cause of action for unjust enrichment will lie." *Blair v. City of Hannibal*, 179 F. Supp. 3d 901, 911 (E.D. Mo. 2016). Accordingly, because GEICO Advantage's conduct is expressly permitted by Mr. Westerfield's policy, Plaintiff's good faith and unjust enrichment claims should also be dismissed.

## CONCLUSION

For these reasons, GEICO Advantage respectfully requests that the Court dismiss Plaintiff's claims: (1) in favor of the earlier-filed *Kane* Action; (2) for lack of personal jurisdiction pursuant to Rule 12(b)(2); or (3) for failure to state a claim pursuant to Rule 12(b)(6).

Date: October 2, 2026

Respectfully submitted,

*/s/ W. Jason Rankin*
W. Jason Rankin #626724
Charles Insler, #58623
Emilee M. Bramstedt, #71802
701 Market St., Ste. 1400
St. Louis, MO 63101
314-241-6160
wjr@heplerbroom.com
cni@heplerbroom.com
emb@heplerbroom.com

George E. Mastoris
(*pro hac vice forthcoming*)
Adam P. Moskowitz
(*pro hac vice forthcoming*)
**WINSTON TAYLOR LLP**
200 Park Ave.
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
george.mastoris@winstontaylor.com
adam.moskowitz@winstontaylor.com

Samantha Lerner
(*pro hac vice forthcoming*)
**WINSTON TAYLOR LLP**
300 N. LaSalle Drive
Chicago, IL 60654
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
samantha.lerner@winstontaylor.com

*Counsel for Defendant GEICO Advantage Insurance Company*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document has been filed electronically on October 2, 2026, and served by operation of the Court's electronic filing system upon all attorneys of record.

*/s/ W. Jason Rankin*

*Counsel for Defendant*
*GEICO Advantage Insurance Company*