UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Eric Westerfield,<br><br>Plaintiff,<br><br>v.<br><br>GEICO Advantage Insurance Company,<br><br>Defendant. | Case No. 4:26-cv-01528-SRC |

# Response to Oppose Motion to Dismiss

GEICO Advantage added a stranger to Westerfield's policy and charged him more to insure a non-existent risk. Section V of the policy allows a premium adjustment when rating information is incorrect, incomplete, or changed. It does not say a tentative address match becomes a rating fact when an insured does not answer an email within 15 days. The Petition identifies the contractual condition, alleges it was absent, and pleads retained premium as damages. That states a contract claim.

As the Court did before, it should decide the pending remand motion first. *Westerfield v. Gov't Emps. Ins. Co.*, No. 4:26-CV-00173-SRC, 2026 WL 2144550, at *1–6 (E.D. Mo. July 27, 2026) ("*Westerfield I*"). If it retains jurisdiction, the Court should deny the motion to dismiss. *Westerfield I* already sustained specific jurisdiction over GEICO Advantage on this same policy and transaction. *Id*. at *8–10. GEICO Advantage's new declaration supplies no facts to undo that finding nor establishes that GEICO Advantage was excluded from Missouri-source RiskAlert matching. And

*Kane* cannot dispose of this action: its operative complaint names GEICO Casualty, while this Petition names only GEICO Advantage and expressly excludes every member of *Kane*'s proposed classes. Doc. 5 ¶¶ 7–8, 52(c); *Kane v. GEICO Casualty Co.*, No. 6:25-cv-00532, Doc. 58 (M.D. Fla.)

GEICO Advantage also repeatedly calls the prior disposition a dismissal. But it acknowledges the Court did not decide Westerfield's claims on the merits. Doc. 18 at 12 n.4. Westerfield therefore incorporates his show-cause response on first-filed relief and the dismissal-and-refiling history, Doc. 14 §§ 1–2, at 2–15, and his pending motion to remand and memorandum, Docs. 15–16.

### 1. The first-filed doctrine does not justify dismissal or transfer because *Kane* involves a different corporate defendant, a non-overlapping class, and a forum lacking personal jurisdiction over GEICO Advantage.

GEICO Advantage's first-filed request fails for the practical reason that matters most: a judgment in *Kane* cannot adjudicate GEICO Advantage's liability to Westerfield's class. Westerfield's show-cause response develops the governing Eighth Circuit framework. Doc. 14 §§ 1.1–1.3, at 2–8. *Welsher* applies it on similar facts. *Welsher v. Frito-Lay North America, Inc.*, 2014 WL 7331017, at *2–4 (W.D. Ark. Dec. 19, 2014).

In *Welsher*, two actions shared a defendant and challenged the same nationwide labeling practice. Yet the court denied first-filed transfer because the classes did not overlap and the later action asserted different state-law claims. A ruling in the first case could inform the second but would not "resolve" it. *Id.* at *2–3. The point is not that nonoverlapping classes invariably defeat the first-filed rule. It is that common conduct alone does not make two actions substantially the same. *Id.*; *see also GreenState Credit*

*Union v. Hy-Vee, Inc.*, 500 F. Supp. 3d 799, 808 (D. Minn. 2020) (declining to apply first-filed rule despite overlapping factual and legal issues where the putative classes did not overlap).

The separation here is greater. The cases share no defendant: GEICO Advantage alone is sued here, while GEICO Casualty alone is sued in *Kane*. Their classes do not overlap either. The Petition expressly excludes *Kane*'s proposed class members and seeks separate monetary recovery, without joint liability or an injunction. Doc. 5 ¶¶ 7–8, 52(c). A *Kane* ruling may provide persuasive guidance about similar policy language. It cannot adjudicate GEICO Advantage's obligations to Westerfield's class, determine whether GEICO Advantage breached its policies, or establish the premiums GEICO Advantage retained.

