**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| Eric Westerfield,<br><br>Plaintiff,<br><br>v.<br><br>GEICO Advantage Insurance Company,<br><br>Defendant. | Case No. 4:26-cv-001528-SRC |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

## INTRODUCTION

This Court already found that Plaintiff's claims satisfied the Class Action Fairness Act's ("CAFA") $5 million amount-in-controversy threshold and transferred Plaintiff's claims to the Middle District of Florida pursuant to the "first-to-file" rule. To avoid application of that ruling, Plaintiff voluntarily dismissed his Petition and re-filed substantively similar claims in Missouri state court premised on the same underlying conduct—that GEICO Advantage purportedly overcharged him and a nationwide class of similarly situated insureds by increasing their automobile insurance premiums through its Risk Alert program. Plaintiff now seeks to argue that his claims are narrower and warrant different treatment than in *Westerfield I*. But Plaintiff's superficial alterations to his allegations do not fundamentally affect the amount-in-controversy, which, as detailed in GEICO Advantage's Notice of Removal, plainly exceeds CAFA's threshold requirement.

In an effort to avoid that conclusion, Plaintiff's Motion to Remand (ECF No. 16) looks to call into question GEICO Advantage's calculations from its Notice of Removal, many of which have already been blessed by this Court. But, as was the case in *Westerfield I*, Plaintiff seeks certainty far beyond what the law requires. GEICO Advantage "is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *K. A. by & Through B.W. v. Children's Mercy Hosp.*, 2018 WL 6445417, at *1 (W.D. Mo. Dec. 10, 2018) (quoting *Raskas v. Johnson & Johnson*, 719 F.3d 884, 887–89 (8th Cir. 2013)). And even taking Plaintiff's complaints at face value, the end result will remain the same: no matter how many ways GEICO Advantage shears this particular sheep, the amount in controversy exceeds $5 million. For these reasons, as detailed below, GEICO Advantage respectfully requests that this Court deny Plaintiff's motion to remand and, pursuant to GEICO Advantage's recently filed motion to dismiss (ECF No. 17), dismiss Plaintiff's claims with prejudice once and for all.

## BACKGROUND

Ten months ago, Plaintiff—represented by the same counsel as represents him here—filed a substantially similar class action in Missouri state court against eight GEICO defendants—including GEICO Advantage—challenging GEICO Advantage's adjustment of his insurance premiums pursuant to its Risk Alert program. *See Westerfield, et al. v. Government Employees Ins. Co., et al.*, No. 25SL-CC14196 (Mo. Cir. Ct. 2025). On February 4, 2026, the GEICO defendants in that action timely removed Plaintiff's case to the Eastern District of Missouri pursuant to the subject matter jurisdiction provided by CAFA. *Westerfield, et al. v. Government Employees Ins. Co., et al.*, No. 4:26-CV-00173 (E.D. Mo. 2026) ("*Westerfield I*"), ECF No. 1.

Dissatisfied with federal court, Plaintiff filed a motion to remand on February 23, arguing that the GEICO defendants had not adequately alleged that the amount in controversy exceeded CAFA's threshold. *See Westerfield I*, ECF No. 38. Parallel with Plaintiff's motion to remand, the GEICO defendants moved to dismiss Plaintiff's claims. *Westerfield I*, ECF No. 45. Among other things, the GEICO defendants argued that dismissal was proper because (1) Plaintiff's claims were substantially similar to those in the already-pending *Kane* Action,[1] filed by Plaintiff's own counsel, and should be dismissed pursuant to the "first-to-file" rule, (2) there was insufficient personal jurisdiction arising out of Plaintiff's claims, and (3) Plaintiff's Petition failed to state a claim for relief because, *inter alia*, his insurance policy expressly authorized the conduct at issue. *Id.*

On July 27, 2026, this Court issued its Order denying Plaintiff's motion to remand, concluding, as relevant here, that the GEICO defendants' calculations had been based on "reasonable deductions," that Plaintiff had failed to show with any legal certainty that his claims were less than CAFA's amount-in-controversy requirement, and that Plaintiff's request for

[1] *Kane v. GEICO Casualty Co.*, No. 6:25-cv-00532-JSS (M.D. Fla. 2025) (the "*Kane* Action").

jurisdictional discovery was unwarranted under the circumstances. *Westerfield I*, ECF No. 61 (the "Order") at 4–12. In addition to denying Plaintiff's Motion to Remand, this Court granted Defendants' Motion to Dismiss, in part, and transferred Plaintiff's claims to the Middle District of Florida. Order at 21–23. Just prior to transfer, however, Plaintiff filed a notice of voluntary dismissal and, on the very same day, initiated this action by refiling his claims in Missouri state court. *See Westerfield I*, ECF No. 62; ECF No. 1.

