# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

Eric Westerfield,

Plaintiff,

v.

GEICO Advantage Insurance Company,

Defendant.

**DECLARATION OF ALLISON HOSKINS**

I, Allison Hoskins, being of lawful age and duly sworn upon my oath, state as follows:

1. I am over 18 years of age. I am authorized to provide this declaration on behalf of Defendant GEICO Advantage Insurance Company ("GEICO Advantage"). I have reviewed the Petition filed in the above-captioned matter as well as Mr. Westerfield's Motion to Remand. If called upon to do so, I am competent to and would testify to the matters set forth herein, of which I have personal knowledge.

2. As described in my declarations filed in Mr. Westerfield's original lawsuit and in this case, I work with GEICO as a Senior Manager, Underwriting Efficiency & Information Management. ECF Nos. 1-2, 18-1; *see also Westerfield, et al. v. Government Employees Ins. Co. et al.*, Case No. 4:26-CV-00173 (E.D. Mo. 2026) (hereinafter, "*Westerfield I*"), ECF Nos. 1-2, 40-1. In that capacity, during the relevant time period, I was responsible for managing and implementing GEICO's driver discovery program, which proactively identifies youthful drivers in GEICO customers' households who are not listed on the customers' policies. In furtherance of those efforts, GEICO's Risk Alert program utilizes third-party data that its vendor obtains directly from each state's respective Department of Motor Vehicles or equivalent agency (*e.g.*, the Division

of Motor Vehicles, Motor Vehicle Administration, etc.), to identify youthful drivers whom those government records indicate reside at GEICO insureds' addresses. Notably, GEICO Advantage does not currently and did not at any point during the putative class period use the Risk Alert program in connection with Missouri policies. This makes sense, because GEICO Advantage did not insure policyholders in the State of Missouri at the time the alleged drivers were added to Mr. Westerfield's policy. Indeed, none of the implicated GEICO Advantage customers, discussed below, had a Missouri policy at the time GEICO Advantage identified and added a driver to their policy through its Risk Alert program.

3. Upon an initial investigation, GEICO Advantage identified more than 16,000 instances of a "License-Address Risk Alert Addition," which is defined in the Petition as a Risk Alert addition "where the applicable referral criterion required a match between the address in the identified person's driver's-license information and the policy address but did not require the identified person's last name to match the named insured's last name." Petition ¶¶ 48–49. Of these 16,000 instances, I can confirm that more than 6,500 of them involved a scenario in which the driver remained on the insured's policy for at least 365 days. Multiplying 6,500 by 365 by Mr. Westerfield's $2.20 alleged daily overcharge results in a total amount in controversy of $5,219,500.

4. I understand from his Motion to Remand that Mr. Westerfield claims to have limited his putative nationwide class to only instances where the added Risk Alert driver's last name *did not* match the last name on the insured's policy. I note that this is different than my understanding of the class definition in Mr. Westerfield's Petition, which "did not require" last names to match, meaning that they may or may not match. Petition ¶¶ 48–49. In any event, whether a last name "matches" is not indicative of whether that individual is properly included on

an insured's policy. For example, even in instances where the driver is a child of the parent insured, they may not have matching last names where parents are divorced or a parent kept their maiden name.

5. Accepting Mr. Westerfield's narrowing, through its preliminary investigation, GEICO Advantage has identified a subset of more than 2,200 instances falling within Mr. Westerfield's narrowed criteria where a driver had not been removed from the insured's policy as of the filing of Mr. Westerfield's Petition. For these individuals, GEICO Advantage has summed the total number of days between the date each driver was added (*i.e.*, at least fifteen days after a Risk Alert notice) and the date the Petition was filed, which totals 2,259,697 days. Multiplying that figure by Mr. Westerfield's alleged overcharge rate of $2.20 per day results in a total amount in controversy of $4,971,333.40.

6. Beyond these 2,200 instances, GEICO Advantage has also identified a non-overlapping subset of more than more than 450 instances falling within Mr. Westerfield's narrowed criteria where the driver remained on an insured's policy for at least 184 days but was ultimately removed before the Petition was filed. To be clear, none of these more than 450 instances will overlap with the 2,200 instances identified above, as by definition, the former drivers were removed before the Petition was filed while the latter drivers were not. Multiplying 450 by $2.20 per day by 184 days results in a total of $182,160. Summing $4,971,333.40 and $182,160 results in a total of $5,153,493.40.

7. I reiterate that the precise charge for an added driver will vary significantly based on a host of factors including, among other things, age and driver experience, vehicle type, geographic location, and driver record. So too will the length of time that each "added driver" will remain active on each putative class member's account, as some insureds, like Mr. Westerfield

would have removed the driver within a week, while others (*e.g.*, those whose added driver was a part of their household) may not have removed them at all. As a result, the above figures are not intended to be definitive figures but rather are based upon GEICO Advantage's preliminary investigation of available information. In addition, as stated in my prior declarations, GEICO Advantage maintains much of this information as highly confidential and not subject to public disclosure because, were it to be disclosed, it may put GEICO Advantage at a competitive disadvantage in the auto-insurance space. Indeed, GEICO Advantage takes active measures to prevent the unintended disclosure of sensitive financial information, including insured premiums, rate increases, and other related financial data.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 14, 2026

[signature]

Allison Hoskins