**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| Eric Westerfield,<br><br>Plaintiff,<br><br>v.<br><br>GEICO Advantage Insurance Company,<br><br>Defendant. | Case No. 4:26-cv-001528-SRC |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**

## INTRODUCTION

Defendant's Motion provided clear reasons why this Court should dismiss Plaintiff's claims (1) in favor of the already-pending *Kane* Action,[1] (2) for lack of personal jurisdiction, and (3) for failure to state a claim. Plaintiff's Opposition offers no persuasive response to any of these issues. Instead, Plaintiff—having voluntarily dismissed his earlier case rather than accept transfer to the Middle District of Florida—seeks to avoid this Court's Order by dropping his civil conspiracy claim against the other GEICO defendants, carving out the *Kane* Action's putative class from his own, and insisting that these artificial changes transform a substantially similar lawsuit into a distinct one. But no amount of repleading can change the fact that Plaintiff's core allegations seek to challenge GEICO Advantage's same Risk Alert program, under GEICO Advantage's same policy language, and through the same three causes of action that this Court already found substantially similar to those pending in the preexisting *Kane* Action. As such, there is no reason to depart from this Court's earlier Order applying the "first-to-file" rule.

In fact, if anything has changed between Plaintiff's two lawsuits, it is that Plaintiff dropped his claims against the only GEICO defendants to have actually conducted business and utilized GEICO's Risk Alert program in the State of Missouri during the relevant time period. By contrast, GEICO Advantage, the only remaining defendant in this case, did neither. In fact, GEICO Advantage ***did not even issue or service Missouri-based policies at the time of the alleged conduct***. As a result, there is now ***zero*** nexus between Missouri and Plaintiff's claims aside from Plaintiff's covert relocation to this state, a fact that is insufficient as a matter of law to sustain personal jurisdiction against GEICO Advantage standing alone.

[1] Capitalized terms not otherwise defined herein shall have the same meaning as set forth in Defendants' Memorandum of Law in Support of Motion to Dismiss (ECF No. 18) (the "Motion").

And even if Plaintiff were able to clear these threshold hurdles, which he cannot, his claims would still fail on the merits, as the plain and express language of his insurance policy ***explicitly permits*** the conduct about which he now complains. As a result, and because Plaintiff has already rejected this Court's efforts to maintain Plaintiff's claims in a different forum, this Court should dismiss Plaintiff's claims with prejudice once and for all.

**ARGUMENT**

**I. Plaintiff's claims should be dismissed pursuant to the "first-to-file" rule.**

This Court has already applied the "first-to-file" rule to Plaintiff's claims, recognizing that they are "substantially similar" to those asserted in the already pending *Kane* Action. Order at 21–23. Indeed, in *Westerfield I*, this Court found all three "first-to-file" factors—(1) the chronology of events, (2) the similarity of the parties, and (3) the similarity of the issues—weighed in favor of application of the rule. *Id*. Nothing in Plaintiff's Opposition warrants a different result. Because Plaintiff does not (and cannot) dispute that the *Kane* action was filed more than a year before this case, GEICO Advantage focuses on the two remaining factors, both of which continue to favor application of the rule. *See* ECF No. 14 at 2 ("Westerfield accepts *Kane*'s priority and the common Risk Alert subject matter.").

**a. The *Kane* Action involves "substantially similar" parties to this case.**

Plaintiff argues that the second factor—the similarity of the parties—weighs in his favor because the *Kane* Action and this case involve different corporate defendants and non-overlapping proposed classes. Opp'n at 2–3. But, as detailed in GEICO Advantage's Motion, the law is clear that the primary consideration under the "first-to-file" rule is not whether the parties include *exactly* the same individuals or entities; rather, what matters is whether "the parties' *interests* in each case are clearly aligned." *HRB Tax Grp., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2012 WL 4363723, at *2 (W.D. Mo. Sept. 21, 2012) (emphasis added). Because both sides of

the "v" maintain identical interests across the two cases, there can be no doubt that application of the rule remains warranted. *See* Motion at 6–8.

