AFFIRMED 1/18/202

| | | |
|---|---|---|
| MARYLAND INSURANCE | * | BEFORE PATRICIA M. DEMAIO, |
| ADMINISTRATION | * | AN ADMINISTRATIVE LAW JUDGE |
| *EX REL.* | * | OF THE MARYLAND OFFICE |
| [redacted], | * | OF ADMINISTRATIVE HEARINGS |
| COMPLAINANT | * | |
| v. | * | |
| GEICO SECURE INSURANCE | * | |
| COMPANY, | * | OAH No.: MIA-CC-33-23-07233 |
| LICENSEE | * | MIA No.: [redacted] |

* * * * * * * * * * * * *

## PROPOSED DECISION

STATEMENT OF THE CASE
ISSUES
SUMMARY OF THE EVIDENCE
FINDINGS OF FACT
DISCUSSION
CONCLUSIONS OF LAW
PROPOSED ORDER

## STATEMENT OF THE CASE

On September 11, 2022, the Maryland Insurance Administration (MIA) received a complaint from the Complainant alleging that GEICO Secure Insurance Company (Licensee) erroneously added a driver to his automobile policy resulting in improper bill collection processes and cancellation of the policy.

After an investigation, the MIA found that the Licensee did not violate Maryland insurance law and notified the Complainant of its finding by a letter dated January 26, 2023. On February 3, 2023, the Complainant requested a hearing. On March 13, 2023, the MIA

transmitted the matter to the Office of Administrative Hearings (OAH) to conduct a contested case hearing. In its transmittal, the MIA delegated to the OAH authority to issue a proposed decision.[1] The Insurance Commissioner directed the administrative law judge's attention to sections 11-230(a), 11-341, 27-216(b)(1), and 27-613(d) of the Insurance Article.

On May 5, 2023, I held a hearing at the OAH in Hunt Valley, Maryland. Md. Code Ann., Ins. §§ 2-210, 2-213, 27-613(g), (i) (2017 & Supp. 2022).[2] The Complainant appeared without representation. [redacted] by a power-of-attorney, represented the Licensee.

The contested case provisions of the Administrative Procedure Act, the MIA's hearing regulations, and the OAH's Rules of Procedure govern procedure. Md. Code Ann., State Gov't §§ 10-201 through 10-226 (2021); COMAR 31.02.01; COMAR 28.02.01.

## ISSUES

Did the Licensee's increase of the Complainant's automobile insurance premium comply with Maryland insurance law?

Did the Licensee's cancellation of the Complainant's automobile insurance policy comply with Maryland insurance law?

## SUMMARY OF THE EVIDENCE

### Exhibits

I incorporated the entire MIA file, consisting of thirty-three exhibits, into the record as follows:

MIA Ex. 1 Complaint Summary, received by the MIA on September 11, 2022; Declarations Page, issued March 9, 2022; Billing summary, October 1, 2022; Exclusion of named driver, September 11, 2022; Correspondence from the Licensee to the

[1] The Insurance Commissioner may delegate to the OAH the authority to issue: (a) proposed or final findings of fact; (b) proposed or final conclusions of law; (c) proposed or final findings of fact and conclusions of law; or (d) a proposed or final order. Code of Maryland Regulations (COMAR) 31.02.01.04-1A.
[2] Unless otherwise noted, all references to the Insurance Article are to the 2017 Replacement Volume of the Maryland Code annotated.

Complainant, September 2, 2022; Federal Fair Credit Reporting Act Disclosure Notice, September 2, 2022; Declarations Page, issued September 2, 2022; Billing log screenshots, March 8, 2022 – September 8, 2022; Emails between the Complainant and the Licensee, August 17 – 18, 2022

MIA Ex. 2 Correspondence from the MIA to the Licensee, September 12, 2022

MIA Ex. 3 Emails between the Complainant and the MIA, September 22, 2022 and September 27, 2022; Billing invoice and envelope, issued September 17, 2022

MIA Ex. 4 Correspondence from the Licensee to the MIA, October 3, 2022; Declarations Page, issued September 29, 2022

MIA Ex. 5 Correspondence from the MIA to the Licensee, October 3, 2022

MIA Ex. 6 Emails between the Complainant and the MIA, September 22, 2022 – October 4, 2022

MIA Ex. 7 Emails between the Complainant and the MIA, September 22, 2022 – October 7, 2022

MIA Ex. 8 Email from the MIA to the Licensee, October 17, 2022

MIA Ex. 9 Correspondence from the Licensee to the MIA, October 18, 2022; Declarations Page, issued September 2, 2022; Declarations Page, issued March 9, 2022; Correspondence from the Licensee to the Complainant, August 17, 2022; Risk Alert Report, July 15, 2022

MIA Ex. 10 Correspondence from the MIA to the Licensee, October 19, 2022

MIA Ex. 11 Emails between the Complainant and the MIA, September 22, 2022 – October 20, 2022; Insurance identification cards; Declarations Page, issued September 29, 2022; Notice of Dispute, October 20, 2022

MIA Ex. 12 Correspondence from the Licensee to the MIA, October 31, 2022; Accounting log screenshots; Insurance Policy; Privacy Notice