GEICO Advantage claims both cases challenge a common driver-addition practice and similar policy language. Doc. 18 at 7–8. But similarity of issues is not enough. *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78–79 (11th Cir. 2013). In *Collegiate Licensing*, the Eleventh Circuit confronted insurance disputes involving the same form language and overlapping coverage questions. *Id*. It still rejected an issue-centered first-filed analysis: the rule looks to "the character of the suits and the parties to the suits," not merely similar issues divorced from "the identity of the parties asserting them and their asserted rights." *Id.* at 79. Because the earlier action involved different insurers and different policies, its resolution would likely provide no more than "persuasive authority" in the other dispute. *Id.* at 78. The same reasoning applies here. Similar policy language and a common underwriting practice may

produce overlapping legal questions; they do not make GEICO Casualty's obligations in *Kane* GEICO Advantage's obligations here.

GEICO Advantage's authorities do not bridge that gap. *HRB* involved "nearly, but not quite, identical" parties. *HRB Tax Group, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 2012 WL 4363723, *2 (W.D. Mo. Sept. 21, 2012). *Burlington* involved substantially similar parties and a national railway-bargaining controversy that required one definitive ruling. *Gen. Comm. of Adjustment GO-386 v. Burlington N. R.R.*, 895 F. Supp. 249, 251–53 (E.D. Mo. 1995).[1] *Cadenasso* applied the rule despite nonoverlapping classes, but the actions named the same defendants and asserted the same federal claims. *Cadenasso v. Metro. Life Ins. Co.*, 2014 WL 1510853, at *10 (N.D. Cal. Apr. 15, 2014). *Welsher* distinguished the decisions for those reasons. 2014 WL 7331017, at *2–3. This action lacks the substantial similarity in GEICO Advantage's cases, and under the analytical framework from *Westerfield I*, requires the opposite result.[2]

Transfer to Florida also presents an independent obstacle. *Welsher* refused first-filed transfer because the defendant had not established personal jurisdiction in the receiving court. 2014 WL 7331017, at *3. It separately rejected § 1404(a) transfer because the defendant had not shown the later action could have been brought there

[1] Although the plaintiffs were not parties to the first-filed action in *Burlington*, all the defendants were. *Id*. at 251.

[2] GEICO also cites *Masud v. TD Ameritrade Inc.*, 2025 WL 1644423 (D. Neb. June 10, 2025) and *Evans v. J.P. Morgan Chase Bank, N.A.*, 2014 WL 12600285 (W.D. Mo. Feb. 12, 2014). *Masud* involved a putative class "fully encompassed by the putative class in" the first-filed action. 2025 WL 1644423 at *6. *Evans* had a common defendant and "a putative class action that could subsume Plaintiffs and their claims…" 2014 WL 12600285 at *1. Here, there is no common defendant and GEICO Advantage admits the classes are "mutually exclusive." Doc. 18 at 7.

when filed; post-filing consent could not cure that defect. *Id.* at *3–4. *Burlington* likewise established jurisdiction and venue in the receiving court before transferring. 895 F. Supp. at 252–53. And *Cadenasso* involved an undisputedly available destination and a separate § 1404(a) analysis. 2014 WL 1510853, at *10. Those decisions reinforce the threshold objection developed in Doc. 14 § 1.2, at 5–7, including this Court's analysis in *Kelly-Leppert v. Monsanto Co.*, No. 4:21-CV-00369-SRC, 2026 WL 1090947, at *2–3 (E.D. Mo. Apr. 22, 2026). GEICO Advantage bears the burden but offers no claim-specific showing that Westerfield could have sued GEICO Advantage in the Middle District of Florida. *See Houlihan Trading Co. v. CTI Foods, LLC*, No. 4:21-cv-01030-SRC, 2021 WL 5758436, at *10 (E.D. Mo. Dec. 3, 2021).

Nor does some duplication require a stay. *Welsher* held parallel litigation established inconvenience, not necessity, because the later court could still benefit from rulings in the earlier action. 2014 WL 7331017, at *4. The Court should deny dismissal or transfer under the first-filed rule. If the Court concludes some deference to *Kane* is warranted, Westerfield asks for the limited stay described in Doc. 14 § 1.3, at 8. *Beber v. NavSav Holdings, LLC*, 140 F.4th 453, 459 (8th Cir. 2025) (stays are preferred).