Unsurprisingly, Plaintiff's claims in this case are substantially similar to those asserted in *Westerfield I*, with the exception of Plaintiff (1) dropping his claims against GEICO entities other than the one that insured him (GEICO Advantage) and, (2) dropping his civil conspiracy claim. *Compare* ECF No. 5 (the "Petition") *with Westerfield I*, ECF No. 1-1. Plaintiff's Petition otherwise continues to allege that GEICO Advantage overcharged him (and a putative nationwide class) through its Risk Alert program. Pet. ¶¶ 1-6. While his purported class excludes persons within the *Kane* Action class and disavows punitive damages, attorney's fees, and injunctive relief (Pet. ¶¶ 8, 48–52), these allegations are no more than a transparent (and insufficient) attempt to plead around this Court's ruling in *Westerfield I*. Because, as detailed below, Plaintiff's claims against GEICO Advantage remain materially unchanged, so too should this Court's conclusions with respect to CAFA jurisdiction.

## STANDARD OF LAW

A "notice of removal need include only a ***plausible*** allegation that the amount in controversy exceeds the jurisdictional threshold" of $5 million. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) (emphasis added). Where such an allegation is questioned on a motion to remand, "the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88. Critically, the inquiry "is not whether the damages ***are*** greater than the requisite amount, but whether a fact finder ***might*** legally

conclude that they are." *Faltermeier v. FCA US LLC*, 899 F.3d 617, 621 (8th Cir. 2018) (emphasis added). GEICO Advantage "is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it," nor is it required to provide a "formula or methodology for calculating the potential damages." *K. A.*, 2018 WL 6445417, at *1 (quoting *Raskas* 719 F.3d at 887–88). Instead, Defendant can rely on "reasonable deductions, reasonable inferences, or other reasonable extrapolations" to establish the amount in controversy. *Waters v. Ferrara Candy Co.*, 873 F.3d 633, 636 (8th Cir. 2017) (citations omitted). At that point, Plaintiff can defeat jurisdiction *only* if it "appear[s] to a ***legal certainty*** that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) (emphasis added). Put differently, Plaintiff must "establish that it is ***legally impossible*** to recover in excess of the jurisdictional minimum." *Bell v. Hershey*, 557 F.3d 953, 959 (8th Cir. 2009) (emphasis added). "Even if it is highly improbable that the Plaintiff[] will recover the amounts Defendants have put into controversy, this does not meet the legally impossible standard." *Raskas*, 719 F.3d at 888.

## ARGUMENT

### I. Plaintiff's Motion to Remand fails to satisfy the demanding standard for remand or to justify a departure from this Court's ruling in *Westerfield I*.

In its Notice of Removal and accompanying declaration, GEICO Advantage provided evidence that it had identified more than 16,000 instances in which a GEICO Advantage customer had a driver added to their policy pursuant to GEICO Advantage's Risk Alert program. ECF No. 1 ¶ 36; ECF No. 1-2, Declaration of Allison Hoskins ("September Hoskins Declaration") ¶ 3. Building from that figure, GEICO Advantage estimated that, relying on Plaintiff's alleged overcharge of $2.20 per day and the fact that more than half of the drivers at issue continued to remain on the underlying policy after 184 days, the total amount-in-controversy exceeded $6,476,800, well in excess of CAFA's $5 million threshold. September Hoskins Declaration. ¶ 7.

These figures, a number of which were previously approved by this Court, continue to be based on reasonable deductions, inferences, and extrapolations. They therefore more than satisfy GEICO Advantage's obligations under CAFA and warrant denial of Plaintiff's Motion to Remand.