Indeed, while it is true that GEICO Advantage and GEICO Casualty Company (the defendant in the *Kane* Action) are distinct entities, Plaintiff has no response to the fact that courts routinely apply the "first-to-file" rule where defendants are members of the same corporate family. *See, e.g.*, *Masud v. TD Ameritrade Inc.*, 2025 WL 1644423, at *6 (D. Neb. June 10, 2025) ("Plaintiffs sued substantially similar defendants—members of the same corporate family who are aligned on every issue."); *Evans v. J.P. Morgan Chase Bank, N.A.*, 2014 WL 12600285, at *1 (W.D. Mo. Feb. 12, 2014).[2] This holds especially true here, where Plaintiff originally alleged that each of the GEICO defendants' "unified systems and practices result in identical policy forms and identical operational practices across all GEICO entities, including the automatic addition of drivers based on third-party data." *Westerfield I*, ECF No. 20 ¶¶ 20–23; *see also* ECF No. 14 at 4 (conceding that "GEICO Advantage and GEICO Casualty [] have common corporate interests"). This Court confronted this issue head-on in *Westerfield I* when it recognized that the parties were "substantially similar" even though the two actions did not involve the exact same GEICO defendants. Order at 22–23 (applying "first-to-file" rule in part because "Plaintiff's complaint treats each Defendant as part of a collective unit that uses the same Risk Alert program against its policyholders").[3] There is no reason for a different result now.

---

[2] Plaintiff's efforts to distinguish these authorities miss the mark. *See* Opp'n at 4 n.2. GEICO Advantage cited *Masud* for the unassailable proposition that "members of the same corporate family who are aligned on every issue" can be considered "substantially similar defendants" for the purpose of applying the "first-to-file" rule. 2025 WL 1644423, at *6. Likewise, GEICO Advantage cited *Evans* because there, as in *Westerfield I*, the Court found substantially similar parties (despite non-complete overlap) where corporate affiliates were involved. 2014 WL 12600285, at *1. Plaintiff's 'distinguishments' do not change these holdings.

[3] Plaintiff's argument that the *Kane* Action will not resolve this case overlooks that the same would have held true in *Westerfield I*, where resolution of the *Kane* Action may not have resolved

Plaintiff's further argument that application of the rule is unwarranted because the classes do not overlap is similarly a red herring. The proposed classes in this case and in the *Kane* Action—neither of which has been (or likely could be) certified—are both ***nationwide*** classes challenging the same Risk Alert practice under GEICO's corporate umbrella. As a result, there exists an overlap in core facts and legal issues that will inevitably create a risk of duplicative or inconsistent judgments. On this basis alone courts apply the "first-to-file" rule, ***even where classes are mutually exclusive***. *See General Committee of Adjustment GO-386 v. Burlington N. R.R.*, 895 F. Supp. 249, 252 (E.D. Mo. 1995) (applying "first-to-file" rule where the issue was "one of national ramifications" requiring "a single definitive ruling"); *Cadenasso v. Metro. Life Ins. Co.*, 2014 WL 1510853, at *10 (N.D. Cal. Apr. 15, 2014) (applying "first-to-file" rule to cases with "nearly identical issues," even though "classes [were] mutually exclusive").

Indeed, Plaintiff's transparent attempt to "expressly exclude[] *Kane's* proposed class members" (Opp'n at 3) is nothing more than a tortured effort to avoid this Court's Order that will, in turn, create more issues than it attempts to solve. For example, Plaintiff offers no explanation for how this Court could determine whether a putative class member will be included within a *Kane* Action class that has yet to be certified.[4] Nor could he, as doing so would be functionally *impossible* unless this case was indefinitely put on hold pending potential certification in the *Kane* Action. This sort of legal overlap and judicial inefficiency is precisely what drives courts to apply the "first-to-file" rule in the first place. *HRB Tax Grp., Inc.*, 2012 WL 4363723, at *4 (applying "first-to-file" rule where parallel litigation would be "[a] waste of judicial resources and an

---

Plaintiff's claims against GEICO Advantage, as well as the scores of courts to have applied the "first-to-file" rule where parties do not perfectly (or even partially) overlap.