MIA Ex. 13 Emails from the Complainant to the MIA, November 3, 2022; Emails from the Licensee to the Complainant, November 2 – 3, 2022

MIA Ex. 14 Emails between the Licensee and the MIA, November 4, 2022; Email from the Complainant to the MIA, November 3, 2022; Notice of Cancellation, November 2, 2022; Notification of Penalties, undated

MIA Ex. 15 Correspondence from the MIA to the Complainant, November 4, 2022

MIA Ex. 16 Emails between the Complainant and the MIA, September 22, 2022 – November 29, 2022; Insurance identification cards; Declarations Page, issued September 29, 2022; Notice of Dispute, October 20, 2022; Emails between the Complainant and the Licensee, November 25, 2022

MIA Ex. 17 Email from the Complainant to the MIA, November 30, 2022

MIA Ex. 18 Email from the Complainant to the MIA, December 15, 2022; Auto Policy bill, December 7, 2022; Correspondence from the Licensee to the MIA, December 15, 2022; Correspondence from the Licensee to the MIA, October 18, 2022; Emails between the Complainant and the Licensee, August 17 – 18, 2022; Correspondence from the Licensee to the Complainant, September 2, 2022; Correspondence from the MIA to the Licensee, September 12, 2022; Correspondence from the MIA to the Licensee, October 3, 2022; Correspondence from the MIA to the Licensee, October 19, 2022; Correspondence from the Licensee to the MIA, October 31, 2022; Accounting log screenshots, April 16, 2022 – September 28, 2022

MIA Ex. 19 Correspondence from the MIA to the Licensee, December 16, 2022

MIA Ex. 20 Emails between the Licensee and the MIA, December 16, 2022

MIA Ex. 21 Correspondence from the Licensee to the MIA, December 19, 2022; Notice of Cancellation, November 2, 2022; Notice of Penalties, undated; Certification of Mailing, November 2, 2022; Policy log screenshots, October 19, 2021 – November 15, 2022; Correspondence from the Licensee to the Complainant, November 11, 2022

MIA Ex. 22 Correspondence from the MIA to the Licensee, December 20, 2022

MIA Ex. 23 Declarations Page, March 9, 2022, with ratings information attached; Declarations Page, September 29, 2022; with ratings information attached

MIA Ex. 24 Correspondence from the Licensee to the MIA, December 20, 2022; Auto policy bill, issued September 29, 2022; Auto policy bill, issued September 17, 2022; Auto policy bill, issued October 18, 2022; Billing log screenshots, September 1, 2022 – December 16, 2022

MIA Ex. 25 Email from the Licensee to the MIA, January 4, 2023

MIA Ex. 26 Correspondence from the MIA to the Licensee, January 13, 2023

MIA Ex. 27 Correspondence from the Licensee to the MIA, January 19, 2023; Policy Application, origination date October 18, 2021; Policy renewal package, September 9, 2022

| | |
|---|---|
| MIA Ex. 28 | Emails between the MIA and the Complainant, September 22, 2022 – January 23, 2023; Debt collection notice, January 15, 2023 |
| MIA Ex. 29 | Correspondence from the MIA to the Complainant, January 26, 2023 |
| MIA Ex. 30 | Emails between the MIA and the Complainant, January 25, 2023 – February 3, 2023; Email from the [redacted][3] to the Complainant, December 16, 2022 |
| MIA Ex. 31 | Emails between the MIA and the Complainant, September 22, 2022 – February 5, 2023; Hearing Request, February 3, 2023 |
| MIA Ex. 32 | Correspondence from the MIA to the Licensee, February 6, 2023 |
| MIA Ex. 33 | Emails between the MIA and the Complainant, September 22, 2022 – February 5, 2023; Hearing Request, February 3, 2023; Correspondence from the MIA to the Complainant and the Licensee, February 6, 2023; Correspondence from the MIA to the Complainant, January 26, 2023 |

I admitted the following exhibit offered by the Complainant:

Compl. Ex. 1 [redacted] Motor Vehicle History Report, November 29, 2022

The Licensee did not offer any exhibits.

Testimony

The Complainant testified and did not present other witnesses. [redacted], Trial Preparation Underwriter, testified for the Licensee and did not present other witnesses.

**FINDINGS OF FACT**

I find the following facts by a preponderance of the evidence:

1. At all times relevant to this case, the Complainant owned a 2021 Toyota Rav4, which the Licensee insured under a family automobile insurance policy (Policy).

2. On March 8, 2022, the Licensee issued a declarations page for the Complainant's Policy for the period of May 1, 2022 through November 1, 2022. The total premium for the Complainant's automobile insurance for that period was $877.80. The Complainant was enrolled in the full pay payment option.

---

[3] [redacted]

3. On April 27, 2022, the Complainant paid the $877.80 premium by credit card.

4. To validate a policyholder's exposure to uninsured drivers in their household, the Licensee uses a third-party vendor to secure undisclosed driver reports that use Maryland Motor Vehicle Administration (MVA) data to identify licensed drivers with a license address matching the Licensee's policyholders.

5. On July 15, 2022, the Licensee received an undisclosed driver report that identified that [redacted][4] was issued a Maryland driver's license on June 23, 2022 using the Complainant's address.