2. **Specific personal jurisdiction remains established because GEICO Advantage insured a mobile risk in Missouri, maintained registration to do business here, and used Missouri driver databases to adjust its policies.**

This Court found a prima facie basis for specific jurisdiction in Missouri over GEICO Advantage after considering Westerfield's Kansas policy, the Kansas address on his declarations, and GEICO Advantage's asserted lack of notice of his move. *Westerfield I*, 2026 WL 2144550, at *8–10. At this stage, the evidence remains viewed

in Westerfield's favor. *Id.* at *6–7; *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (Factual conflicts are resolved in Plaintiff's favor). The new declaration does not remove the contacts on which the court relied.

### 2.1. The same policy and transaction still connect GEICO Advantage to Missouri.

GEICO Advantage begins by saying Westerfield "was a Kansas resident" when injured. Doc. 18 at 2. The Court already accepted that he moved to Missouri on April 15, 2024, lived here, and garaged his vehicle here. *Westerfield I*, 2026 WL 2144550, at *8–10; *Westerfield I*, Doc. 52-1 ¶ 2. While he lived here, GEICO Advantage offered a renewal for August 12, 2024 through February 12, 2025, accepted his premium, sent the October Risk Alert, added the driver, and increased the charge. *Westerfield I*, Doc. 52-1 ¶¶ 4–10; Doc. 5 ¶¶ 19–21, 33–42. The Kansas policy form and declarations address were already before the Court. They do not establish Kansas residence.

The Court also recognized what Westerfield's evidence did not show: his declaration did not establish whether GEICO Advantage sent correspondence directly to a Missouri address or knew of the relocation. *Westerfield I*, 2026 WL 2144550, at *9. Even so, the Court found purposeful availment based on additional contacts, including the policy's territorial promise. *Westerfield I*, 2026 WL 2144550, at *9–10. That promise remains in the same GEICO Advantage policy. Doc. 5-1 at 15.

*Ferrell v. West Bend Mutual Insurance Co.* confirms why the Kansas origin of the policy is not dispositive. The insurer there did no business in Arkansas, was not licensed there, and sold and collected payment for the policy in Wisconsin. Yet a

territory clause covering the United States and Canada supported minimum contacts because litigation "in connection with a dispute relating to its policy" in the covered territory was foreseeable. 393 F.3d 786, 790–91 (8th Cir. 2005).

GEICO Advantage emphasizes its territory clause addresses accidents, occurrences, and losses, while this suit concerns premiums. Doc. 18 at 11–12. But *Ferrell* held a similar, if not the same, clause made foreseeable litigation broad: a suit "in connection with a dispute relating to its policy." 393 F.3d at 791. This Court quoted that very language here after examining the coverage terms GEICO Advantage now quotes. *Westerfield I*, 2026 WL 2144550, at *10. The reasoning fits: GEICO Advantage undertook to insure this policy's mobile risk in Missouri and renewed and administered the policy while Westerfield and his vehicle were here. A dispute over the premium it charged for that policy relates directly to that undertaking.

GEICO Advantage's corporate registration with Missouri's Secretary of State supplies more evidence of its Missouri connection. The certified abstract shows approval in 2012, registration reports in September 2024 and September 2026, and current good standing. Doc. 19-1 at 2–3. Registration alone does not establish the claim's connection to Missouri. But this Court considered it alongside the policy and program evidence in finding purposeful availment. *Westerfield I*, 2026 WL 2144550, at *10. Advantage's denial that it issued Missouri policies "at the time of the alleged drivers were added" does not eliminate that evidence. Doc. 18-1 ¶ 4.

These contacts also support Missouri's long-arm statute for transacting business, and the Court's earlier findings that Missouri has an interest in providing Westerfield

a forum and is convenient for the parties remain unchanged. *Westerfield I*, 2026 WL 2144550, at *10.