Notwithstanding this fact, Plaintiff throws stones at these figures by questioning, without evidence, whether they are adequately supported by the data. In particular, Plaintiff challenges (1) Defendant's 184-day estimated overcharge period; (2) the use of Plaintiff's $2.20 per day overcharge as a class-wide proxy; and (3) whether Defendant's calculations take into account Plaintiff's purported narrowing of his claims. But, as was the case in *Westerfield I*, each of Defendant's inputs were based on reasonable assumptions and deductions from Plaintiff's own allegations and, in any event and as detailed in the accompanying declaration, continue to be supported by GEICO Advantage's preliminary investigation. As a result, no matter how one approaches the issue, the data continues to reveal that the amount in controversy exceeds $5 million.

**A. GEICO Advantage's 184-day estimate is plainly supported by the evidence.**

Plaintiff goes to great lengths attempting to discredit GEICO Advantage's estimated 184-day overcharge period as statistically unreliable. Motion at 3–5. But, notably, nowhere does Plaintiff actually *disagree* with Defendant's figure. Rather, he merely challenges Defendant's use of the figure because, depending on whether "[l]onger additions [] offset shorter ones," the *actual* amount may be greater or less than 184-days. Motion at 4. But Plaintiff's demand for evidentiary certainty finds no support in either law or fact.

At the outset, the law is clear that Defendant "is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it," nor is it required to provide a "formula or methodology for calculating the potential damages." *K. A.*, 2018 WL 6445417, at *1 (quoting *Raskas* 719 F.3d at 887–89). Plaintiff concedes as much. Motion at 2 ("Plaintiff accepts that standard and this Court's admonition that CAFA does not demand evidentiary certainty.").

Rather, it is black letter law that GEICO Advantage may rely on "reasonable deductions, reasonable inferences, or other reasonable extrapolations" to establish the amount in controversy. *Waters*, 873 F.3d 636; *see also* Motion at 3 ("GEICO Advantage need not prove final damages or concede liability[.]"). That is precisely what GEICO Advantage has done here.

Specifically, GEICO Advantage analyzed Plaintiff's claims and found that more than half of the 16,000 drivers at issue remained on a GEICO Advantage insured's policy for more than 184 days. September Hoskins Declaration ¶ 6. From there, GEICO Advantage made the justifiable inference that 184 days was a reasonable estimated average for an alleged overcharge period. *Id.* Because Defendant's calculations were rooted in fact and rest on reasonable deductions, they plainly satisfy its obligations under Eighth Circuit law. *See Waters v. Home Depot USA, Inc.*, 446 F. Supp. 3d 484, 492 (E.D. Mo. 2020) ("When the preponderance of evidence standard applies, 'the defendant's showing on the amount in controversy may rely on reasonable assumptions,' and there is no demand at the early stages of removal to conclusively establish damages."); *Allen Beth Inc. v. Waste Connections US, Inc.*, 667 F. Supp. 3d 956, 958 (E.D. Ark. 2023) ("Waste Connections isn't required to estimate an average amount the potential class members paid in excessive rate increase charges over the five-year period; nor must it provide a formula or methodology for calculating potential damages." (citing *Hartis v. Chicago Title Insurance Co.*, 694 F.3d 935, 944 (8th Cir. 2012)).

In fact, as Defendant explained in its Notice of Removal, GEICO Advantage's use of a 184-day figure is likely *conservative* due to Plaintiff's claimed five-year statute of limitations period. ECF No. 1 ¶ 36; September Hoskins Declaration ¶ 6. Plaintiff offers no reason why an "unrequested driver" (as he puts it in his Petition) would be any more likely to be removed after 185 days than after one year, two years, or even five years. It is for this reason that Plaintiff's

strawman hypothetical of 51% of drivers "lasting" 185 days and 49% of drivers "lasting" 6 days (Motion at 4) is wholly unrealistic. If anything, the most likely scenario is that if someone does not challenge a contested driver soon after that driver is added to their policy, they may never challenge them at all.[2] At bottom, GEICO Advantage need only show that the amount in controversy *may* exceed $5 million based on a preponderance of the evidence, a bar Defendant has far surpassed. *Faltermeier*, 899 F.3d at 621 (recognizing that the inquiry "is not whether the damages ***are*** greater than the requisite amount, but whether a fact finder ***might*** legally conclude that they are" (emphasis added)).