[4] Many individuals, including Plaintiff, have been insured by multiple GEICO entities, such as where, like here, they move to a location where a specific GEICO entity does not operate. *See* ECF No. 18-1 ¶ 4.

unnecessary risk of inconsistent rulings may result from litigating the same issues in two courts"). As a result, because each side's interests are clearly aligned across the two cases, the second "first-to-file" factor continues to favor application of the rule.

**b. Plaintiff cannot refute that the two cases involve identical claims and issues.**

Even more fundamentally, just as a tiger cannot change its stripes, Plaintiff cannot change the fact that this case and the *Kane* Action involve virtually identical claims and issues. This fact has been recognized by this Court and is all but conceded in Plaintiff's Opposition. Order at 23 ("Both cases also raise substantially similar claims."); *see* Opp'n at 3–4 ("Similar policy language and a common underwriting practice may produce overlapping legal questions . . . ."). Plaintiff's only rebuttal is that this clear overlap is "not enough" to warrant application of the rule. *Id*. at 3. But Plaintiff fails to actually explain why different treatment is warranted where he continues to challenge the same conduct, on the same policy language, through the same three underlying causes of action. Put simply, this Court got it right the first time, and Plaintiff offers no meaningful justification for departure from that ruling.

Plaintiff's cited authority fails to support a contrary conclusion. In *Welsher v. Frito-Lay North America, Inc.*, the "first-to-file" rule did not apply because "the claims themselves arise under Arkansas law, and [the plaintiff's] proposed class is limited to Arkansas purchasers of allegedly-misbranded products." 2014 WL 7331017, at *2 (W.D. Ark. Dec. 19, 2014). Not so here, where both this case and the *Kane* Action assert ***identical nationwide*** class claims for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. *Compare* Pet. ¶¶ 60–81, *with Kane* Compl. ¶¶ 71–132. The *Welsher* court's finding that "neither the parties nor the issues are substantially the same" therefore fails to carry the day. 2014 WL 7331017, at *2; *see also General Committee*, 895 F. Supp. at 252; *Cadenasso*, 2014 WL 1510853, at *10.

Plaintiff's citation to *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.* is likewise inapposite. 713 F.3d 71, 78–79 (11th Cir. 2013). Contrary to Plaintiff's characterization, that case—in which the district court enjoined defendants from performing a "first-to-file" end-run by filing intervening complaints in a pending California action—turned on the ***first prong*** of the first-filed analysis: which court was "initially seized" of the action. *Id*. at 78. And, in the end, the Eleventh Circuit ultimately *applied* the "first-to-file" rule after finding that "the proper comparative complaints for purposes of the first-filed analysis" involved "the ***exact same parties, the exact same insurance policies, and the exact same legal issues***." *Id*. (emphasis added). As a result, far from weighing in Plaintiff's favor, *Collegiate Licensing* finds precisely the opposite.

At bottom, Plaintiff's Petition alleges the exact same underlying conduct as his prior petition—that GEICO Advantage allegedly overcharged him and a putative nationwide class through its Risk Alert program. No amount of cosmetic alterations will change this fact. Accordingly, "because no compelling circumstances exist here," as this Court already found, application of the "first-to-file" rule remains warranted. Order at 23.