6. On August 17, 2022, the Licensee sent the Complainant an email and a letter via regular mail requesting that the Complainant either add [redacted] to his policy, provide proof of other insurance for [redacted], or provide information that [redacted] did not use the Complainant's vehicle and his relationship to [redacted] The Licensee also notified the Complainant that if no action was taken within fifteen days, [redacted] would automatically be added to the Complainant's policy.

7. The same day, the Complainant emailed the Licensee and advised that he did not consent to having [redacted] added to his policy. The Complainant did not provide any of the information the Licensee requested about the Complainant's relationship to [redacted] or whether [redacted] resided in the Complainant's household. The Complainant did not provide proof of other insurance for [redacted]

8. On August 18, 2022, the Licensee emailed the Complainant requesting that the Complainant provide the additional information regarding [redacted]

9. The same day, the Complainant emailed the Licensee stating that he was the only person that drove his vehicle and refused to provide additional information, claiming a violation of his right to privacy.

[4] As the driver is not a party to this matter, the driver's initials are being used to protect the driver's identity.

10. On September 1, 2022, the Licensee issued an amended declarations page adding [redacted] to the Complainant's Policy as an additional driver effective September 2, 2022, which resulted in a pro-rated earned premium of $363.84 for the policy period of May 1, 2022 through November 1, 2022.

11. The Licensee also offered the Complainant a named driver exclusion, which would allow the Complainant to specifically exclude [redacted] and avoid an additional premium being charged. (MIA Ex. 1).[5]

12. On September 9, 2022, the Licensee issued a declarations page for the Complainant's Policy for the period of November 1, 2022 through May 1, 2023 with [redacted] added to the Policy as an additional driver.

13. With [redacted] added to the Complainant's Policy, the total premium for the Complainant's Policy for the period of November 1, 2022, to May 1, 2023 was $2,593.89. Because the Complainant was enrolled in the full pay payment option, the full amount due was $2,957.73.[6]

14. On September 11, 2022, the Complainant filed a complaint with the MIA.

15. On September 27, 2022, the MIA asked the Complainant to confirm whether [redacted] was a member of the Complainant's household; the Complainant did not directly respond.

16. On September 28, 2022, the Licensee contacted the Complainant by phone and advised that [redacted] would be removed from his policy.

17. On September 29, 2022, the Licensee issued an amended Declarations Page removing [redacted] from the Complainant's Policy, effective September 2, 2022.

---

[5] The record does not contain evidence of when the Exclusion of Named Driver form was issued to the Complainant. However, the document notes an effective date of September 11, 2022, once endorsed by the Complainant. The copy in the record is not endorsed by the Complainant. (*See* MIA Ex. 1).
[6] $363.84 + $2,593.89 = $2,957.73

18. The removal of [redacted] from the Policy reduced the insurance premium for the policy period of November 1, 2022, to May 1, 2023 from $2,593.89 to $1,141.31.

19. The Complainant's premium was increased by $263.51[7] as a result of a general rate revision filed by the Licensee and a loss of a multi-line discount.[8]

20. The Licensee implemented a rate filing ([redacted]) that increased its base rates in Maryland for all auto policies renewing effective on or after August 29, 2022.

21. When [redacted] was removed from the Policy, the Licensee applied a premium credit of $377.80 to the Complainant's account for the policy period of May 1, 2022 through November 1, 2022, which resulted in a credit of $13.96.[9] The Licensee applied the $13.96 credit to the Complainant's November 1, 2022 through May 1, 2022 policy period which made a balance due of $1,127.35.

22. On October 18, 2022, the Licensee issued a billing statement requesting the full amount of $1,127.35.

23. On or about October 20, 2022, the Complainant sent the Licensee a Notice of Dispute, disputing the premium billed.

24. On November 2, 2022, the Licensee issued the Complainant, via certified mail and email, a cancellation notice for nonpayment of premium effective 12:01 a.m. on November 14, 2022, if payment of $1,127.35 was not received prior to the cancellation effective date and time.

25. On November 3, 2022, the Licensee emailed the Complainant a notice titled "[a]ction needed to keep your policy active" wherein the Licensee reminded the Complainant

---

[7] $1,141.31 - $877.80 = $263.51.
[8] On February 4, 2022, the Complainant contacted the Licensee and cancelled his renter's policy. The discount was removed effective November 1, 2022.
[9] $377.80 - $363.84 = $13.96

that he had until 12:01 a.m. on November 14, 2022, to make his payment or his Policy would lapse. (MIA Ex. 13).

26. On November 10, 2022, a representative for the Licensee contacted the Complainant to explain the premium increase. The next day the Licensee issued a letter documenting the call and the explanation for the premium increase.

27. The Complainant did not submit a payment on or before 12:01 a.m. November 14, 2022. The policy was therefore terminated on that date.

28. As a result of the insurance coverage that the Licensee provided the Complainant from November 1, 2022 through November 14, 2022, the Complainant has an outstanding balance of $67.99 on his account.

## DISCUSSION

When the MIA referred this case to the OAH, it directed the Administrative Law Judge conducting the hearing to pay specific attention to sections 11-230(a), 11-341, 27-216(b)(1), and 27-613(d) of the Insurance Article.