**2.2. Hoskins leaves Missouri RiskAlert contacts and key dates unresolved.**

Hoskins says none of the 16,000 GEICO Advantage customers had a Missouri policy when Risk Alert added a driver. Doc. 1-2 ¶ 4; see also Doc. 18-1 ¶ 3. That statement does not say which states' records are searched against GEICO Advantage's policy data. Her past declaration states Risk Alert uses vendor data obtained directly from each state's motor-vehicle agency and is "active" in Missouri. *Westerfield I*, Doc. 6-2 ¶¶ 2, 4; Doc. 5 ¶ 25. The Court relied on the program's use of Missouri DMV data in finding purposeful availment. 2026 WL 2144550, at *10. GEICO Advantage used that same program for the customers Hoskins identifies. Doc. 1-2 ¶ 4.

Explore Information Services, LLC (the "vendor" described in Hoskins' declaration (Doc. 14-1 at 7)) describes Risk Alert loading driver records into a database to match against current-policyholder data, generating address matches, and returning those matches monthly. *Kane*, Doc. 63-1 ¶ 5; Doc. 5 ¶¶ 4, 25–28. Its later declaration identifies GEICO-specific configurations, data used in different states, and monitored-policy volumes. Doc. 82-1 ¶¶ 6–9. Looking at these descriptions Hoskins' past affidavits in a light most favorable to Hoskins, they show bulk matching against thirty states records, including Missouri. Even if Kansas records supplied Westerfield's match, that does not negate GEICO Advantage's use of Missouri data in its Risk Alert monitoring.

Hoskins then says "GEICO" learned of Westerfield's move to Missouri after sending the Risk Alert and that GEICO Advantage stopped insuring Westerfield once

it learned. Doc. 18-1 ¶ 4.[3] She supplies no details or dates. The declaration does not identify how GEICO or GEICO Advantage learned or when it learned, when coverage ended, or whether either event preceded the driver addition, collection of the challenged premium, or Westerfield's objection. It attaches no account entry or termination notice establishing that sequence. Sending the alert preceded the addition and resulting charge. Doc. 5 ¶¶ 33, 39–42. Knowledge acquired after the alert does not establish lack of knowledge throughout the challenged transaction.

These omissions matter because GEICO Advantage asks the Court to infer the entire policy relationship lacked a Missouri connection. Westerfield still must show sufficient contacts, but the Court must view all evidence in his favor at this prima facie stage. *Westerfield I*, 2026 WL 2144550, at *7. The policy and past evidence support the same conclusion under that standard as it did before. If the new assertions would change it, Westerfield requests limited discovery into GEICO Advantage's Risk Alert configuration, the states' records searched against its policy data, the source of his alert, and account records showing relocation notice, continued administration, and the effective end of coverage. *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 713 (8th Cir. 2003). Those records bear directly on the disputed contacts.

**3. The policy's Section V does not allow a rated-driver addition by silence.**

GEICO Advantage's premature merits argument assumes the fact the Petition denies: that the third-party address match identified an actual change in insured risk.

[3] Hoskins says she works "with GEICO" not "GEICO Advantage."

Rule 12(b)(6) requires acceptance of well-pleaded facts and reasonable inferences in Westerfield's favor. *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594–95 (8th Cir. 2009). The Court may consider the incorporated policy and alert, but neither contradicts his allegations that the added person was a stranger who did not live with him, use his vehicles, or have his permission. Doc. 5 ¶ 36; Doc. 5-1 at 22.

### 3.1. Section V conditions premium changes on actual rating facts.

Section V allows a premium adjustment, not driver additions. And premium adjustments are only allowed "if" information on which premiums are based "is incorrect, incomplete or changed." Doc. 5-1 at 15–16. Westerfield alleges those conditions were absent. The added person had no household, family, or vehicle-use relationship with him; GEICO Advantage did not verify otherwise; and the addition caused a charge GEICO Advantage did not fully refund after removing the person. Doc. 5 ¶¶ 33–42, 62–67.

That pleads the policy, the contractual limit, the breach, and loss. *Gillis v. Principia Corp.*, 832 F.3d 865, 871 (8th Cir. 2016). GEICO Advantage's limited power to ***adjust premiums*** does not establish a power to designate an unrequested rated driver first and use that designation to supply the information justifying a higher premium. Paragraphs 22–24 and 62–66 expressly distinguish those steps.