The fact that the GEICO defendants in *Westerfield I* utilized a 90-day estimate rather than a 184-day estimate does nothing to change this fact. As was made expressly clear in *Westerfield I*, the 90-day figure was intended "[t]o be conservative" in light of the fact that "[t]he length of time that each 'added' driver will remain active on each putative class member's account will [] vary significantly, as some insureds, like Mr. Westerfield would have removed the driver within a week, while others (*e.g.*, those whose added driver was a part of their household) may not have removed them at all." *Westerfield I*, ECF No. 1-2 ¶ 7. Accordingly, by using that figure, GEICO Advantage was in no way conceding that it was the *only* appropriate figure or that it represented some sort of maximum. To the contrary, GEICO Advantage said precisely the opposite.

Regardless, the data reveals Plaintiff's complaint for what it is—speculative and unwarranted. While additional information is not required by law, GEICO Advantage's ongoing

[2] This is almost certainly the case for policyholders for whom the added driver *was correctly* added, such as where the added drivers are children or other family members of the insured who reside at the policyholder's residence and who should have been, but were not, previously listed as a driver by the policyholder. Nevertheless, because it is Plaintiff's allegations that control for purposes of calculating the amount-in-controversy, GEICO Advantage has assumed without conceding that each driver was "wrongfully added" and that amounts associated with each of these added drivers would be potentially recoverable.

analysis has found that more than 6,500 of the drivers at issue remained on an insured's policy for at least 365 days. **Ex. A**, Declaration of Allison Hoskins ¶ 3. Multiplying these two figures together results in a total of 2,372,500 days, which when multiplied by an estimated overcharge of $2.20 per day, results in an amount in controversy of more than $5.2 million. *Id.* This, of course, is before even considering the ten thousand *other* drivers whose alleged damages would only further inflate that figure. As a result, no matter how one approaches the data, it is clear the amount in controversy exceeds $5 million.

**B. GEICO Advantage's use of Plaintiff's $2.20 per day alleged overcharge is supported by both law and fact.**

Plaintiff's complaint concerning GEICO Advantage's use of his $2.20 per day alleged overcharge as a class-wide proxy is even further afield. The law in this circuit is clear that a removing defendant is permitted to use a named plaintiff's alleged damages for purposes of assessing CAFA jurisdiction. *See, e.g.*, *Scherrer v. Foremost Ins. Co. of Grand Rapids, Mich.*, 2018 WL 1508904, at *3 (E.D. Mo. Mar. 27, 2018) (permitting defendant "to simply multiply the average of [a named plaintiff's] claims by the total number of potential class members"); *Doss v. Am. Family Home Ins. Co.*, 47 F. Supp. 3d 836, 840 (W.D. Ark. 2014) ("Using the named Plaintiffs as 'typical' class members and multiplying their claims by the number of persons estimated in a class is precisely how courts generally determine the estimated amount in controversy."). Indeed, this Court expressly recognized in *Westerfield I* that "GEICO's decision to use Westerfield's $2.20 alleged daily overcharge as a statistical average was a 'reasonable deduction,' and not 'conjecture, speculation, or stargazing.'" Order at 8 (citing *Brunts v. Walmart, Inc.*, 68 F.4th 1091, 1094 (8th Cir. 2023)). This same ruling should control here.

To circumnavigate that finding, Plaintiff argues that his Petition "expressly disclaims that Westerfield's $13.19 charge, approximate $2.20 daily rate, six-day duration, or insured-to-policy

ratio represents a classwide average." Motion at 8. But Plaintiff's toothless disclaimer provides no reason to depart from clear authority permitting the use of a named plaintiff's damages as a proxy for classwide damages.[3] In fact, Plaintiff even concedes that his "allegations do not automatically bar using Westerfield's experience as an estimate." *Id.* What is more, Plaintiff further concedes, as he must, that "GEICO Advantage also supplied evidence the average added expense of a youthful driver exceeded $2.72 per day." *Id.* This only further shows that it was reasonable for GEICO Advantage to use the lesser $2.20 figure as a proxy for classwide damages here. As a result, Plaintiff's argument that his Petition "remove[s] the pleading-based premise on which the Court previously relied" (*id.*), is nothing more than an attempted end-run on this Court's Order and should not be countenanced.