**c. If Plaintiff does not wish to litigate his claims in the Middle District of Florida, as he has already shown, the proper remedy is dismissal.**

As detailed above, Plaintiff has failed to present any valid justification for departure from this Court's Order applying the "first-to-file" rule to his claims. In light of the broad discretion granted to this Court, the only remaining question is whether this Court should dismiss, stay, or, as this Court already held, transfer Plaintiff's claims to the Middle District of Florida. As a Hail Mary, Plaintiff argues that transfer is inappropriate because the Middle District of Florida would lack personal jurisdiction over GEICO Advantage (and Plaintiff transparently refuses to consent to jurisdiction there). Opp'n at 4–5. While GEICO Advantage takes no position on the availability of personal jurisdiction in the Middle District of Florida, or even whether Plaintiff's reading of

Section 1404(a) is correct or applicable to "first-to-file" rule,[5] it respectfully submits that if Plaintiff does not wish to litigate his claims in the Middle District of Florida (as he apparently does not want to do), this Court should exercise its broad authority under the "first-to-file" rule and dismiss his claims outright. *See HRB Tax Grp., Inc.*, 2012 WL 4363723, at *4.

Indeed, were this Court to transfer Plaintiff's claims again, there is no reason to expect a different result. And were this Court to accept Plaintiff's invitation to stay this case, GEICO Advantage fully expects Plaintiff—as he previews in his Opposition[6]—to inundate Defendant and this Court with meritless attempts to reopen this case based on purported "distinctions" from the *Kane* Action. In fact, GEICO Advantage would not be surprised to see Plaintiff's counsel voluntarily dismiss Plaintiff's claims (again) and file a *new* lawsuit (presumably in Missouri state court, again) through a different named plaintiff. This Court should not countenance these serial efforts to circumvent this Court's rulings and drive up GEICO Advantage's litigation costs. Instead, Defendant respectfully requests that this Court dismiss Plaintiff's claims once and for all.

**II. Plaintiff's Petition should be dismissed for lack of personal jurisdiction.**

Plaintiff does not engage with GEICO Advantage's arguments explaining why personal jurisdiction is lacking against it as the sole remaining defendant. Instead, he simply relies on this Court's ruling in *Westerfield I*, which found specific jurisdiction over eight GEICO defendants

---

[5] Defendant notes that Plaintiff's own cited authority in his response to this Court's Show Cause Order undercuts his position. *See* ECF No. 14 at 6–7 (citing *Brinker v. Kraft Heinz Foods Co.*, 2024 WL 3638243, at *2–3 (E.D. Mo. Aug. 1, 2024) (transferring under "first-to-file" rule despite not meeting requirements for transfer under § 1404(a)) and *Myers v. Walmart, Inc.*, 2025 WL 70987, at *2–3 (W.D. Ark. Jan. 10, 2025) (acknowledging circuit split and that "the Eighth Circuit has yet to weigh in")); *see also Advanced Physical Therapy, LLC v. Apex Physical Therapy, LLC*, 2017 WL 9717215, at *2 (W.D. Mo. July 6, 2017) ("The Eighth Circuit has not held that a transfer made pursuant to the first-filed rule must also satisfy § 1404(a) . . . . This is not surprising, given that the purposes of § 1404(a) and the first-filed rule are different.").

[6] Opp'n at 5; *see also* ECF No. 14 at 8 (requesting "a ***limited, reviewable stay*** rather than transfer" (emphasis added)).

collectively. *See* Opp'n at 5–8. But GEICO Advantage's Motion does not ask the Court to revisit that ruling. Instead, it raises a question unique to this case: whether GEICO Advantage, standing alone, can be haled into Missouri over a dispute regarding premiums charged on a ***Kansas*** policy, issued to a ***Kansas*** address, for drivers purportedly located in ***Kansas***, when ***GEICO Advantage neither utilized the Risk Alert program nor issued insurance policies in Missouri during the relevant time period***. Because Plaintiff has, yet again, failed to plead or even suggest any plausible nexus between the State of Missouri and Plaintiff's claims, save for his covert relocation to this state, personal jurisdiction is lacking. *See* Motion at 9–12.