*Applicable Law*

Title 11 of the Insurance Article governs the insurance rating law and is directed toward the regulation of insurance rates so that they are not excessive, inadequate, or unfairly discriminatory. Rate filings, and their modification, suspension, approval, and disapproval are included in the subtitle. Section 230(a) provides:

> **§ 11-230. Prohibited policies; commissions authorized**
>
> (a) Prohibited policies. – An insurer or officer, agent or representative of an insurer may not knowingly issue or deliver or knowingly allow the issuance or delivery of a policy or

> (b) endorsement, certificate, or addition to the policy, except in accordance with the rate filing that are in effect for the insurer as provided in this subtitle.

Md. Code Ann., Ins. § 11-230(a).

Subtitle 3 of Title 11 addresses competitive rates and section 11-341 is similar in language to Section 11-230(a), providing:

> **§ 11-341. Prohibited contracts and policies.**
>
> An insurer may not make or issue an insurance contract or policy of insurance of a kind to which this subtitle applies, except in accordance with the filings that are in effect for the insurer as provided in this subtitle.

Md. Code Ann., Ins. § 11-341.

The MIA has also cited section 27-216(b)(1) of the Insurance Article in its transmittal. Title 27 addresses unfair trade practices and other prohibited practices. Section 27-216 provides in relevant part:

> **§ 27-216. Improper premiums and charges**
>
> (c) Improper premiums and charges generally; exceptions. – (1) A person may not willfully collect a premium or charge for insurance that:
>
> (i) exceeds or is less than the premium or charge applicable to that insurance under the applicable classifications and rates as filed with and approved by the Commissioner.
>
> (ii) if classifications, premiums, or rates are not required by this article to be filed with and approved by the Commissioner, exceeds or is less than the premium or charge specified in the policy and set by the insurer.

Md. Code Ann., Ins. § 27-216(b)(1).

Further, an insurer must comply with certain procedural and notification requirements before initiating the nonrenewal or cancellation of a private passenger motor vehicle liability insurance policy. Md. Code Ann., Ins. § 27-613. Section 27-613 specifically addresses the proper notice an insurance company is required to provide to an insured individual when the

insurance company intends to cancel or not renew a policy of insurance, reduce coverage under a policy, or cancel a policy for non-payment of premium. The relevant portion of section 27-613 provides as follows:

> **§ 27-613. Motor vehicle liability insurance policies**
>
> (d) Notice of intention to cancel for nonpayment of premium. – At least 10 days before the date an insurer proposes to cancel a policy for nonpayment of premium, the insurer shall send to the insured, by first class mail tracking method, a written notice of intention to cancel for nonpayment of premium.

Md. Code Ann., Ins. § 27-613(d).

*Burden of Proof*

When not otherwise provided by statute or regulation, the standard of proof in a contested case hearing before the OAH is a preponderance of the evidence, and the burden of proof rests on the party making an assertion or a claim. Md. Code Ann., State Gov't § 10-217 (2021); COMAR 28.02.01.21K(1). To prove an assertion or a claim by a preponderance of the evidence means to show that it is "more likely so than not so" when all the evidence is considered. *Coleman v. Anne Arundel Cnty. Police Dep't*, 369 Md. 108, 125 n.16 (2002). In this case, the Complainant, as the party asserting the affirmative on the issue of improper action by the Licensee, has the burden of proving by a preponderance of the evidence that the Licensee violated Maryland insurance law. COMAR 28.02.01.21K(1), (2)(a).

Regarding the policy cancellation, under section 27-613 of the Insurance Article, the Licensee bears the burden to prove by a preponderance of the evidence that its actions were proper and consistent with Maryland insurance law, the terms of any applicable policy and, where applicable, the insurance company's underwriting standards and rating plan on file with

the Commissioner of the MIA.[10] Under section 27-613(g)(6), the insurer "may rely only on the reasons set forth in its notice to the insured." Md. Code Ann., Ins. § 27-613(g)(6).

*Positions of the Parties*

The Complainant argued that the Licensee added [redacted] to his Policy without his permission; thereby causing his premium to increase. The Complainant averred that once [redacted] was removed from his Policy, the Licensee raised the Complainant's premium in retaliation for contacting the MIA. The Complainant also contended that the Licensee illegally cancelled his Policy. The Complainant argued that the Licensee violated his rights and requested that he be awarded one million dollars,[11] free automobile insurance coverage for life, and an apology from the Licensee.[12]

The Licensee asserts that it complied with its policy contract, privacy notice, filed rating rules and rates, and provided the Complainant the appropriate notice before cancelling his policy for nonpayment.

*Analysis*

Sections 11-230(a), 11-341 and 27-216(b) essentially require that insurance policies be written in accordance with the rating plans filed with the MIA. The Complainant has not alleged that his automobile insurance policy does not comply with the filed rating plans, but rather,

[10] The MIA coded this case as a Consumer Complaint. Generally, in a Consumer Complaint case, the burden of proof is on the Complainant, as the party asserting the affirmative on the issue, to demonstrate, by a preponderance of the evidence, that the Licensee acted contrary to the law. Md. Code Ann., State Gov't § 10-217 (2021); *Comm'r of Labor & Indus. v. Bethlehem Steel Corp.*, 344 Md. 17, 34 (1996). However, as the MIA directed attention specifically to section 27-613(d), I find the burden of proof is on the Licensee for the policy cancellation, pursuant to the specific language of the statute.