The surrounding text preserves that distinction. Section V separately addresses amendments or endorsements changing policy terms, revisions providing broader coverage without increased premium, and premium adjustments based on incorrect, incomplete, or changed information. Its final sentence requires calculations and

coverage changes to follow the rules, rates, and forms on file, if required, for the insured's state. Doc. 5-1 at 15–16. GEICO Advantage identifies no rule, rate, form, or endorsement that allows the challenged Risk Alert procedure. Nor does issuing a revised declarations page establish that the added person created a rating risk or that the contractual condition for a premium adjustment was satisfied.

GEICO Advantage's express-authorization cases begin where its argument here must end: with language allowing the challenged act. In *AIDS Healthcare Foundation v. Express Scripts, Inc.*, the contract expressly allowed the challenged program, and the plaintiff conceded compliance. 658 F. Supp. 3d 693, 703–04 (E.D. Mo. 2023). Here, the conditional premium language, surrounding text, and the absence of changed risk support the opposite conclusion. *Gillis* required an identifiable contractual promise, 832 F.3d at 871–74; the Petition identifies Section V's restrictions on changes and alleges precisely how GEICO Advantage exceeded it. Contract text may defeat a claim when it contradicts the pleading. It does not do so here.

**3.2. The alert cannot add a 15-day default to the policy.**

The policy requires cooperation "in determining if" rating information is correct and complete. Doc. 5-1 at 16. GEICO Advantage turns that duty into an "express" right to presume its data correct after 15 days. Doc. 18 at 12–14. The policy specifies neither that deadline nor that consequence. GEICO Advantage's email has both terms the policy omits.

The alert itself is tentative: the person "may be a licensed or permitted driver with your address listed as their primary address." Doc. 5-1 at 22. It describes an

address record, not established household residence, vehicle use, or insured risk. Westerfield's failure to respond within the email's deadline does not contradict his pleaded facts or establish the policy authorized the addition. Even assuming nonresponse could be noncooperation, it does not become an admission that the third-party data is true. And an email cannot silently amend a policy that says its terms change only through an amendment or endorsement.

**3.3. Coverage language does not supply rating authority.**

GEICO Advantage correctly observes that "Persons Insured" concerns coverage. Doc. 18 at 14–15. The Petition says the same: that provision does not say who may designate someone as a rated driver. Doc. 5 ¶ 24. Westerfield does not seek payment for a denied covered loss. He relies on the coverage terms as context for the rating condition and alleges that the added stranger had none of the relationships that could expose the policy to liability. *Id*. ¶¶ 24, 36, 62–66.

Thus, GEICO Advantage's practice in identifying additional drivers does not resolve whether it may add an unrequested person by address match and nonresponse. And the pleaded causal link is direct: the added driver produced the added premium. *Id*. ¶¶ 39–42, 67. *Moore v. Firstar Bank*, 96 S.W.3d 898, 902 (Mo. Ct. App. 2003), does not eliminate that pleaded link. GEICO Advantage's contrary argument again assumes that the designation was contractually allowed—the disputed issue it has not established from the policy's text.

**4. Count II challenges GEICO's use of discretion, not the same duty.**

Count I alleges GEICO Advantage lacked authority for the challenged addition. Count II alternatively alleges if Section V confers discretion over verification, cooperation, or premium adjustments, GEICO Advantage abused that discretion. Doc. 5 ¶¶ 69–74. The conduct alleged is specific: using unverified data, imposing a default and proof demands outside the policy, and collecting premiums for the resulting designation. *Id*. ¶ 72.

The implied covenant of good faith and fair dealing limits discretion exercised to evade the transaction's purpose or deny its expected benefit. *W. Silver Recycling, Inc. v. Nidec Motor Corp.*, 509 F. Supp. 3d 1106, 1114 (E.D. Mo. 2020). That court let the covenant claim go forward even after rejecting the plaintiff's asserted express-contract restriction. *Id*. Count II similarly defines how GEICO Advantage exercised any authority it had to determine rating information and adjust premiums. It adds no obligation contrary to an express term permitting the challenged default; GEICO Advantage identifies no such term.