### C. Plaintiff's claimed narrowing of his class does not affect GEICO Advantage's reasonable deductions and calculations.

The balance of Plaintiff's Motion attempts to pick holes in Defendant's 16,000-person figure by claiming that it is speculative and unsupported by his purportedly "narrower" claims. At the outset GEICO Advantage notes that Plaintiff's claims are not, as he argues, materially narrower than in *Westerfield I*. To the contrary, as was the case in *Westerfield I*, Plaintiff's breach of contract claim is premised on GEICO Advantage allegedly overcharging him and a putative nationwide class through its Risk Alert program. The mere fact that he has now dropped his civil conspiracy

---

[3] Plaintiff also argues that his $13.19 alleged overcharge is distinct from the "'***net'*** retained premium from the narrower cohort." Motion at 8 (emphasis in original). To the extent Plaintiff is attempting to argue that GEICO Advantage may have refunded charges to other class members, this is nothing more than pure speculation that need not be credited when determining the amount in controversy. And even were this case to proceed to discovery (which it should not), determining the exact amount paid in connection with a Risk Alert driver addition would be extraordinarily difficult and would require a detailed individualized investigation for each policyholder. It is for this reason that GEICO Advantage has told Plaintiff's counsel on multiple instances that, even if it had any merit (which it does not), this case is ***not well suited*** for class treatment, as individualized issues will predominate over common ones.

claim—and, by doing so, his claims against the seven other GEICO defendants—does not materially affect the amount-in-controversy, as GEICO did not add or otherwise increase damages on the basis of potential joint and several tortfeasors.[4] *See Westerfield I*, ECF No. 1 ¶ 27 (premising removal on "actual damages"). As a result, there is no reason for different treatment here.

Plaintiff's accusation of an "unexplained change" between GEICO Advantage's "more than 15,000" figure in *Westerfield I* and its present "more than 16,000" figure is no more persuasive. To the contrary, Plaintiff himself concedes that "[b]oth figures are lower bounds, and the rolling periods differ, so they are not necessarily inconsistent." Motion at 11–12. Indeed, it is the rolling nature of Plaintiff's claims that accounts for this change, as GEICO Advantage utilized a five-year period ending in early 2026 in *Westerfield I*, while GEICO Advantage utilized a five-year period ending in September 2026 here. As a result, nothing is "unexplained."

Plaintiff also looks to question whether the 16,000-person figure is appropriate for purposes of calculating the amount in controversy, highlighting that "[t]he same loss cannot be counted again because several insureds, drivers, account holders, payors, or billing entries are associated with it." Motion at 7. For example, Plaintiff argues that if this figure "counts both named insureds separately [as in the case of Mr. Westerfield and his wife], multiplying each by a policy-level loss would count the same transaction twice." *Id.* Setting aside Plaintiff's unwarranted demand for evidentiary certainty, GEICO Advantage can cut this issue off at the pass by confirming that its preliminary investigation has found more than 16,000 *unique* instances in which a Risk Alert driver was added to an insured's policy. **Ex. A** ¶ 3. Because the addition of each driver and its subsequent

[4] For this same reason, Plaintiff's disavowing of punitive damages and attorneys' fees does nothing to narrow the amount in controversy, as GEICO did not rely upon, and this Court did not even consider, such amounts in its earlier analysis. Order at 10-11 ("The Court therefore does not consider the attorneys' fees in GEICO's amount-in-controversy calculation."). Put simply, this is yet another superficial distinction without a difference.

charges is what will drive actual damages under Plaintiff's theory of liability, GEICO Advantage's 16,000-person figure is the correct figure to use.

Plaintiff's only remaining challenge is to assert that the instant class is narrower than his prior class, because, according to Plaintiff, "[t]he current Petition names only GEICO Advantage and reaches only License-Address additions—not the name-and-address referral criterion." Motion at 6. If Defendant is understanding Plaintiff's argument correctly, Plaintiff is attempting to draw a distinction between Risk Alert additions where the last name of an added driver *matches* the policyholder, on the one hand, and Risk Alert additions where the last name of an added driver *does not match* the policyholder, on the other, claiming that his class includes the latter but not the former.[5] Plaintiff's argument is once again belied by his own Petition and falters on further investigation.