In opposition, Plaintiff leans heavily on *Ferrell v. West Bend Mut. Ins. Co.*, 393 F.3d 786 (8th Cir. 2005), which this Court cited in *Westerfield I*. *See* Opp'n at 6–7; Order at 19–20. In *Ferrell*, the court held that a territory-of-coverage clause in a general liability policy "establishe[d] sufficient contact" with Arkansas to hale the insurer into court there in indemnification proceedings arising from claims against its insured. 393 F.3d at 791. But whether a general liability provider can be haled into a foreign forum to indemnify an insured for claims under its policy is a different inquiry altogether from whether an auto-insurer can be haled into ***any*** forum for ***any*** purpose whatsoever on the basis of a limited territoriality clause. Indeed, as explained in GEICO Advantage's Motion, by its plain terms, the Policy's territoriality clause is limited "***only*** to accidents, occurrences or losses during the policy period." ECF No. 5-1 at 15 (emphasis added). Thus, far from being a promise to litigate any and all policy-related disputes wherever the insured may move, this provision is expressly limited to claims arising from the insured's operation of an automobile. Reading the clause otherwise would all but erase the line between general and specific jurisdiction and allow an insured to sue GEICO Advantage ***anywhere in the country***—even in forums where the company does not operate or conduct business—regardless of the nature of the

dispute. *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (recognizing that specific jurisdiction turns on the defendant's "*suit-related* conduct," which must "create a substantial connection with the forum State" (emphasis added)). Plaintiff's Opposition fails to address this issue.

Plaintiff's citation to GEICO Advantage's corporate registration with Missouri's Secretary of State is no more availing. Opp'n at 7. GEICO Advantage's Missouri registration has no connection whatsoever with Plaintiff's claims, as Plaintiff was insured in Kansas, not Missouri. In fact, GEICO Advantage ***did not even issue or service insurance policies in Missouri during the relevant time period***. ECF No. 18-1 ¶ 4. The fact that it was authorized to do so by the Missouri Secretary of State (but did not) is of no consequence. To muddy the waters, Plaintiff attempts to draw in ***other*** GEICO entities' contacts with Missouri by arguing that "[t]he Court relied on the program's use of Missouri DMV data in finding purposeful availment . . . [and] GEICO Advantage used that same program for the [16,000] customers Hoskins identifies." Opp'n at 8. But Plaintiff sidesteps Defendant's explanation that ***none*** of these 16,000 instances involved GEICO Advantage and a Missouri insured. Nor could they, as GEICO Advantage ***did not use the Risk Alert program in Missouri during the relevant time period***. ECF No. 18-1 ¶¶ 3–4 (emphasis added); ECF No. 1-2 ¶ 4. The mere fact that GEICO Advantage uses the Risk Alert program ***outside*** of Missouri, or that ***other*** GEICO entities use the program in Missouri, does nothing to establish the requisite connection between *GEICO Advantage and Missouri* to sustain jurisdiction over it standing alone.[7]

Indeed, the only purported suit-related connection to Missouri to which Plaintiff can point

[7] In a further attempt to bolster his position, Plaintiff cites to third-party discovery in the *Kane* Action (Opp'n at 8), but again, whether ***other*** GEICO entities used Risk Alert in Missouri is irrelevant to GEICO Advantage's conduct here. *Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020 (specific jurisdiction must rest on contacts "the 'defendant himself' created with the forum State," not on the activities of affiliates). If anything, Plaintiff's reliance on records from the *Kane* Action only underscores the importance of applying the "first-to-file" rule, as detailed above.