[11] When the Complainant filed the complaint, he asked for $500,000.00. At the hearing, he increased the number to $1,000,000.00.

[12] The Complainant alleged that the Licensee violated his privacy, breached the contract, extorted money from him and violated multiple statutes under the Fair Credit Reporting Act, Truth In Lending Act, Fair Debt Collection Practices Act, Gramm-Leach-Billey-Act, and the Equal Credit Opportunity Act. On September 27, 2022 and November 4, 2022, the MIA advised the Complainant that any allegations of wrongdoing under these acts are not within the MIA's authority for review. The MIA delegated its hearing authority to the OAH. As such, I am bound by the MIA's authority. Accordingly, those issues will not be addressed further in this proposed decision.

maintained that [redacted] was added to his insurance policy as an additional driver without his consent and as an improper basis to increase the Complainant's premium. He further alleged that once [redacted] was removed from his policy, his rate was increased in retaliation for filing a claim with the MIA and that his policy was improperly cancelled for nonpayment. The evidence provided by the Licensee, and by the Complainant through the records submitted to the MIA during the investigation process, emails between the Complainant and the MIA investigator, and the testimony of the Complainant and Ms. [redacted] leaves no doubt that the Complainant's allegations are meritless.

Regarding the issue of the Licensee adding [redacted] to the Complainant's Policy, Ms. [redacted] testified that when the Complainant obtained his coverage, the Licensee asked the Complainant questions that were necessary to determine the appropriate rate. The Licensee also issued a copy of the Policy and a Privacy Notice to the Complainant. Ms. [redacted] argued that the Licensee followed the terms outlined in the Policy and the Privacy Notice when it added [redacted] and increased the Complainant's premium. In support, Ms. [redacted] explained that the Policy covered the Complainant, his relatives, or anyone using the Complainant's automobile with his permission. Relative "means a person related to [the Complainant] or [his] spouse by blood, marriage or adoption who resides in [the Complainant's] household." (MIA Ex. 12). Ms. [redacted] emphasized that the Policy specifically states that the premium is based on the information the Licensee has on file and that the Complainant agreed that: (1) the Licensee may adjust his policy premiums during the policy terms if any of the information in which the premiums are based is incorrect, incomplete or changed; (2) the Complainant will cooperate with the Licensee in determining if the information is correct and complete; and (3) the Complainant will notify the Licensee of any changes in the information. (*See* MIA Ex. 12).

Further, Ms. [redacted] highlighted the Privacy Notice which notified the Complainant of the type of information the Licensee collects either directly from the Complainant or from third parties about the Complainant. Ms. [redacted] testified that the Licensee received information from a third-party vendor that [redacted] was issued a Maryland driver's license using the same address as the Complainant. Ms. [redacted] explained that when the Licensee obtains information that another driver may be residing in the same household as one of their policyholders, the Licensee must verify the information and determine whether the appropriate premiums are being charged. Because this is a family policy, as stated in the contract, the coverage automatically extends to any resident, relative or individual that is driving the Complainant's vehicle. Accordingly, if there is another individual that is residing in the home and using the vehicle, the Licensee would need to rate the policy to include the additional driver and adjust the premium.

Ms. [redacted] contended that the issue could have easily been resolved with a phone call if the Complainant had cooperated with the Licensee as mandated by his contract. Once the Licensee received the information regarding [redacted], the Licensee made several attempts to clarify the issue. The Complainant was uncooperative, and the only response the Licensee received was that the Licensee did not have permission to add anyone to the Complainant's policy. The Complainant refused to answer questions regarding whether [redacted] was a relative, whether he resided in the Complainant's household, or whether he drove the Complainant's vehicle. As a result, the Licensee notified the Complainant that [redacted] would be added to the policy effective September 2, 2022. The Licensee also offered the Complainant a named driver exclusion, which would allow the Complainant to specifically exclude [redacted] and avoid an additional premium being charged.

Ms. [redacted] asserted that once the Complainant filed a claim with the MIA, the Licensee reviewed its initial decision to add [redacted] to the Complainant's policy. The Licensee determined that although the Complainant had not provided the additional information, because he was adamant that [redacted] should not be added to his policy, it determined that [redacted] may have updated his license without changing his address and removed [redacted] from the Complainant's policy, effective September 2, 2022. As a result, the additional premium billed to the Complainant was removed. When the Licensee removed [redacted] from the Complainant's policy, after deducting the pro-rated premium, the Complainant received a $13.96 credit to his account.

During the hearing, the Complainant admitted that he received the Policy and Privacy Notice but did not read either document. The Complainant focused his testimony on whether the Licensee had the right to peer into his home and ask questions about who lived in his household. The Complainant's position during the investigation and at the hearing was that who lives in his household is a private matter. The Complainant admitted that the Licensee removed [redacted] from his policy effective September 2, 2022, and removed the pro-rated premium from the Complainant's account. However, the Complainant does not believe that the removal sufficiently remedied the issue.