*Margolies v. McCleary, Inc.*, cited by GEICO Advantage, rejects the premise that contract and covenant claims are inherently duplicative. 447 F.3d 1115, 1125–26 (8th Cir. 2006). It eliminated a duplicate recovery after trial because the evidence and damages for both verdicts were the same. *Id*. at 1126. The Petition already prohibits duplicate recovery. Doc. 5 ¶¶ 6–8, 50–51. The alternative theories may be pleaded while the scope of GEICO Advantage's authority remains disputed. Fed. R. Civ. P. 8(d)(2)–(3).

*Cafe Agave, Inc. v. Crown Valley Winery, Inc.* dismissed a count that merely restated the defendant's alleged failure to perform the express agreement. 2023 WL 4623057, at *5 (E.D. Mo. July 19, 2023). Count II instead applies if GEICO Advantage had the discretion Count I denies and challenges its exercise. *Earley v. Wachovia Bank, National Ass'n* was decided on summary judgment. 2009 WL 10702522, at *4–5 (W.D. Mo. Feb. 26, 2009); Doc. 18 at 15. Neither establishes duplication from these alternative allegations. And *Park Irmat Drug Corp. v. Express Scripts Holding Co.* protects conduct the contract expressly permits. 911 F.3d 505, 513 (8th Cir. 2018). It does not answer whether this policy allows the challenged act.

**5. Count III is expressly alternative if the policy does not govern.**

Westerfield accepts that unjust enrichment cannot displace an express contract governing the same subject. *Affordable Cmtys. of Mo. v. Fed. Nat'l Mortg. Ass'n*, 714 F.3d 1069, 1077 (8th Cir. 2013). Count III expressly applies only if the Court determines the policy does not govern the challenged additions and charges. Doc. 5 ¶ 77. It alleges payment, GEICO Advantage's knowing retention, and the unfairness of retaining premium attributable to the unrequested addition. *Id.* ¶¶ 78–81. Unlike the payments in *Topchian v. JPMorgan Chase Bank, N.A.*, the alleged additional benefit was not exchanged for an actual added household or vehicle-use risk. 760 F.3d 843, 854 (8th Cir. 2014).

Rule 8 permits that conditional theory. *Moore v. Compass Grp. USA, Inc.*, 2019 WL 4723077, at *9–10 (E.D. Mo. Sept. 26, 2019). Lack of contractual authority alone does not put conduct outside a contract's scope. If the Court finds the policy governs

this precise benefit, the contract bar applies to Count III. Until that determination, paragraph 77 preserves the alternative without denying the policy's existence or seeking a second recovery. GEICO Advantage's additional contention that retention is fair because the policy authorized the charge fails for the reasons discussed in § 3.

## CONCLUSION

The Court should decide the pending motion to remand first and, if it retains jurisdiction, deny GEICO Advantage Advantage's motion to dismiss. If further evidence is needed on personal jurisdiction, it should allow the limited discovery identified above. If first-filed deference is justified, Westerfield asks for the limited stay described in Doc. 14 § 1.3, at 8. Neither first-filed deference nor lack of personal jurisdiction supports GEICO Advantage's requested merits dismissal with prejudice. *See* Fed. R. Civ. P. 41(b). If the Court identifies a curable pleading deficiency, Westerfield asks for an opportunity to seek leave to amend under Rule 15(a)(2) before a dismissal with prejudice.

**ONDERLAW, LLC**

By: */s/ Martin L. Daesch*
Martin L. Daesch, #40494 (MO)
Jesse B. Rochman, #60712 (MO)
110 E. Lockwood Ave.
St. Louis, MO 63119
(314) 963-9000 (telephone)
(314) 963-1700 (facsimile)
daesch@onderlaw.com
rochman@onderlaw.com
*Attorneys for Plaintiff*

**Certificate of Service**

I certify that on October 6, 2026, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all attorneys of record.

*/s/ Martin L. Daesch*