As an initial matter, Plaintiff's alleged class is explicitly defined to include instances "where the applicable referral criterion required a match between the address in the identified person's driver's-license information and the policy address ***but did not require the identified person's last name to match the named insured's last name***." Petition ¶¶ 48–49 (emphasis added). It should go without saying, but there is a material difference between '***not*** requiring last names to match' and 'requiring last names to ***not*** match.' By using the former terminology,

[5] Defendant notes that Plaintiff's apparent distinction between "matching" and "non-matching" surnames can only have been derived from materials produced subject to a confidentiality agreement in the *Kane* Action, as this information is **<u>not</u>** made public by GEICO. Indeed, GEICO Casualty Company expressly highlighted Plaintiff's counsel's apparent misuse of this information in a recent filing in the *Kane* Action. *See Kane* Action, ECF No. 79, at 3 n.2. While Plaintiff attempts to distance himself from his allegation by rendering it "upon information and belief," the bottom line is that Plaintiff would have no basis for his "belief" were it not for confidential information received in a different lawsuit. Accordingly, GEICO Advantage reserves all rights as it relates to Plaintiff's counsel's apparent misuse of this information, including the right to seek sanctions or other appropriate relief, as necessary.

Plaintiff's class explicitly includes ***both*** "matching" surnames and "non-matching" surnames.[6] As this Court recognized in *Westerfield I*, "[u]nder CAFA, jurisdiction is determined by 'the operative complaint at the time of removal,' [and] Westerfield may not attempt to recast or amend his complaint in a response brief to defeat jurisdiction under CAFA." Order at 6; *Raskas*, 719 F.3d at 888 n.1 (permitting reasonable reading of Complaint and noting that "Plaintiffs cannot attempt to limit [their allegations] after the fact to defeat jurisdiction"). Accordingly, by relying on Plaintiff's broad class definition as alleged, Defendant "based its decision on a 'reasonable deduction' rather than one based on 'conjecture, speculation, or stargazing.'" Order at 6; *see also Femmer v. Sephora USA, Inc.*, 2020 WL 5632443, at *3 (E.D. Mo. Sept. 21, 2020) (permitting "assumptions [that were] reasonable based on allegations in the complaint"). Its calculations derived from that reasonable deduction are therefore sufficient under controlling Eighth Circuit law.

In any event, even crediting Plaintiff's belated narrowing of his claims once again, the amount in controversy will still remain above $5 million. Specifically, as described in the accompanying declaration, even after limiting the class to instances where last names do not match, GEICO Advantage's preliminary investigation has found that the amount in controversy exceeds $5 million. **Ex. A** ¶¶ 4–6. At bottom, and as GEICO Advantage has made clear to Plaintiff on multiple occasions, no matter how one tackles the math, the end result will remain the same—the amount in controversy exceeds CAFA's $5 million threshold. Thus, absent a showing by Plaintiff that it is legally ***impossible*** for this fact to remain true, something Plaintiff is incapable of doing, Plaintiff's Motion should be denied.

---

[6] Plaintiff's own brief appears to concede Defendant's reading of his Petition, as he states that "[t]he former population included a referral criterion requiring both surname and address to match; this class does not." Motion at 6. Put simply, if the former population required surname matches while "this class does not," the latter would, by definition, be ***broader*** and include both "matching" and "non-matching" surnames.