is his specious allegations that "GEICO Advantage communicated with him while he lived in Missouri" and "offered to renew his coverage" when Plaintiff was living in Missouri. Pet. ¶¶ 20–21; *see* Opp'n at 6. But Plaintiff yet again "carefully elides whether [GEICO] deliberately entered a contractual relationship with Westerfield in Missouri." Order at 18; Opp'n at 6 ("The Court also recognized what Westerfield's evidence did not show: his declaration did not establish whether GEICO Advantage sent correspondence directly to a Missouri address or knew of the relocation."). This is because his move to Missouri was ***not*** known to GEICO Advantage, a fact evidenced by the express language of his Kansas policy listing Mr. Westerfield's address and vehicle locations in Kansas. ECF No. 5-1 at 24; *see also* ECF No. 18-1 ¶ 4.[8] Because Plaintiff fails to refute this fact or allege that GEICO Advantage knew (or had any reason to know) of Plaintiff's move, the law is clear that it cannot be said to have purposefully availed itself of this state. *See Warren*, 2011 WL 6010758, at *7; *Bellisio Foods*, 2008 WL 4867352, at *7 ("One does not purposefully avail oneself of the privilege of doing business in Minnesota by negotiating a contract with someone who is secretly a Minnesota resident."); *Allan G. Holms, Inc. v. Mraz*, 2006 WL 2506044, at *3–4 (D. Mont. Aug. 28, 2006) (finding no personal jurisdiction where "Plaintiffs have not alleged or shown that the Defendants even knew, or had reason to know, that they were contracting with a Montana corporation").[9]

---

[8] Plaintiff criticizes Ms. Hoskins's declaration for "suppl[ying] no details or dates" concerning GEICO Advantage's decision not to insure Mr. Westerfield once it learned that he had moved to Missouri. Opp'n at 8–9. But it is Plaintiff's burden to make a prima facie showing of personal jurisdiction, and he has failed to allege that GEICO Advantage actually *knew* of his move before the challenged premium adjustment. *See Warren v. Cardoza Pub., Inc.*, 2011 WL 6010758, at *1, 7 (E.D. Mo. Dec. 2, 2011); *Bellisio Foods, Inc. v. Prodo Pak Corp.*, 2008 WL 4867352, at *1, 7 (D. Minn. Nov. 4, 2008). Nor could he, as the undisputed evidence shows that GEICO Advantage believed he resided in ***Kansas***. *See* ECF No. 5-1 at 24; ECF No. 18-1 ¶ 4.

[9] In a last gasp effort, Plaintiff once again seeks jurisdictional discovery on this issue. Opp'n at 9. But no amount of discovery will change the dispositive facts already in the record: Plaintiff held a Kansas policy for a Kansas address; GEICO Advantage added drivers purportedly residing at that

**III. Plaintiff's Petition fails to state a claim upon which relief can be granted.**

**a. Where Plaintiff's insurance policy expressly authorizes the conduct at issue, each of his three claims must fail.**

As detailed in GEICO Advantage's Motion, each of Plaintiff's claims collapses upon scrutiny of the Policy language, which expressly permits the exact conduct about which Plaintiff complains. Specifically, Plaintiff's Policy explains that premiums are "based on the information [GEICO Advantage] ha[s] in [Plaintiff's] file," and expressly authorizes GEICO Advantage to "adjust [those] premiums during the policy term if any of this information . . . is incorrect, incomplete or changed." ECF No. 5-1 at 15–16; *see also* Pet. ¶¶ 22–23. To keep that information accurate, the Policy obligates Plaintiff to "cooperate with [GEICO Advantage] in determining if this information is correct and complete." ECF No. 5-1 at 16. At all times, GEICO Advantage acted in accordance with this language when it identified a youthful driver residing at Plaintiff's Kansas residence, requested Plaintiff's cooperation in determining whether that information was correct, and adjusted Plaintiff's premiums when he indisputably failed to respond. ECF No. 5-1 at 22; Pet. ¶¶ 33–36, 39–40. Because that conduct is expressly permitted by the Policy, it cannot support a claim for breach of contract, breach of the implied covenant, or unjust enrichment. *See AIDS Healthcare Found. v. Express Scripts, Inc.*, 658 F. Supp. 3d 693, 703–04 (E.D. Mo. 2023); *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 513–14 (8th Cir. 2018); *Blair v. City of Hannibal*, 179 F. Supp. 3d 901, 911 (E.D. Mo. 2016).