Based on the evidence contained in the record, I find that the Complainant has not sustained his burden to prove that the Licensee violated Maryland insurance law by adding [redacted] to the Complainant's policy after they received information that [redacted] was a licensed driver that used the Complainant's address on his driver's license. Not only did the Complainant refuse to provide the Licensee any information to identify his relationship with [redacted] or whether [redacted] resided in the Complainant's household, the Complainant failed to respond to the MIA investigator when she emailed the Complainant and asked, "for the record, please confirm if

[[redacted]] is or is not a member of your household." (MIA Ex. 3). When the Complainant obtained the Policy, he was listed as the named insured with no additional drivers and the Policy was rated in part based on that information. Understanding that the Complainant felt his privacy was being invaded, the information the Licensee requested regarding [redacted] was information that directly impacts the Policy and was necessary to determine whether there is an additional driver that the Licensee needs to rate for the Policy and charge additional premiums. I further find that based on the Complainant's failure to provide any information to the contrary, it was reasonable for the Licensee to believe that [redacted] resided in the Complainant's home and would be covered under the Complainant's Policy and should be added as an additional driver.

The Complainant's next issue is the increased policy premium after [redacted] was removed from the Complainant's policy. The Complainant alleged that once [redacted] was removed from his Policy, his premium was inexplicably increased from $877.80 for the policy period of May 1, 2022 through November 1, 2022 to the renewal premium of $1,141.31 for the policy period of November 1, 2022 through May 1, 2023.

Ms. [redacted] testified that at the beginning of the Covid-19 pandemic, the Licensee was scheduled to implement a premium increase. As a result of the financial impact the pandemic had on policyholders, the Licensee did not increase its rates and provided certain credits to assist its policyholders. However, as the impact of the Covid-19 pandemic decreased, the Licensee filed a statewide rate revision ([redacted]) with the MIA effective for all Maryland insureds. Ms. [redacted] explained that once rate increases are filed, they only apply to policies as they renew, not mid-term. Accordingly, the Complainant's renewed policy was subject to the premium increase as filed with the MIA.

The Complainant also lost a multi-line discount when his policy renewed. Ms. [redacted] testified that similar to the general rate increase, the removal of a multiline discount is not applied until the policy is renewed. The Complainant did not challenge the removal of the multiline discount. The Complainant admitted that he canceled his renter's insurance and that he was aware that the multiline discount would be removed.

Ms. [redacted] averred that all premium calculations for the Licensee's policyholders are automated. The rating rules are uploaded in the Licensee's computer program and the program calculates the policyholder's premiums. Ms. [redacted] explained that because the Complainant filed a complaint with the MIA, the Licensee conducted a manual rate calculation for the previous policy period of May 1, 2022 through November 1, 2022 and the renewal period of November 1, 2022 through May 1, 2023. (MIA Ex. 23). The MIA determined that the Licensee calculated the Complainant's renewal premium in accordance with its rate filings. (MIA Ex. 29).

Based on the evidence contained in the record, the Complainant has not sustained his burden to prove by a preponderance of the evidence that the Licensee violated Maryland insurance laws by increasing the Complainant's premium for the November 1, 2022 through May 1, 2023 policy period. The Licensee filed a statewide rate revision with the Commission that increased its base rate in Maryland for all policies renewing with an effective date on or after August 29, 2022. As the Complainant's policy renewed on November 1, 2022, he was subject to the general rate increase.

Lastly, the Complainant argued that the Licensee improperly cancelled his Policy. The Licensee asserted that it properly cancelled the Complainant's Policy because he failed to pay his premium, despite appropriate notice being sent to him at least ten days before the cancellation date. The Complainant did not dispute that he received the insurance premium bill or

cancellation notice. The Complainant averred that although he did not pay his insurance premium himself, the premium was paid. The Complainant did not specify how the premium was paid, or who made the payment. The Complainant explained that while he did not have any documentary evidence to submit during the hearing that would support his position, he intends to request an audit of his records from the Internal Revenue Service, to prove that his insurance premium was paid. The Complainant emphasized that the audit will show that the Licensee received payments for his Policy in addition to the "voluntary payments" that he made.

The Licensee provided the internal log evidencing the premium amount charged to the Complainant's account along with payments received. (MIA Exs. 12, 24). Specifically, the log shows the amount added to the Complainant's premium when [redacted] was added to the Policy. Similarly, the billing log shows that the Complainant's premium was decreased and that a credit toward the Complainant's account was issued when [redacted] was removed. Further, contained in the record are emails between the Complainant and the MIA. On September 27, 2022, the Complainant emailed the MIA investigator handling the complaint, including a copy of the bill he received from the Licensee on September 26, 2022. In the email, the Complainant averred that because he filed a claim with the MIA, the Licensee could not continue collecting policy premiums until his debt was determined to be valid. The MIA investigator advised the Complainant that the MIA did not have the authority to order the Licensee to discontinue billing for the Complainant's Policy.