## II. Jurisdictional Discovery is Not Warranted.

This Court already rejected Plaintiff's demand for jurisdictional discovery. Order at 12 (denying jurisdictional discovery because, among other things, "[t]his is not a case in which certain facts necessary to resolving the jurisdictional inquiry are either unknown or disputed"). Notwithstanding this fact, Plaintiff argues again for jurisdictional discovery because, according to Plaintiff, "the declaration leaves both unknown and disputed the units behind the customer count and the population and methods behind the duration inference." Motion at 11. But Plaintiff once again demands too much. Indeed, "[w]hen the preponderance of evidence standard applies, 'the defendant's showing on the amount in controversy may rely on reasonable assumptions,' and ***there is no demand at the early stages of removal to conclusively establish damages***." *Home Depot*, 446 F. Supp. 3d at 492 (emphasis added); *K. A.*, 2018 WL 6445417, at *1 (recognizing that a Defendant "is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it," nor is it required to provide a "formula or methodology for calculating the potential damages"). As a result, just as in *Westerfield I*, jurisdictional discovery is entirely unwarranted. *See Schott v. Overstock.com, Inc.*, 2021 WL 148875, at *5 (E.D. Mo. Jan. 15, 2021) (denying motion for limited discovery where defendant presented "sufficient evidence that the amount in controversy" requirement was met); *Baker v. NNW, LLC*, 2015 WL 12843831, at *2 n.2 (W.D. Mo. June 1, 2015) (denying request for jurisdictional discovery because "the removing party's burden to demonstrate the requisite amount-in-controversy" is "not a demand for proof" and "[d]iscovery and trial come later").

But even taking his request at face value, the information Plaintiff seeks has either already been provided or is rendered unnecessary by the information that *has* been provided. Plaintiff seeks for GEICO Advantage to "identify the query, filters, and counting units that produced the present License-Address cohort and provide the number of unique policy/account additions" to

explain how it went from 15,000 insureds to 16,000 insureds. Motion at 11–12. As described above in Section I.C, GEICO Advantage has already provided that explanation. So too with Plaintiff's request for GEICO Advantage to "provide the numerator, denominator, and interval attrition counts behind the day-184 statistic" (Motion at 12), which GEICO Advantage meaningfully addressed in Section I.A, *supra*. As for Plaintiff's request for GEICO Advantage to "draw a random sample from the unique policy/account additions and determine the net premium attributable to each sampled addition after refunds and credits," (*id.*), such a request amounts to nothing more than a demand for an alternative methodology showing that the amount in controversy exceeds $5 million.[7] But where GEICO Advantage has, on multiple occasions, provided concrete figures justifying its calculations, many of which were already approved by this Court, Plaintiff's demand falls on deaf ears. This Court should therefore deny Plaintiff's premature and unwarranted request for discovery. *Reitz v. Nationstar Mortg. LLC*, 2012 WL 1656724, at *3 (E.D. Mo. May 10, 2012) (rejecting request for jurisdictional discovery based on "attenuated and baseless assertions" that would permit a "fishing expedition" and be "a waste of time and financial resources").

## CONCLUSION

For the reasons detailed herein, Defendants respectfully request that the Court deny Plaintiff's motion to remand and maintain jurisdiction over this action pursuant to 28 U.S.C. § 1332.

---

[7] Plaintiff's citation to materials produced in the *Kane* Action fails to move the needle. In fact, if anything, it underscores why this case should be dismissed pursuant to the "first-to-file" rule, as described in GEICO Advantage's pending Motion to Dismiss (ECF No. 17).

Date: October 16, 2026

Respectfully submitted,

*/s/ Charles N. Insler*
W. Jason Rankin #626724
Charles Insler, #58623
Emilee M. Bramstedt, #71802
701 Market St., Ste. 1400
St. Louis, MO 63101
314-241-6160
wjr@heplerbroom.com
cni@heplerbroom.com
emb@heplerbroom.com

George E. Mastoris
(*pro hac vice* forthcoming)
Adam P. Moskowitz
(*pro hac vice* forthcoming)
**WINSTON TAYLOR LLP**
200 Park Ave.
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
George.mastoris@winstontaylor.com
Adam.moskowitz@winstontaylor.com

Samantha Lerner
(*pro hac vice* forthcoming)
**WINSTON TAYLOR LLP**
300 N. LaSalle Drive
Chicago, IL 60654
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
Samantha.lerner@winstontaylor.com

*Counsel for Defendant*
*GEICO Advantage Insurance Company*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing Opposition to Plaintiff's Motion to Remand was filed electronically on October 16, 2026, and served by operation of the Court's electronic filing system upon all attorneys of record.

*/s/ Charles N. Insler*

*Counsel for Defendant*
*GEICO Advantage Insurance Company*