In opposition, Plaintiff concedes (as he must) that Section V of the Policy permits premium adjustments during the policy term, but argues that GEICO Advantage may do so only "if" the

---

Kansas address; and GEICO Advantage did not use the Risk Alert program or issue policies in Missouri during the relevant time period. As a result, the facts "necessary to resolving the jurisdictional inquiry" are not "unknown or disputed," rendering discovery unwarranted. Order at 12 (quoting *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 598 (8th Cir. 2011)); *see also Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 713 (8th Cir. 2003).

rating information is ***actually*** "incorrect, incomplete, or changed." Opp'n at 10. Plaintiff's argument finds no support in the Policy language. Section V does not tie GEICO Advantage's authority to some objective, after-the-fact determination of the insured's household; it ties premiums to "the information [GEICO Advantage] ha[s] in [the insured's] file" and permits GEICO Advantage to adjust those premiums when "any of ***this information*** . . . ***change[s]***." ECF No. 5-1 at 15–16 (emphasis added). Put differently, if "the information [GEICO Advantage has] in [Plaintiff's] file. . . change[s]," GEICO Advantage is expressly permitted to "adjust [his] premiums during the policy term." *Id.* That is precisely what Mr. Westerfield has alleged here. Pet. ¶¶ 33–35; ECF No. 5-1 at 22. The possibility that such information may not be accurate—for example, where GEICO Advantage believes that an insured resides in Kansas when they have actually moved to Missouri—is precisely why the Policy imposes a burden on the insured to "cooperate . . . in determining if this information is correct and complete." ECF No. 5-1 at 16.

Taking Plaintiff's argument to its logical conclusion only underscores the absurdity of his position. Under Plaintiff's interpretation, GEICO Advantage would be permitted to adjust an insured's premiums only after the insured *affirmatively confirms* that the information GEICO Advantage received is correct. Insureds would therefore have the perverse incentive to withhold or delay confirmation to avoid an increase in premiums, despite receiving the benefit of an increase in coverage. For example, under Plaintiff's reading, an insured convicted for driving under the influence could avoid a change in rates or coverage simply by refusing to cooperate or discuss the conviction with GEICO Advantage. That cannot be correct.[10] Put simply, Plaintiff's argument impermissibly reads out of Section V GEICO Advantage's express ability to adjust premiums

[10] This is particularly absurd for situations, like here, involving government records. Indeed, the information upon which GEICO Advantage bases its Risk Alert additions is sourced by its vendor *directly from each relevant state's Department of Motor Vehicles*. ECF No. 18-1 ¶ 2.

based on changes to the information it has in its files. As a result, Plaintiff's reading is not sustainable as a matter of law. *See Safeco Ins. Co. of Illinois v. Palazzolo*, 481 F. Supp. 3d 921, 928 (E.D. Mo. 2020) ("Courts must 'endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant.'"); *State ex rel. Blue Springs Sch. Dist. v. Grate*, 576 S.W.3d 262, 271 (Mo. Ct. App. 2019) (same). Plaintiff's related contention that Section V allows only "premium adjustment[s], not driver additions," Opp'n at 10, is a distinction without a difference. Adding a driver to a declarations page is how the changed information upon which premiums are based is reflected in the Policy. Under Plaintiff's strained reasoning, GEICO Advantage would be permitted to increase an insureds' premiums but not to provide the corresponding increase in coverage. That makes no sense.