The evidence contained in the record clearly establishes that on September 28, 2022, the Complainant received a bill for his insurance premium for the policy period of November 1, 2022 through May 1, 2023. The Complainant did not remit payment to the Licensee. On November 2, 2022, the Licensee mailed and emailed a notice of cancellation for nonpayment of

premium, effective November 14, 2022. (MIA Exs. 13, 14, 21). On November 3, 2022, the Complainant forwarded a copy of the emailed cancellation notice to the MIA. (MIA Ex. 13). On the same date, the Licensee emailed the Complainant a notice titled "[a]ction needed to keep your policy active" wherein the Licensee reminded the Complainant that he had until 12:01 a.m. on November 14, 2022, to make his payment or his Policy would lapse. (MIA Ex. 13). Further, on November 11, 2022, the Licensee's Assistant Vice President, sent the Complainant a letter explaining the basis for the rate increase and reminding the Complainant that his policy would cancel on November 14, 2022, if payment was not received. (MIA Ex. 21). The Complainant failed to make a payment, and the Policy was canceled as of November 14, 2022.

The Licensee has demonstrated that it took all steps required under the law before cancelling the Complainant's policy. Not only did the Licensee send the notice via certified mail more than ten days before the cancellation date, it also sent email notices to the Complainant on November 2, 2022 and November 3, 2022, as well as a letter from the Licensee's Vice President on November 11, 2022. It was the Complainant's obligation to ensure payment had been made so his insurance remained in place. He did not do so. The statute specifically allows for cancellation of policies mid-term for non-payment of premium if proper notice is provided. Md. Code Ann., Ins. § 27-613(b)(3)(ii), (d). In this case, the Licensee's system reflected no payment of the premium by the due date, or before the cancellation date. For these reasons, I conclude the Licensee has met its burden to prove by a preponderance of the evidence that its cancellation of the Complainant's Policy complies with Maryland Law. Md. Code Ann., Ins. § 27-613(d).

It is clear from the Complainant's testimony that he believes that he was wronged by the Licensee and is determined to stand up for other Maryland residents who are similarly situated. The Complainant's testimony was both genuine and sincere, and I believe that he testified in

good faith. However, the Licensee presented the testimony of Ms. [redacted] who has experience with the Licensee's underwriting guidelines and rating plans, and who was able to not only explain what occurred in this case but also to point to corroborating evidence in the record. For these reasons, I found Ms. [redacted]'s testimony persuasive.

Based on the foregoing, I find that the Licensee's actions did not violate sections 11-230(a), 11-341, or 27-216(b)(1) of the Insurance Article, all of which require the Licensee's actions – including the knowing issuance or delivery of a policy or endorsement, certificate or addition to the policy; the issuance of an insurance contract or policy of any kind; and the collection of any premium or charge – to be in accordance with the filings approved by the MIA. I also find that the Licensee did not violate section 27-613(d) of the Insurance Article and that the Policy was properly terminated for nonpayment.

## CONCLUSIONS OF LAW

Based upon the above Findings of Fact and Discussion, I conclude as a matter of law that the Licensee increased the Complainant's automobile insurance premium in accordance with its filed rating plan and otherwise complied with the Insurance Article. Md. Code Ann., Ins. §§ 11-230(a), 11-341, and 27-216(b)(1) (2017 & Supp. 2022).

Further, I conclude as a matter of law that the Licensee did not violate the Insurance Article when it cancelled the Complainant's automobile insurance policy for nonpayment. Md. Code Ann., Ins. § 27-613(d) (2017 & Supp. 2022).

## PROPOSED ORDER

Based upon the above Findings of Fact, Discussion, and Conclusion of Law, I **PROPOSE** that the Licensee not be found in violation of sections 11-230(a), 11-341, 27-

216(b)(1), and 27-613(d) of the Insurance Article and that the charges made by the Complainant be **DENIED AND DISMISSED.**

I further **PROPOSE** that the records and publications of the Maryland Insurance Administration reflect this decision.

Signature Appears on Original
[redacted]

June 1, 2023
Date Decision Issued

Patricia M. DeMaio
Administrative Law Judge

PMD/emh
#205372

## RIGHT TO FILE EXCEPTIONS

Upon receipt of this proposed decision, affected parties have twenty (20) days to file exceptions with the Insurance Commissioner. COMAR 31.02.01.10-1B(1). If a party wishes to receive a transcript of the hearing before filing exceptions, the party has ten (10) days from receipt of the decision to either: 1) file a written request for a transcript with the Insurance Commissioner, or 2) request a transcript of the hearing from a private stenographer and file a copy of their written request to a private stenographer with the Insurance Commissioner. COMAR 31.02.01.10-1B(2). If a transcript is requested, the transcript must be filed with the Commissioner within sixty (60) days of the request, and then a party has thirty (30) days after the filing of the transcript to file exceptions. COMAR 31.02.01.10-1D. Written exceptions and requests for transcripts should be addressed to: Hearing and Appeals Coordinator, Maryland Insurance Administration, 200 St. Paul Place, Suite 2700, Baltimore, MD 21202. The Office of Administrative Hearings is not a party to any review process.