**b. Plaintiff's implied covenant claim also fails because it is duplicative of his breach of contract claim.**

Even if Plaintiff's implied covenant claim could survive the express contractual language permitting GEICO Advantage's conduct (it cannot), it independently fails because it is duplicative of his breach of contract claim. Plaintiff responds that Count II is pleaded in the alternative and challenges GEICO Advantage's exercise of discretion rather than its authority. Opp'n at 13. But this is yet another distinction without a difference. While implied covenant claims are not inherently duplicative, they are subject to dismissal where, as here, they "amount to just another way the contract was breached." *Cafe Agave, Inc. v. Crown Valley Winery, Inc.*, 2023 WL 4623057, at *5 (E.D. Mo. July 19, 2023); *Earley v. Wachovia Bank, Nat'l Ass'n*, 2009 WL 10702522, at *4–5 (W.D. Mo. Feb. 26, 2009). The conduct Count II challenges—"using unverified data, imposing a default and proof demands outside the policy, and collecting premiums for the resulting designation" (Opp'n at 13)—is precisely the same conduct underlying Count I, such that proof of

one would necessarily resolve the other. It is therefore unsustainable as a matter of law.[11]

**c. Plaintiff's unjust enrichment claim is inherently inconsistent with his breach of contract claim.**

Plaintiff's unjust enrichment claim is likewise incompatible with his breach of contract claim. The law is clear that where a "plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply." *Affordable Cmtys. of Mo. v. Fed. Nat'l Mortg. Ass'n*, 714 F.3d 1069, 1077 (8th Cir. 2013); *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 854 (8th Cir. 2014). While Plaintiff now "accepts" that rule (Opp'n at 14), he argues this claim applies only if the Court determines that the Policy does not govern the challenged additions and charges. But Plaintiff is unable to point to any right, duty, or obligation beyond the four corners of the parties' agreement. Indeed, his tagalong invocation of Rule 8's allowance for alternative pleading goes too far. *See* Opp'n at 14. If a plaintiff could avoid the bar on inconsistent claims merely by labeling its unjust enrichment claim as "alternative in the event the contract doesn't govern," the rule would be swallowed in every case involving the two claims. That cannot be the law. As a result, because an express agreement exists governing the entirety of the parties' relationship, Plaintiff's unjust enrichment claim is fatally inconsistent with his breach of contract claim and should be dismissed.

## CONCLUSION

Because Plaintiff has had multiple opportunities to state a claim in this forum but has failed to do so, and because Plaintiff's request for leave identifies no facts that could change the ultimate outcome, Defendant respectfully requests that this Court dismiss Plaintiff's claims with prejudice.

---

[11] Plaintiff's authorities do not hold otherwise. In *W. Silver Recycling, Inc. v. Nidec Motor Corp.*, the covenant claim targeted defendant's conduct in a manner distinct from the "exclusive" contract theory underpinning the breach of contract claim. 509 F. Supp. 3d 1106, 1113–14 (E.D. Mo. 2020). Here, by contrast, Plaintiff's Counts I and II both rise and fall on the same question—whether Section V of the Policy authorizes Defendant's conduct—and are therefore duplicative.

Date: October 26, 2026

Respectfully submitted,

*By: /s/* W. Jason Rankin
W. Jason Rankin #626724
Charles Insler, #58623
701 Market St., Ste. 1400
St. Louis, MO 63101
314-241-6160
wjr@heplerbroom.com
cni@heplerbroom.com
emb@heplerbroom.com

George E. Mastoris (*pro hac vice* forthcoming)
Adam P. Moskowitz (*pro hac vice*)
**WINSTON TAYLOR LLP**
200 Park Ave.
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
george.mastoris@winstontaylor.com
adam.moskowitz@winstontaylor.com

Samantha Lerner (*pro hac vice*)
**WINSTON TAYLOR LLP**
300 N. LaSalle Drive
Chicago, IL 60654
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
samantha.lerner@winstontaylor.com

*Counsel for Defendant GEICO Advantage Insurance Company*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was filed electronically on October 26, 2026, and served by operation of the Court's electronic filing system upon all attorneys of record.

/s/ W. Jason Rankin

*Counsel for Defendant*
*GEICO Advantage Insurance Company*