**Copies Mailed to:**

Complainant

[redacted]

**OFFICE OF THE INSURANCE COMMISSIONER**
**MARYLAND INSURANCE ADMINISTRATION**

| | | |
|---|---|---|
| MARYLAND INSURANCE | * | REVIEW OF A RECOMMENDED |
| ADMINISTRATION | * | DECISION ISSUED BY |
| *EX REL* [redacted][1] | * | PATRICIA M. DEMAIO |
| Complainant | * | AN ADMINISTRATIVE LAW JUDGE OF THE MARYLAND OFFICE OF ADMINISTRATIVE HEARINGS |
| v. | * | |
| GEICO SECURE INSURANCE COMPANY | * | OAH No.: MIA-CC-33-23-07233 |
| | * | MIA No.: [redacted] |
| Licensee | * | |

* * * * * * * * * * * *

## FINAL ORDER

Pursuant to Md. Code Ann., Ins. § 2-210(d)[2] and Code of Maryland Regulations (COMAR) 31.02.01.10-2H, the undersigned Maryland Insurance Commissioner hereby clarifies the disposition and issues this **summary affirmance** of the proposed decision below.

On September 11, 2022, the Maryland Insurance Administration (hereinafter "MIA") received a complaint from [redacted] (hereinafter "Complainant") alleging that GEICO Insurance Company (hereinafter "Licensee") violated Maryland Insurance Law when it erroneously added a driver to his automobile policy, increased the premium and cancelled the auto policy for nonpayment of premium. The MIA investigated the Complaint and issued a determination letter dated January 26, 2023, concluding that Licensee's actions did not violate Maryland's Insurance

---

[1] The MIA uses initials to protect the identity of the parties.
[2] Unless otherwise noted, all statutory references are to the Insurance Article of the Annotated Code of Maryland.

Law. Specifically, the MIA concluded that Licensee's actions were not shown to be arbitrary, capricious, or discriminatory or otherwise violate the Maryland Insurance Article. The determination letter referenced Sections 11-230(a), 11-341, 27-216(b)(1)(i) and (ii) and 27-613(d) of the Annotated Code of Maryland, Insurance Article. The Complainant requested a hearing on February 3, 2023, which was granted in a letter dated February 6, 2023. This matter was then transmitted to the Office of Administrative Hearings (hereinafter "OAH) to conduct a contested hearing and to issue a Proposed Decision pursuant to COMAR 31.02.01.04-1A. In its referral to the OAH, the MIA noted that specific attention would be directed to the Annotated Code of Maryland, Insurance Article, Sections 11-230(a), 11-341, 27-216(b)(1)(i) and (ii) and 27-613(d).

On May 5, 2023, this case was heard by Administrative Law Judge ("ALJ") Patricia M. DeMaio. On June 1, 2023, the ALJ issued a Proposed Decision setting forth factual findings and conclusions of law with respect to 11-230(a), 11-341, 27-216(b)(1)[3] and 27-613(d). On the same date the OAH mailed the Proposed Decision to the parties in this case. Attached to the Proposed Decision was the notice regarding the Right to File Exceptions advising all parties that pursuant to COMAR 31.02.01.10-1, they had the right to file written exceptions with the undersigned, within twenty (20) days from receipt of the Proposed Decision. Neither party filed exceptions in this case.

I have carefully reviewed the documentary record[4] in this case and the Proposed Decision by ALJ DeMaio. Based on this review, I am persuaded that ALJ DeMaio's Conclusion of Law that

---

[3] On page 10 of the Proposed Decision, the ALJ mistakenly cited (c) rather than (b) when referring to Md. Code Ann., Ins. 27-216. I have carefully reviewed the language of the pertinent sections referenced by the ALJ and am persuaded that this was a typographical error and it has no bearing on the Conclusions of Law reached by ALJ DeMaio.

[4] For purposes of accuracy, on page 4 of the Proposed Decision, under MIA Ex. 24, Auto Policy Bill issued September 29, 2022, should be September 9, 2022.

Licensee did not violate 11-230(a), 11-341, 27-216(b)(1) and 27-613(d)of the Insurance Article is correct, and pursuant to COMAR 31.02.01.10-2D, hereby affirm this finding.

On pages 20-21 of the Proposed Decision, ALJ DeMaio ordered that the "Licensee not be found in violation of sections 11-230(a), 11-341, 27-216(b)(1) and 27-613(d) of the Insurance Article and that the charges made by Complainant be **DENIED AND DISMISSED**." I find it necessary to clarify the disposition of the case. Rather than dismissing the Complaint, I conclude that the determination issued by the MIA shall be hereby **AFFIRMED** based on the Findings of Fact and Discussion provided by ALJ DeMaio.

**THEREFORE**, it is hereby

**ORDERED** that references to the dismissal of the Complaint are hereby stricken from the Proposed Decision of ALJ DeMaio;

**ORDERED** that the determination by the MIA be hereby **AFFIRMED** based on the Findings of Fact and Discussion provided by ALJ DeMaio;

**ORDERED** that the Proposed Decision of ALJ DeMaio be adopted as the Commissioner's Final Order, and it is further

**ORDERED** that the records and publications of the Maryland Insurance Administration reflect this decision.

It is so **ORDERED** this 18th day of January, 2024.

**KATHLEEN A. BIRRANE**
Commissioner
Signature Appears on Original

ERICA J. BAILEY
Associate Commissioner of Hearings